# UNITED STATES DISTRICT COURT

for the

Southern District of Texas

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

One black HTC windows phone with cracked screen,
located at HSI Houston, TX.

)
)
)
)
)

Case No.  H - 12 - 503

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____Southern_____ District of _____Texas_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1591, 2423, 2251, 2252A | Sex Trafficking of Minors, Transportation of a Minor, Sexual Exploitation of a Minor, Distribution, Receipt and Possession of Child Pornogarphy |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Juanae Johnson, SA HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _July 13, 2018_

_____
*Judge's signature*

City and state:  Houston, TX

Lee H. Rosenthal, U.S. District Judge
*Printed name and title*

## **A F F I D A V I T**

I, Juanae S. Johnson, being duly sworn, depose and state:

1.      I am a Special Agent (SA) with the Department of Homeland Security, Homeland Security Investigations (HSI), assigned to the Office of the Special Agent in Charge, Houston, Texas. I have been so employed since August 2004 with the former U.S. Customs Service, now HSI. I am currently assigned to the Human Trafficking Group and as part of my daily duties as an HSI agent assigned to this squad, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the sex trafficking of minors, the transportation of minors, production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 1591, 2423, 2251, 2252A(a) and 2252A. I have received training in the area of child pornography and child exploitation, and I have had the opportunity to observe and review numerous examples of child pornography in various forms of media including computer media. Child pornography as defined by 18 U.S.C. § 2256 is:

> ...any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where – (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; . . . [or] (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." For conduct occurring after April 30, 2003, the definition also includes "(B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from that of a minor engaging in sexually explicit conduct."

I have also participated in the execution of numerous search warrants; a number of which involved child exploitation and/or child pornography offenses.

2.      This affidavit is made in support of an application for a warrant to search an HTC Windows phone (TARGET DEVICE)[i]. The TARGET DEVICE to be searched is more particularly described as a black HTC windows phone with a cracked screen. This phone is

currently located at Homeland Security Investigations forensic lab at 126 Northpoint Drive Houston, TX 77060. The phone has been in the custody of Department of Homeland Security since it was seized at the border on July 20, 2012. The purpose of this application is to seize evidence of violations of 18 U.S.C. §§ 2423(a), 2251(a) and (e), 2252A(a)(1) and 1591(a) and (b), which make it a crime to transport minors for prostitution or a sex act for which a crime can be charged, transportation of child pornography, possession of child pornography and domestic minor sex trafficking, respectively.

3.      I am familiar with the information contained in this affidavit based upon the investigation I have conducted and based on my conversations with other law enforcement officers involved in this investigation, or who have engaged in numerous investigations involving child pornography.

4.      Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §§ 2423(a), 2251(a) and (e), 2252A(a)(1) and 1591(a) and (b) are located on the TARGET DEVICE. Where statements of others are set forth in this affidavit, they are set forth in substance and in part.

5.      As a result of the investigation described more fully below, there is probable cause to believe that evidence, fruits, and instrumentalities of violations of federal law, including 18 U.S.C. §§ 2423(a), 2251(a) and (e), 2252A(a)(1) and 1591(a) and (b) are present on the TARGET DEVICE.

6.      The investigation has revealed that on at least one occasion, Jason Daniel GANDY (GANDY) has taken nude photos of Minor Victim 1 (MV1) and placed them on a laptop computer which was seized at the same time of the TARGET DEVICE. In an interview with MV1 he

2

confirmed GANDY has taken nude photos of his backside but he was unaware of where the photos were located. Additionally, MV1 indicated that he performed massages at the direction of GANDY. These massages were performed, for a fee, on adult males and included MV1 having to masturbate the adult males and allow them to touch his genitals. Minor Victims 2-4 (MV 2-4) also reported they were caused to perform similar messages by GANDY on adult males who paid GANDY for these services.

7. Paragraphs 8 through 21 provide an overview of the investigation and detail the probable cause to search the TARGET DEVICE. Paragraph 22 explains the common characteristics of child pornographers. Paragraphs 23 through 25 explains minor sex trafficking.

**Details of the Investigation**

8. On July 19, 2012, GANDY arrived in the United Kingdom (UK) at Heathrow International Airport aboard United Airlines Flight 4 which he boarded in Houston, Texas. GANDY was traveling with a 15 year-old male who will be identified as MV1 in the remainder of this affidavit. MV1 is not related to GANDY.

9. Upon landing in the UK, GANDY was inspected by UK Immigration (UKI) Officers of the UK Border Agency and selected for secondary inspection. UKI authorities became suspicious when GANDY was asked why he wanted to enter the UK and why he was traveling with a minor child. UKI authorities were also concerned as GANDY admitted that he was not related to MV1 and contacted MV1's mother. MV1's mother informed the UKI officers that she had given MV1 permission to travel with GANDY, but also gave a conflicting reason as to the purpose of the trip. Based upon interviews with GANDY, MV1 and MV1's mother, UKI officials denied GANDY and MV1 entry and made arrangements for them to immediately return to the United States.

10. On or about, July 20, 2012, at approximately 1:35 pm (CDT), GANDY arrived at

3

George Bush Intercontinental Airport in Houston, Texas, on United Airlines Flight 35. Bush Intercontinental Airport is in Houston, Harris County, Texas and within the Southern District of Texas. Upon disembarking the plane, GANDY was escorted by U.S. Customs and Border Protection (CBP) officers to the secondary inspection area. During secondary inspection, GANDY made a binding declaration to the CBP officers that the luggage and other items he was carrying were his.

11.     Agents learned through their investigation that GANDY was a licensed massage therapist with a website advertising his services. GANDY had utilized website "jasonrmt.com." The website, which includes pictures of GANDY, indicates that GANDY performs massages for a fee which must be paid in cash. Additionally, the massages can be "incalls" or "outcalls" which mean that either the customer comes to GANDY or he goes to the customer. The terms "incalls" and "outcalls" are terms frequently associated with prostitution and advertisements for prostitution activities.

12.     An interview, conducted at the Children's Assessment Center, of MV1 shortly after his return to the United States revealed that MV1 was caused to engage in commercial sex acts. GANDY would have MV1 massage his clients while completely nude and allowed the clients to fondle MV1's genitals and buttocks. These massages made MV1 uncomfortable but he continued to participate for fear of losing his friendship with GANDY and the money it provided. MV1 estimated that he made between four and five hundred dollars assisting GANDY. MV1 further stated that GANDY wanted to set up a massage company in London similar to the one he ran in Houston. MV1 stated that while they were waiting to travel to London, GANDY informed him that he had two clients waiting for him in the UK and were set to meet them between July 22, 2012 and July 24, 2012.

4

13.     A second interview of MV1 was conducted at the Children's Assessment Center on July 26, 2012. MV1 stated that he believed that he is not the first boy that GANDY had done this with. MV1 went on to say that GANDY admitted to recorded himself having sex with minors.

14.     On July 26, 2012, MV2 contacted the National Human Trafficking Resource Center with information regarding GANDY's involvement in sex trafficking of minors. At that time, MV2 reported that GANDY ran a massage business from his home. The massages would be conducted by young adult and minor males who were required to be nude while providing services. The massages included manual sex in exchange for money and GANDY would keep most of the money.

15.     MV2 lived with GANDY for approximately 3 years and during that time, he worked for him giving these massages. Part of the time, MV2 was under the age of 18. MV2 is aware of 2 to 3 minors being used to conduct these massages.

16.     MV2 stated that GANDY kept his client list for his massage business in the contact list of his cell phone. One time, MV2 scrolled through GANDY's cell phone and observed his client list which was extensive.

17.     MV2 stated that GANDY recruited minors for his massage business via the Internet.

18.     MV2 stated that he observed GANDY watching child pornography of children as young as 4 years of age. MV2 has seen extensive files of child pornography on GANDY's computer.

19.     MV2 stated that GANDY owned a website and utilized it for his business.

20.     Pursuant to a border search, agents conducted a forensic examination on the Acer laptop. Agents found images of child pornography. These images included naked minors in which the focal point of the images are the minors' genitals. Additionally, agents found an image of

5

MV1 in which he is clothed only by a small piece of cloth that covers his genitalia. The focal point of the image is MV1's genitals.

21. Affiant believes that based on the information provided by MV1 and MV2, there is probable cause to believe that GANDY has engaged in transportation of a minor for prostitution and to engage in a sex act for which a person can be charged with a crime and has engaged in the production of child pornography and sex trafficking of minors. Affiant knows from training and experience, and from discussions with other experienced child exploitation investigators that individuals that engage in sexual abuse of children keep these images for as long as possible for sexual gratification purposes. Based on MV1 and MV2's statements that the commercial sexual exploitation was being perpetrated by GANDY, Affiant believes there is probable cause to believe there are images of child pornography and evidence of the massage business which facilitated the exploitation of children and sex trafficking of minors is located on the TARGET DEVICE, all in violation of 18 U.S.C. §§ 2423(a), 2251(a) and (e), 2252A(a)(1) and 1591(a) and (b).

**Characteristics Common to Collectors of Child Pornography**

22. Based upon my knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have consulted, there are certain characteristics common to individuals involved in the receipt and collection of child pornography:

> a. Preferential Sexual Offender or a person who has a sexual interest in children may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

> b. Preferential Sexual Offender or a person who has a sexual interest in children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other

6

visual media. Preferential Sexual Offender or a person who has a sexual interest in children oftentimes uses these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.     Preferential Sexual Offender or a person who has a sexual interest in children almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Preferential Sexual Offender, or a person who has a sexual interest in children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d.     Child erotica is defined as: Materials or items that are sexually arousing to certain individuals but which are not in and of themselves obscene or do not necessarily depict minors in sexually explicit poses or positions. Such material may include non-sexually explicit photographs (such as minors depicted in undergarments in department store catalogs or advertising circulars), drawings, or sketches, written descriptions/stories, or journals.

e.     Likewise, Preferential Sexual Offender or a person who has a sexual interest in children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These Preferential Sexual Offenders or persons who have a sexual interest in children are often maintained for several years and are kept close by, usually at the person's residence, to enable the person to view the collection, which is valued highly.

f.     Preferential Sexual Offender or a person who has a sexual interest in children also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other Preferential Sexual Offenders or a persons who have a sexual interest in children; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

g.     Preferential Sexual Offenders or persons who have a sexual interest in children prefer not to be without their child pornography

7

for any prolonged time period. This behavior has been documented
by law enforcement officers involved in the investigation of child
pornography throughout the world.

**Dynamics of Domestic Minor Sex Trafficking:**

23.     Based on my training, and the knowledge, experience, and training of other law

enforcement officers, with whom I have consulted, I know that individuals that engage in criminal

activities, such as prostitution, child prostitution and child sex trafficking, often utilize cellular

phones to conduct business such as: photograph victims, post advertisements for commercial sex

online, some of which contain the photographs taken, and communicate with potential purchasers

of commercial sex.   Your affiant knows that persons engaged in this type of criminal activity

maintain evidence of their criminal activities in their homes, computers, cellular phones, hard

drives, and cameras.     These items include, but are not limited to, records of purchases, lists of

clients or "johns", session sheets, time cards, "trick" books, photographs, advertisements, lists of

debts owed, list of work required, employment applications, financial records, proof of travel,

payments and wire transfers. They also maintain names and contact information of clients, victims

and co-conspirators, records and receipts of their fraudulent activities, emails and letters, texts,

emails, records and calendars relating to when and where they participated in fraudulent activities,

and records, lists, and receipts of money and items fraudulently received.

24.     Based on your Affiant's knowledge and experience, your Affiant knows that

Computers and Smartphone Cellular telephones are often essential tools for facilitating online

prostitution activity. This includes the online posting of advertisements or communication with

clients for services containing photographs of juveniles and other victims in sexually explicit poses

while wearing provocative clothing.     In addition to being utilized for posting advertisements,

cellular telephones belonging to sex traffickers often contain information ranging from contact

names and phone numbers, to text messages, emails, login information, GPS location data, photos

and notes pertaining to criminal activities associated with their prostitution business. Your Affiant knows that perpetrators of sex trafficking crimes frequently have more than one cellular telephone to conduct these activities, and frequently dispose of their phones and acquire new ones in an effort to avoid law enforcement.

A person who commits, or attempts to commit acts of sex trafficking, benefits financially when they recruit children less than 18 years of age, and manipulate the children to engage in commercial sex acts/prostitution for money. These vulnerable victims are seeking love, affection and attention. Sex traffickers provide material goods along with the perception of emotional comfort and support. They often isolate the victims to gain control over them.

## CONCLUSION

25.    The HSI investigators have conducted several search warrants seeking evidence of violations of 18 U.S.C. §§ 2423(a), 2251(a) and (e), 2252A(a)(1) and 1591(a) and (b) 2252 and 2252A, et. seq., which, among other things, makes it a federal crime for any person to knowingly transport minors, produce, transport and possess child pornography and trafficking minors for commercial sex. As a result of these search warrants, we have found images of child pornography and evidence of sex trafficking of minors that have been stored on cellular devices.

26.    Based on the above information, I have probable cause to believe and do believe that violations of 18 U.S.C. §§ 2423(a), 2251(a) and (e), 2252A(a)(1) and 1591(a) and (b) 2252 and 2252A, et. seq., have occurred and continue to occur; and the following property, evidence, fruits and instrumentalities of these offenses are currently located on  the TARGET DEVICE.

I request authority to search TARGET DEVICE as an instrumentality of the crimes.

9

Based upon the foregoing, I respectfully request that this Court issue a search warrant for

the TARGET DEVICE.

Juanae S. Johnson
Special Agent, HSI

Subscribed and sworn before me this __13__ day of __July__, 2018 and I find probable cause.

The Honorable Lee H. Rosenthal
United States District Court Judge

---

[i] In the course of preparing for trial this week the assigned AUSAs and Agents reviewed the contents of this phone again. None of the information obtained from the recent review of this phone has been used to establish probable cause for this requested search warrant.

## ATTACHMENT A

A black HTC windows phone with a cracked screen. This phone is currently located at Homeland Security Investigations forensic lab at 126 Northpoint Drive Houston, TX 77060.



## ATTACHMENT B

### ITEMS TO BE SEARCHED FOR AND SEIZED

A. All files that depict digital photographs, videos and all visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, child erotica or pertaining to a sexual interest in children.

B. Any and all notes, documents, diaries or correspondence, in any format or medium (including e-mail messages, chat logs, electronic messages, text messages and other digital files) pertaining to the possession, transmission through interstate commerce including by United States Mails or by computer, receipt, or distribution of child pornography or the visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, child erotica or pertaining to a sexual interest in children, whether transmitted or received using computer, a facility or means of interstate commerce, common carrier, or mail.

C. Any and all records, documents, invoices and materials, in any format or medium (including e-mail messages, chat logs, text messages, electronic messages, text messages and other digital files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

D. Internet History and usage data to include websites visited, search terms, Cookies, account information, settings, and saved usage information for any and all installed applications, also known as "apps" on the device.

E. Any and all notes, documents, diaries or correspondence, in any format or medium (including e-mail messages, chat logs, electronic messages, text messages and other digital files) pertaining to the sex trafficking of minors or the transportation of a minor for purpose of prostitution or any sexual activity for which a person could be charged.