United States District Court
Southern District of Texas
**ENTERED**
July 17, 2018
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL  NO. H-12-503 |
| | § | |
| JASON GANDY | § | |

## ORDER SUPPRESSING EVIDENCE

Jason Gandy moved to suppress cell-phone evidence that the government obtained a day or two before July 11, 2018, and produced to Gandy on July 11 and 13. (Docket Entry No. 147).  Jury selection and trial are set to begin on July 18, 2018.  The court held a hearing on July 16.  Based on the motion, the parties' oral arguments, the record, and the applicable law, the court grants the motion to suppress.  The reasons for this ruling are explained below.

## I.     Background

On July 20, 2012, the government seized Gandy's cell phone at an international border.  The government did not download, save, or record the phone's data.  Instead, the government seized the cell phone and within 48 hours, had it analyzed at a forensic lab in Houston.  During this forensic examination, a technical description of the electronic record was created, but it revealed nothing about the cell phone's contents.   No written description of the phone's substantive contents was made, and the contents were not downloaded, recorded, or copied.

In July 2018, six years after the initial border search, the government conducted a warrantless search of Gandy's cell phone.  On July 11 and 13, 2018, the government produced to the defense the evidence discovered during the search and stated the intent to offer the evidence as evidence.  On July 13, after Gandy moved to suppress the newly produced text messages, the government

applied for and obtained a warrant to search the phone.  The agent who signed the search-warrant affidavit was not the same agent who conducted the 2012 search.  The affidavit merely states that the cell phone had been in the Department of Homeland Security's custody since it was seized at the border in 2012.

## II.     The Applicable Law

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'"  *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006).  "[W]arrantless searches and seizures are per se unreasonable unless they fall within a few narrowly defined exceptions."  *United States v. Cardenas*, 9 F.3d 1139, 1147 (5th Cir. 1993).  The border-search exception allows "a governmental officer at the international border [to] conduct routine stops and searches without a warrant or probable cause." *Bustillos v. El Paso Cty. Hosp. Dist.*, 891 F.3d 214, 220 (5th Cir. 2018) (quotation omitted).  The Fifth Circuit recently stated:

> The border-search doctrine has roots going back to our founding era.  *See United States v. Flores–Montano*, 541 U.S. 149, 153, 124 S.Ct. 1582, 158 L.Ed.2d 311 (2004) (noting the Executive's longstanding authority to conduct border searches without probable cause or a warrant).  The location of a search at the border affects both sides of the reasonableness calculus that governs the Fourth Amendment. *United States v. Montoya de Hernandez*, 473 U.S. 531, 538, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985).  The government's interest is at its "zenith" because of its need to prevent the entry of contraband, *Flores–Montano*, 541 U.S. at 152, 124 S.Ct. 1582, and an individual's privacy expectations are lessened by the tradition of inspection procedures at the border, *Montoya de Hernandez*, 473 U.S. at 537–38, 105 S.Ct. 3304.

*United States v. Molina-Isidoro*, 884 F.3d 287, 290–91 (5th Cir. 2018).  "One type of contraband

that can be stored within the data of a cell phone or computer is child pornography." *Id.* at 295 n. 3 (Costa, J., concurring) (citing *United States v. Cotterman*, 709 F.3d at 958–59).

The Supreme Court cautions against expanding the scope of a warrant exception, if doing so would "both undervalue the core Fourth Amendment protection afforded . . . and 'untether' the exception 'from the justifications underlying it.'" *Collins v. Virginia*, 138 S. Ct. 1663, 1667 (2018) (citing *Riley v. California*, 134 S.Ct. 2473, 2485 (2014)). A warrant exception may not be extended when there is a "disconnect" between a Fourth Amendment interest and the justifications for the exception. *Id.* at 1673.

## III. Analysis

### A. The Initial Search was Constitutional

Gandy does not challenge the government's July 2012 search of his phone. (Docket Entry No. 147). Circuit courts have held that a forensic search that could have been conducted "had the proper equipment been present at the airport does not transform a routine border search into an extended border search for which reasonable suspicion is required." *United States v. Stewart*, 729 F.3d 517, 526 (6th Cir. 3013); *see also Cotterman*, 709 F.3d at 961 ("A border search of a computer is not transformed into an extended border search simply because the device is transported and examined beyond the border."). The contested issue is whether the government's second, warrantless search of Gandy's phone, conducted far away from the border and six years after the legal 2012 border search, was unconstitutional.

### B. The Second, Warrantless Search Violated the Fourth Amendment

The government's second search of Gandy's phone was unconstitutional because it did not fall within any of the warrant exceptions. The Court in *Riley v. California* discussed at length what

cell phones can reveal and the privacy interest that threatens:

> First, a cell phone collects in one place many distinct types of information—an address, a note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated record. Second, a cell phone's capacity allows even just one type of information to convey far more than previously possible. The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet. Third, the data on a phone can date back to the purchase of the phone, or even earlier.
> . . .
>
> Indeed, a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form-unless the phone is.

*Riley*, 134 S. Ct. at 2489, 2491 (emphasis in original).

Given the high privacy interest individuals have in their cell phone, the Court held that the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement simply did not apply to a phone search. *Id.* at 2493 ("Our holding, of course, is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search, even when a cell phone is seized incident to arrest."). The Court recognized that other exceptions, like exigency, might justify a warrantless search of a particular phone. *Id.* at 2494 (citing *Kentucky v. King*, 563 U.S. 452, 460 (2011)). The border-search doctrine may also apply, as "no post-*Riley* decision issued either before or after this search has required a warrant for a border search of an electronic device." *Molina-Isidoro*, 884 F.3d at 292 (citing *United States v. Escarcega*, 685 Fed.Appx. 354, 354 (5th Cir. 2017); *United States v. Gonzalez*, 658 Fed.Appx. 867, 870 (9th Cir. 2016); *United States v. Kolsuz*, 185 F.Supp.3d 843, 852 (E.D. Va. 2016); *United States v. Caballero*, 178 F.Supp.3d 1008, 1018 (S.D. Cal. 2016); *United States v. Feiten*, 2016 WL 894452, at *6 (E.D. Mich. Mar. 9, 2016); *United States v. Blue*, 2015 WL 1519159, at *2 (N.D. Ga. Apr. 1, 2015)).

4

The government cannot rely on the recognized warrant exceptions to justify its second, warrantless search of Gandy's phone in July 2018.  The border-search exception does not apply. The purpose of the border-search doctrine is to protect the government's interest in "preventing the entry of unwanted persons and effects" at an international border:

> Time and again, we have stated that "searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." *United States v. Ramsey*, 431 U.S. 606, 616, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977).  Congress, since the beginning of our Government, "has granted the Executive plenary authority to conduct routine searches and seizures at the border, without probable cause or a warrant, in order to regulate the collection of duties and to prevent the introduction of contraband into this country." *Montoya de Hernandez*, *supra*, at 537, 105 S.Ct. 3304 (citing *Ramsey*, supra, at 616–617, 97 S.Ct. 1972 (citing Act of July 31, 1789, ch. 5, 1 Stat. 29)). . . .
>
> It is axiomatic that the United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity.

*Flores–Montano*, 541 U.S. at 152–53.

The government's second, warrantless search of Gandy's phone did not occur at a border or at the time of the crossing.  It happened six years after Gandy returned to the United States after being denied entry to the United Kingdom.  Gandy and his phone have both been in custody since 2012, within the United States.  Searching Gandy's phone had no connection to the government's interest in preventing illegal entry or contraband smuggling at an international border.  Extending the border-search exception to the government's warrantless search would "both undervalue the core Fourth Amendment protection afforded" cell phones under *Riley* and "'untether' the [border-search] exception 'from the justifications underlying it.'"  *Collins*, 138 S. Ct. at 1667 (citing *Riley*, 134 S. Ct. at 2485).

Nor can the government demonstrate any exigency, such as "the need to prevent the

5

imminent destruction of evidence . . . , to pursue a fleeing suspect, and to assist persons who are

seriously injured or are threatened with imminent injury," that would justify searching Gandy's

phone without a warrant.  *Riley*, 134 S. Ct. at 2494.

The government's warrantless search of Gandy's phone violated the Fourth Amendment.

### C.    The After-the-Fact Warrant Does Not Make the Evidence Admissible

The Supreme Court has recognized three Fourth Amendment exceptions involving the

"causal relationship between [an] unconstitutional search or seizure and the discovery of evidence":

> First, the independent source doctrine allows trial courts to admit evidence obtained
> in an unlawful search if officers independently acquired it from a separate,
> independent source.  *See Murray v. United States*, 487 U.S. 533, 537, 108 S.Ct.
> 2529, 101 L.Ed.2d 472 (1988).  Second, the inevitable discovery doctrine allows for
> the admission of evidence that would have been discovered even without the
> unconstitutional source.  *See Nix v. Williams*, 467 U.S. 431, 443–444, 104 S.Ct.
> 2501, 81 L.Ed.2d 377 (1984).  Third, and at issue here, is the attenuation doctrine:
> Evidence is admissible when the connection between unconstitutional police conduct
> and the evidence is remote or has been interrupted by some intervening
> circumstance, so that "the interest protected by the constitutional guarantee that has
> been violated would not be served by suppression of the evidence obtained."
> *Hudson* [*v. Michigan*, 547 U.S. 586, 593, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006)].

*Utah v. Strieff*, 136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016).

The independent source doctrine does not apply.  The government has not shown that the

search done—again—after the government got the search warrant was untainted by the earlier,

warrantless search.  The facts are similar to those in *Murray*, in which "[t]he warrant was obtained

immediately after the illegal search, and no effort was made to obtain a warrant prior to the

discovery of the [evidence] during the illegal search.  The only evidence available that the warrant

search was wholly independent is the testimony of the agents who conducted the illegal search."

*Murray*, 487 U.S. at 549.  "Under these circumstances, the threat that the subsequent search was

tainted by the illegal search is too great to allow for the application of the independent source

6

exception." *Id.* The problem identified in *Murray* applies here, making the independent source doctrine improper. Nor does the inevitable discovery exception apply to make the contents of the cell phone obtained in the warrantless search admissible. The government has not shown that "there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct." *United States v. Jackson*, 596 F.3d 236, 241 (5th Cir. 2010); *United States v. Singh*, 261 F.3d 530, 535 (5th Cir. 2001) ("To satisfy the inevitable discovery exception to suppression, there must have been a reasonable probability that the evidence would have been discovered from an untainted source."). Nor has the government shown that it was "actively pursuing a substantial alternate line of investigation at the time of the constitutional violation." *Jackson*, 596 F.3d at 241. Gandy's cell phone has been in the government's possession since 2012. Though the government accessed some of Gandy's text messages by searching the cell phones of one of the recipients, Minor Victim 1, the government has not shown a reasonable probability that the contested evidence would have been discovered from a source other than Gandy's phone. At oral argument, the government conceded that the text messages were only on Gandy's phone, not on his computer. The government also conceded that the recipients of Gandy's messages were his alleged clients or other minor victims, and that text messages on those recipients' phones were not available. There is no reasonable probability that the contested evidence, the newly produced other messages and images, would have been discovered through other legal means. Admitting the new evidence discovered during the July 2018 warrantless search, without showing a reasonable probability that the evidence would otherwise have been discovered within the course of the investigation, "would completely obviate the warrant requirement." *United States v. Haddix*, 239 F.3d 766, 768 (6th Cir. 2001) ("[T]he United States urges us to interpret the inevitable discovery

doctrine to admit evidence when the police could have obtained a warrant but did not do so . . . . [T]his is untenable."). The inevitable discovery doctrine is inapplicable.

Nor does the attenuation doctrine apply. Suppressing the text messages discovered during the illegal search would serve Gandy's Fourth Amendment interest in protecting his cell phone from warrantless searches. *Hudson*, 547 U.S. at 593. The government has not shown or argued that the connection between the second, warrantless search and the text messages is remote or has been interrupted by an intervening circumstance. Rather, the warrantless search directly resulted in the discovery of the text messages as well as the images the government produced to Gandy a scant week before trial.

The government's after-the-fact search warrant does not cure the constitutional deficiencies that arose as a result of the unconstitutional search.

### D.       The Good-Faith Exception to the Exclusionary Rule does not Apply

The good-faith exception provides that "[t]he fruits of a search need not be suppressed if the agents acted with the objectively reasonable belief that their actions did not violate the Fourth Amendment." *Molina-Isidoro*, 884 F.3d at 290 (citing *United States v. Curtis*, 635 F.3d 704, 713 (5th Cir. 2011)). Suppression of evidence is not warranted if the officers acted reasonably in light of the law existing at the time of an unconstitutional search, because "[i]n such circumstances, the cost of suppression—excluding the evidence from the truth-finding process—outweighs the deterrent effect suppression may have on police misconduct." *Molina-Isidoro*, 884 F.3d at 290 (citing *Curtis*, 635 F.3d at 713–14; *Davis v. United States*, 564 U.S. 229, 237–38 (2011)).

The good-faith exception does not apply to the government's second, warrantless search of Gandy's phone. That search occurred in July 2018. Under the "law existing at the time of [the July

2018] unconstitutional search," it is clear that the search was not justified by the border-search exception. The government conducted the search years after the *Riley* Court clearly held that "what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant." *Riley*, 134 S. Ct. 2473 at 2495. The evidence the government discovered during the 2018 warrantless search is not admissible under the good-faith exception.

## IV.    Conclusion

Gandy's motion to suppress the cell phone evidence that the government produced on July 11 and 13, 2018, (Docket Entry No. 147), is granted.

SIGNED on July 17, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge