AO 243 (Rev. 09/17)

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District | Southern District of Texas | |
|---|---|---|---|
| Name *(under which you were convicted)*:<br>Jason Daniel Gandy | | | Docket or Case No.:<br>4:12cr503 |
| Place of Confinement:<br>FCI Marianna | | Prisoner No.:<br>73006-279 | |
| UNITED STATES OF AMERICA | | Movant *(include name under which convicted)* | |
| | V. | Jason Daniel Gandy | |

## MOTION

1.  (a) Name and location of court which entered the judgment of conviction you are challenging:

    U.S. District Court - SDTX

    (b) Criminal docket or case number (if you know): __4:12cr503__

2.  (a) Date of the judgment of conviction (if you know): __12/23/2018__

    (b) Date of sentencing: __12/18/2018__

3.  Length of sentence: __360 Months__

4.  Nature of crime (all counts):

    Count One - transportation of minors; Count Two - sexual exploitation of children; Count Three - transportation of child pornography; Count Four - Seven - sex trafficking of minors.

5.  (a) What was your plea? (Check one)

    (1) Not guilty ☑    (2) Guilty ☐    (3) Nolo contendere (no contest) ☐

6.  (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

6.  If you went to trial, what kind of trial did you have? (Check one)    Jury ☑    Judge only ☐

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☐    No ☑

AO 243 (Rev. 09/17)

8.  Did you appeal from the judgment of conviction?    Yes ✔    No ☐

9.  If you did appeal, answer the following:

    (a) Name of court:  U.S. Court of Appeals for the Fifth Circuit

    (b) Docket or case number (if you know):  18 -20823

    (c) Result:  Affirmed

    (d) Date of result (if you know):  11/4/2019

    (e) Citation to the case (if you know):  795 Fed. Appx. 225

    (f) Grounds raised:

Sufficiency of the evidence on Counts 1-3 and 6.

    (g) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☐    No ✔

    If "Yes," answer the following:

    (1) Docket or case number (if you know):

    (2) Result:

    (3) Date of result (if you know):

    (4) Citation to the case (if you know):

    (5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
    Yes ☐    No ✔

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

AO 243 (Rev. 09/17)

(4)   Nature of the proceeding: _____

(5)   Grounds raised:

(6)   Did you receive a hearing where evidence was given on your motion, petition, or application?

      Yes ☐       No ☐

(7)   Result: _____

(8)   Date of result (if you know): _____

(b)   If you filed any second motion, petition, or application, give the same information:

(1)   Name of court: _____

(2)   Docket of case number (if you know): _____

(3)   Date of filing (if you know): _____

(4)   Nature of the proceeding: _____

(5)   Grounds raised:

(6)   Did you receive a hearing where evidence was given on your motion, petition, or application?

      Yes ☐       No ☐

(7)   Result: _____

(8)   Date of result (if you know): _____

(c)   Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1)   First petition:      Yes ☐       No ☐

(2)   Second petition:      Yes ☐       No ☐

(d)   If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

AO 243 (Rev. 09/17)

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** Gandy Passed On A Rule 11(c)(1)(C) Plea Agreement That Required A Sentence Of 10 Years Due To Ineffective Assistance of Counsel

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The United States offered Gandy a plea agreement in the Fall of 2014. See attachment A. The plea agreement would have allowed Gandy to plead guilty to a fixed term of ten years pursuant to FRCP 11(c)(1)(C). Additionally, the plea agreement required that Gandy be sentenced to a life term of supervised release. Gandy believed the proposed plea agreement was favorable, but declined to accept the plea agreement because Gandy's lawyers at the time, Dan Cogdell and Charles Flood, never informed Gandy that--after serving one year of supervised release--Gandy was eligible to apply for early termination of supervised release. See, 18 USC 3583(e)(1). Gandy was led to believe by Cogdell and Flood that a life term of supervised release meant that he would have to serve supervised release for the rest of his life. This was deficient performance.

The requirement that Gandy serve a lifetime period of supervised release was a deal breaker for Gandy, and critical to Gandy's decisionmaking on whether to accept or reject the plea. Supervised release was "the" most important factor for Gandy because Gandy wanted to (and still wants) to travel freely to other countries after his release from prison--and potentially move overseas, permanently. Additionally, Gandy did not want to be subject to the litany of conditions of supervision, both standard and special, that would operate--in Gandy's eyes--as significant restraints on his liberty. See continuation page ....

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

Claims of ineffective assistance are more appropriately reserved for collateral attack.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☑

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☐

**See Ground One (Continued)**

Cogdell and Flood were ineffective for failing to explain to Gandy that he was eligible to apply for early termination of supervised release after completing one year of supervision.

In addition, even if early termination of supervision was not granted, neither Cogdell nor Flood explained to Gandy that the Court could allow Gandy to travel overseas--or even move overseas--while on supervised release because the standard release condition about travel outside the jurisdiction of supervision, 18 U.S.C. § 3563(b)(14), is not mandatory.

Moreover, all of the conditions of supervision are subject to modification. 18 U.S.C. § 3583(e)(2). Neither Cogdell nor Flood told Gandy about this.

The Supreme Court and the Fifth Circuit have both recognized that the prejudice inquiry for a guilty plea ineffectiveness claim of this nature "focuses on the defendant's decisionmaking." *United States v. Valdez*, 973 F.3d 396, 403 (5th Cir. 2020) (*citing Lee v. United States*, 137 S. Ct. 1958, 1966-67 (2017)). Proper focus on Gandy's decisionmaking demonstrates that there is a reasonable probability Gandy would have accepted the plea offer—instead of proceeding to trial—had Gandy's counsel not been deficient.

Finally, there is no reason to believe the Court would not have accepted the binding plea agreement.

See, Memorandum of Law and Facts in Support of 28 U.S.C. § 2255 Motion and Supporting Declarations (to be filed forthwith).

AO 243 (Rev. 09/17)

    (4)   Did you appeal from the denial of your motion, petition, or application?

          Yes ☐      No ☐

    (5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

          Yes ☐      No ☐

    (6)   If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available):

    (7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TWO:** _____

    (a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

    (b)  **Direct Appeal of Ground Two:**

        (1)   If you appealed from the judgment of conviction, did you raise this issue?

            Yes ☐     No ☐

AO 243 (Rev. 09/17)

(2)   If you did not raise this issue in your direct appeal, explain why:

(c)   **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐     No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(3)   Did you receive a hearing on your motion, petition, or application?

Yes ☐     No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes ☐     No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐     No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

AO 243 (Rev. 09/17)

**GROUND THREE:** _____

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)  **Direct Appeal of Ground Three:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐      No ☐

(2)   If you did not raise this issue in your direct appeal, explain why:

(c)  **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐      No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(3)   Did you receive a hearing on your motion, petition, or application?

Yes ☐      No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes ☐      No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐      No ☐

AO 243 (Rev. 09/17)

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:** _____

(a)   Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)   **Direct Appeal of Ground Four:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐     No ☐

(2)   If you did not raise this issue in your direct appeal, explain why:

(c)   **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐     No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

AO 243 (Rev. 09/17)

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)   Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐   No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13.   Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

AO 243 (Rev. 09/17)

14.  Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?        Yes ☐        No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a)  At the preliminary hearing:
See Docket

(b)  At the arraignment and plea:
See Docket

(c)  At the trial:
See Docket

(d)  At sentencing:
See Docket

(e)  On appeal:
See Docket

(f)  In any post-conviction proceeding:
See Docket

(g)  On appeal from any ruling against you in a post-conviction proceeding:

16.  Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?        Yes ☑        No ☐

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?        Yes ☐        No ☑

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future:

(b)  Give the date the other sentence was imposed:

(c)  Give the length of the other sentence:

(d)  Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?        Yes ☐        No ☐

AO 243 (Rev. 09/17)

18.    TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

This motion is timely as it is filed within one year and 90 days from the Fifth Circuit's judgment affirming the judgment of the district court.

---

    * The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:
    A one-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of –
        (1)   the date on which the judgment of conviction became final;
        (2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
        (3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
        (4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

AO 243 (Rev. 09/17)

Therefore, movant asks that the Court grant the following relief:

Vacate Gandy's convictions and order the United States to re-offer the 10-year binding plea agreement.

_____

or any other relief to which movant may be entitled.


_____/s/Benson Weintraub_____
Signature of Attorney (if any)


I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____ .
(month, date, year)


Executed (signed) on _____ (date)


_____
Signature of Movant


If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

Page 13 of  13

**ATTACHMENT A**

**(PROPOSED PLEA AGREEMENT)**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 12-503** |
| | § | |
| **JASON GANDY** | § | |
| **Defendant.** | § | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney, for the Southern District of Texas and Sherri L. Zack, Assistant United States Attorney, and the defendant, Jason Gandy, and the defendant's counsel, Dan Cogdell, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1.      Defendant agrees to plead guilty to Count(s) One of the Indictment.   Count One charges the defendant with Transportation of Minors, in violation of Title 18, United States Code, § 2423(a). Defendant, by entering this plea, agrees that he/she is waiving any right to have the facts that the law makes essential to the punishment either charged in the Indictment or proven to a jury or judge beyond a reasonable doubt.

### Punishment Range

2.      The **statutory** maximum penalty for each violation of Title 18, United States Code, § 2423(a), is a term of imprisonment of not less than 10 years up to Life and a fine of not more than $250,000.00.    Additionally, Defendant shall receive a term of supervised release after imprisonment of at least 5 years up to Life.   Title 18, United States Code, §§ 3559(a) and 3583(b).

1

Defendant acknowledges and understands that if he/she should violate the conditions of any period of supervised release which may be imposed as part of his/her sentence, then Defendant may be imprisoned for the entire term of supervised release,   without credit for time already served on the term of supervised release prior to such violation.    Title 18, United States Code, §§ 3559(a) and 3583(e)(3).  Defendant understands that he/she cannot have the imposition or execution of the sentence suspended, nor is he/she eligible for parole.

3.     The defendant understands that under the Sex Offender Registration and Notification Act, the defendant must register and keep such information current in the jurisdictions where the defendant resides, is employed, and is a student.   The defendant further understands that the requirement to keep the registration current includes informing such jurisdictions not later than three (3) business days after any change of the defendant's name, residence, employment or student status.   The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, specifically, Title 18, United States Code, Section 2250, as well as applicable state statutes.

### Mandatory Special Assessment

4.     Pursuant to Title 18, U.S.C.  §  3013(a)(2)(A), immediately after sentencing, defendant will pay to the Clerk of the United States District Court  a special assessment in the amount of one hundred dollars ($100.00) per count of conviction.  The payment will be by cashier's check or money order  payable to the Clerk of the United States District Court,  c/o District Clerk's Office, P.O. Box 61010,   Houston, Texas   77208, Attention: Finance.

### Fine, Reimbursement and Restitution

5.     Defendant understands that under the Sentencing Guidelines, the Court is permitted to order the defendant to pay a fine that is sufficient to reimburse the government for the costs of

2

any imprisonment or term of supervised release, if any is ordered.

6.      Defendant understands that under the Sentencing Guidelines and applicable federal law, in the case of an identifiable victim, the Court may order restitution if authorized by law and requested by a victim.

7.      Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately, and defendant will not attempt to avoid or delay payment.  Defendant further agrees not to contest the forfeiture of the items described in the indictment

8.      Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) prior to sentencing if he/she is requested to do so.     In the event that the Court imposes a fine or orders the payment of restitution as part of the Defendant's sentence, the Defendant shall make complete financial disclosure by truthfully executing a sworn financial statement immediately following his/her sentencing.

**Agreement Binding - Southern District of Texas Only**

9.      The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Indictment.     This Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant.   It does not bind any other United States Attorney.   The United States will bring this Plea Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices if requested.

**Waiver of Appeal**

10.      Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.  The defendant agrees to waive the right to appeal the sentence

imposed or the manner in which it was determined on any grounds set forth in Title 18 U.S.C. § 3742.   Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final.   The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.   In the event the Defendant files a notice of appeal following the imposition of the sentence, the United States will assert its rights under this agreement and seek specific performance of this waiver.

11.      In exchange for the Agreement with the United States, Defendant waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to any prosecution that is not time barred on the date that this Agreement is signed, in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or (c) Defendant's plea is later withdrawn.

12.      In agreeing to these waivers, defendant is aware that a sentence has not yet been determined by the Court.   The defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction, not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court.   The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court.   *United States v. Booker*, 125 S.Ct. 738 (2005).   Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

4

13.     The Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

14.     The United States agrees to each of the following:

(a)     At the time of sentencing, the United States agrees not to oppose defendant's anticipated request to the Court and the United States Probation Office that he/she receive a two (2) level downward adjustment pursuant to U.S.S.G. Section 3E1.1(a) should the defendant accept responsibility as contemplated by the Sentencing Guidelines.

(b)     If the defendant qualifies for an adjustment under U.S.S.G. Section 3E1.1(a), the United States agrees not to oppose the defendant's request for an additional one level departure based on the timeliness of the plea or the expeditious manner in which the defendant provided complete information regarding his role in the offense if the defendant's offense level is 16 or greater.

(c)     The United States agrees at the time of sentencing to request a sentence of 10 years on Count One.   The term of imprisonment is to be followed by a term of Life on supervised release. The United States agrees that the amount of any fine imposed rests with the Court. The United States agrees that this recommendation will bind the Court, if this agreement is accepted, pursuant to Rule 11(c)(1)(C).

### United States' Non-Waiver of Appeal

15.     The United States reserves the right to carry out its responsibilities under the sentencing guidelines.   Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office; and,

(d)     to file a pleading relating to these issues, in accordance with U.S.S.G. Section

6A1.2 and Title 18, U.S.C. § 3553(a).

### Sentence Determination

16.    Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, U.S.C. § 3553(a).   Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court until the Court accepts the plea agreement.   If the Court accepts the plea agreement, Defendant will remain bound to fulfill all of the obligations under this plea agreement.   If the Court rejects the plea agreement, Defendant will be given an opportunity to withdraw his plea of guilty.

### Rights at Trial

17.    Defendant represents to the Court that he is satisfied that his/her attorney has rendered effective assistance.   Defendant understands that by entering into this agreement, he/she surrenders certain rights as provided in this plea agreement.   Defendant understands that the rights of a defendant include the following:

(a)    If defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel.   The trial may be conducted by a judge sitting without a jury if the defendant, the United States, and the court all agree.

(b)    At a trial, the United States would be required to present witnesses and other evidence against the defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them.   In

6

turn, the defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf.    If the witnesses for defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court.

(c)    At a trial, defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, he/she could testify on his/her own behalf.

**Factual Basis for Guilty Plea**

18.    Defendant is pleading guilty because he is guilty of the charges contained in Count One of the Indictment.   If this case were to proceed to trial, the United States could prove each element of the offenses charged in each count beyond a reasonable doubt.   The parties agree that this factual basis does not include all relevant conduct that may be considered by the Court for sentencing purposes.   The following facts, among others would be offered to establish the Defendant's guilt:

On July 19, 2012, Jason Gandy (GANDY) arrived in the United Kingdom (UK) at Heathrow International Airport aboard United Airlines Flight 4 which he boarded in Houston, Texas.   GANDY was traveling with a 15 year-old male KV (D.O.B. xx/xx/1997) KV is not related to GANDY.

Upon landing in the UK, GANDY was inspected by UK Immigration (UKI) Officers of the UK Border Agency and selected for secondary inspection. UKI authorities became suspicious when GANDY was asked why he wanted to enter the UK and why he was traveling with a minor child.   UKI authorities were also concerned as GANDY admitted that he was not related to KV and contacted KV's mother.   KV's mother informed the UKI officers that she had given KV permission to travel with GANDY, but also gave a conflicting reason as to the purpose of the trip.   Based upon interviews with GANDY, KV and KV's mother, UKI officials denied GANDY and KV entry and made arrangements for them to immediately return to the United States.

On or about, July 20, 2012, at approximately 1:35 pm (CDT), GANDY arrived at George

Bush Intercontinental Airport in Houston, Texas, on United Airlines Flight 35.   Bush Intercontinental Airport is in Houston, Harris County, Texas and within the Southern District of Texas.   Upon disembarking the plane, GANDY was escorted by U.S. Customs and Border Protection (CBP) officers to the secondary inspection area.   During secondary inspection, GANDY made a binding declaration to the CBP officers that the luggage and other items he was carrying were his.

HSI SA Juanae Johnson along with Houston Police Department Detective Joseph Roscoe, met with GANDY upon his arrival and questioned him as to the purpose of his trip to the United Kingdom and his travel with KV.   GANDY was advised of his Miranda rights and informed that he was not under arrest.   Gandy waived his rights and spoke willingly and voluntarily with law enforcement about his travels to the UK with KV.   The interview took place in the baggage search area in the CBP secondary inspection area.

GANDY stated that he and KV had met through a mutual "friend" on the social networking website "Facebook".   GANDY, who is 35 years-old, knew KV was only 15 years of age, however he did not disclose his age to the child.

Upon meeting KV, GANDY took him to the mall to celebrate his 15th birthday. GANDY also admitted taking KV to a concert, and informed agents that he and KV began to develop a friendship. GANDY admitted to lavishing KV with gifts in person and via the mail. GANDY stated that he liked buying KV nice things, because KV's family was unable to.

GANDY informed the agents that he is a licensed massage therapist and he buys and sells real estate for a living. GANDY told agents that he owned and operated a massage business known as, JasonRMT.com. The website indicates that GANDY performs massages for a fee which must be paid in cash.   Additionally, the massages can be "incalls" or "outcalls" which mean that either the customer comes to GANDY or he goes to the customer.   The terms "incalls" and "outcalls" are terms frequently associated with prostitution and advertisements for prostitution activities. GANDY informed the agents that KV spends the night at least once a week at his home.

KV was also interviewed and based on information provided by GANDY and the KV, agents were able to establish KV was with GANDY almost every weekend.   GANDY also told agents that when they are together, he gives massages to KV. KV corroborated GANDY's

statement and informed agents that GANDY, on at least on one occasion, had masturbated him, KV, during the massage session. GANDY told the agents that after every massage, GANDY masturbates in KV's presence, and on several occasions GANDY and KV have masturbated in the presence of one another.

GANDY also told agents that on at least one occasion he has taken a nude picture of KV's backside without his permission while they were at GANDY'S home.   GANDY also stated that he downloaded the picture on his laptop.   KV confirmed that GANDY has taken other photos of his nude backside at the home but he does not know where those photos are. When asked to elaborate, KV indicated that he was joking with GANDY one day when they were together about the photos.   KV took off his pants and then allowed GANDY to take nude photos of him.

Personnel trained in child psychology from the Harris County Children's Assessment Center along with officers also interviewed KV.   KV confirmed that GANDY runs a massage business which he operates in his home and in the Recreational Vehicle (RV) located on the property.   KV was recruited by GANDY in May of 2012 to assist with GANDY's massage business and KV has done so up until the present.   At GANDY's direction, KV massages men while they are completely nude.   The men are also allowed to fondle KV's genitals during the massage sessions.   KV was uncomfortable conducting massages in the nude and allowing the men to touch him in the beginning. GANDY told KV that in order for them to continue to hang out and make money together he had to allow the clients to touch him. During these massages KV would also masturbate the men.   KV estimated that he has been paid between $400.00 and $500.00 dollars since working for GANDY.

KV indicated that he has been instructed to massage certain clients alone on at least one occasion. KV stated that he would "stay" in the RV while at GANDY's residence, and men would enter the RV and tell KV "I am here for you."   KV would massage these men alone while in the nude and masturbate them. KV knew that GANDY was paid between $80.00 and $120.00 for the massage sessions.   If GANDY alone provided what was referred to as a "single" massage, the fee was $80.00.   If both KV and GANDY provided what was referred to as a "four hand" massage together, the fee was $120.00.   Upon completion of each massage, the clients paid GANDY, and then GANDY would pay KV between $20.00 and $40.00. KV went on to say

9

that GANDY has a large clientele and GANDY is busy most of the time.

GANDY stated that he and KV recently began discussing taking a trip to England. GANDY purchased both plane tickets (approximately $2150.00) and gave KV money to purchase an expedited passport (approximately $200.00). GANDY received a signed and notarized affidavit form from KV's mother that authorized KV to travel with GANDY and remain in the UK in GANDYS' custody from July 18, 2012 until August, 22, 2012. GANDY had not reserved any accommodations in the UK and was intending on finding a place to stay once they landed in the UK.

During the secondary search of GANDY's personal belongings, CBP officers discovered approximately 90 condoms. When agents questioned GANDY about the condoms he told agents that he utilized the condoms for massaging his clients prostates, and he had some "hope" of possibly using a couple of condoms with KV once in London.

KV also told interviewers that GANDY intended to start a massage business while in London that was similar to the one he ran in the Houston area.   KV stated that GANDY told him that he was unaware of the laws in the UK governing the types of massages he would be legally permitted to provide. KV also stated that on July 18th, 2012, while they were waiting to board their flight to the UK, GANDY informed KV that he had two clients waiting for them in the UK. They were set to meet him between July 22nd and July 24th, 2012.

KV stated that GANDY promised KV that once in London he would possibly be able to attend the Olympics, and that he would be taken to his favorite clothing store and be able to see his favorite bands. KV was under the impression that he would be required to perform some massages while he was in the UK but he was most excited about the shopping, the Olympics and seeing his favorite bands.

## Breach of Plea Agreement

19.     If defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and the defendant's plea and sentence will stand.  If at any time defendant retains, conceals or disposes of assets in violation of this plea agreement, or if defendant knowingly

withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.   Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

20.     Whether the defendant has breached any provision of this plea agreement shall be determined solely by the United States through the United States Attorney's Office, whose judgment in that regard is final.

## Forfeiture

21.     Defendant agrees to waive any and all interest in any asset which is the subject of any related administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal, with the exception of the real property located at Truxillo Street and Dowling Street, Houston, Texas.   Defendant admits and agrees that the following assets, which are the subject of the related civil forfeiture action styled United States of America v. 2005 C5500 Chevrolet Recreational Vehicle, et al., and pending before the Houston Division of the United States District Court for the Southern District of Texas under Case No. 4:12-cv-3668, were used or intended to be used to commit or to facilitate the commission of transportation of a minor with intent to engage in criminal sexual activity which form the basis of this criminal action:

A.     The real property located at Truxillo Street and Dowling Street, Houston, Texas, and legally described as:

> Lot Eleven 11, in Block Five (5) of Washington Terrace, a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Volume 557, Page 68 of the Deed Records of Harris County, Texas;

B.     A 2005 C5500 Chevrolet Recreational Vehicle, VIN # 1GBE5U1E15F505062; and

11

C.      A 2012 Toyota Scion IQ, VIN # JTNJJXB06CJ010887.

22.      Defendant agrees that he will sign an agreed judgment in the related civil forfeiture action (Case No. 4:12-cv-3668) that will forfeit all right, title, and interest in the assets which are the subject of that action, except for the real property located at Truxillo Street and Dowling Street, Houston, Texas, to the United States.   The terms of the agreed judgment will be as follows:

A.      Defendant agrees to pay the United States a sum of money, equal to the fair market value as determined by the United States, of the real property located at Truxillo Street and Dowling Street, Houston, Texas, in lieu of forfeiture of that property. Defendant agrees to pay the United States in the form of a cashier's check made payable to the United States, or its designee, at or before the time of re-arraignment.

B.      Defendant understands and agrees that he is and will remain liable for any unpaid ad valorem taxes on the real property referenced above.

C.      Defendant agrees to allow/provide the United States, or its designee, access to the real property for purposes of appraising the property.

D.      Defendant agrees to the forfeiture of the 2005 C5500 Chevrolet Recreational Vehicle, VIN # 1GBE5U1E15F505062.

E.      Defendant agrees to the forfeiture of the 2012 Toyota Scion IQ, VIN # JTNJJXB06CJ010887.

23.      Defendant waives the right to challenge the agreed judgment in the civil forfeiture action referenced above in any manner (including by direct appeal, habeas corpus, or any other means) and on any grounds, including that the forfeiture constitutes an excessive fine or punishment.   The defendant agrees to take all steps requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture

12

proceeding.

**Complete Agreement**

24.     This written plea agreement, consisting of 15 pages, including the attached addendum of defendant and his/her attorney, constitutes the complete plea agreement between the United States, defendant and his/her counsel.   No promises or representations have been made by the United States except as set forth in writing in this plea agreement.   Defendant acknowledges that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

25.     Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on _____ , 2014.

_____
Jason Gandy
Defendant

Subscribed and sworn to before me on _____ , 2014.

UNITED STATES DISTRICT CLERK

By:    _____
Deputy United States District Clerk

APPROVED:

KENNETH MAGIDSON
United States Attorney

By:_____            _____
Sherri L. Zack                                          Dan Cogdell
Assistant United States Attorney            Attorney for Defendant

13