**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JASON DANIEL GANDY, | § | |
| *Defendant-Movant,* | § | |
| | § | Criminal No. 4:12-503-1 |
| v. | § | (Civil No. 4:21-662) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| *Plaintiff-Respondent.* | § | |

**UNITED STATES' RESPONSE TO
GANDY'S 28 U.S.C. § 2255 MOTION**

The United States respectfully requests that this Court deny Jason

Gandy's motion under 28 U.S.C. § 2255. Doc. 238; *see* Doc. 244

(memorandum in support); Doc. 242 (order to respond).[1] Represented by

counsel, Gandy raises one claim of ineffective assistance against his trial

counsels—Dan Cogdell and Emmett Flood—relating to a rejected plea

offer from 2014. *Id.*

First, Gandy cannot show that his trial counsels' performance was

constitutionally deficient. They communicated the Government's plea

---

[1] Citations to "Doc. __" refer to the numbered documents in the docket for case No. 4:12-CR-503-1; page citations are to the page numbers identified in the ECF header for the document. Citations to "PSR ¶ __" refer to the Presentence Investigation Report, filed on October 12, 2018, corresponding with Doc. 183. Citations to "Guidelines" and "U.S.S.G." refer to the 2016 version of the U.S. Sentencing Guidelines Manual (U.S. Sentencing Comm'n 2016). PSR ¶ 78.

offer and explained his potential sentence. Gandy's § 2255 claim is both conclusory and speculative.

Second, Gandy fails to demonstrate prejudice. He cannot show a reasonable probability that, even if he had known that the district court could modify or terminate his supervised release term, he would have accepted the Government's plea offer.

Accordingly, Gandy's § 2255 motion should be denied.

## I.    Factual background.

Gandy was born in May 1977. PSR ¶ 140. He was a licensed massage therapist who operated a successful massage business near Houston, Texas. PSR ¶ 14. Many of Gandy's massage services, however, included an illicit sexual component. From 2005 through 2012, Gandy recruited, exploited, and paid underage boys to provide sexual massages to interested clients. PSR ¶¶ 19–20, 29–32, 45, 48–49, 59–61.

Additionally, Gandy had a sexual interest in these minor boys. He developed personal and sexual relationships with them. PSR ¶¶ 13, 15, 23, 26–28, 44–45, 53–54, 56–58. He even watched child pornography in their presence, sometimes while masturbating. PSR ¶¶ 25, 34, 46, 63. Four of these underage boys were Minor Victim Nos. 1, 2, 3, and 4.

### A.   Gandy's relationship with Minor Victim No. 3.

Gandy met Minor Victim No. 3 in summer of 2005. Doc. 190 at 146; PSR ¶ 52. Minor Victim No. 3 was 15 years old (born in February 1990). PSR ¶ 52. Gandy developed a romantic and sexual relationship with him. PSR ¶¶ 53–54, 56. Gandy recruited Minor Victim No. 3 to give massages to clients for pay, but he would leave the room before any sexual activity occurred. PSR ¶¶ 53, 56.

### B.   Gandy's relationship with Minor Victim No. 2.

Gandy met Minor Victim No. 2 in fall of 2005. Doc. 190 at 170; PSR ¶ 44. Minor Victim No. 2 was 17 years old (born in December 1987). PSR ¶ 43. After meeting through a mutual friend, Gandy developed a romantic and sexual relationship with him. PSR ¶¶ 44–45. Gandy recruited Minor Victim No. 2 to give sexual massages to clients for pay, which included masturbation. PSR ¶¶ 45. During their time together, Minor Victim No. 2 saw that Gandy had "extensive files" of child pornography on his desktop computer and video camera. PSR ¶ 46. Gandy's relationship with Minor Victim No. 2 lasted around three years. PSR ¶ 44.

### C.    Gandy's relationship with Minor Victim No. 4.

Gandy met Minor Victim No. 4 in fall of 2007. Doc. 190 at 210; PSR ¶ 57. Minor Victim No. 4 was 16 years old (born in April 1991). PSR ¶ 57. After meeting online, Gandy developed a personal and sexual relationship with him. PSR ¶¶ 57–59. Gandy recruited Minor Victim No. 4 to give sexual massages to clients for pay, which included masturbation and rape. PSR ¶¶ 59–61. During their time together, Minor Victim No. 4 saw that Gandy had child pornography on his laptop computer, including "images of minor boys performing oral sex on Gandy" in Indonesia. PSR ¶ 63. Gandy described Indonesia as an "amazing place" where a "little boy [or] girl" would give a massage for a few dollars. PSR ¶ 62.

### D.    Gandy's relationship with Minor Victim No. 1.

Gandy met Minor Victim No. 1 in spring of 2012. Doc. 190 at 51; PSR ¶ 13. Minor Victim No. 1 was 14 years old (born in April 1997). PSR ¶ 9. After meeting online, Gandy developed a personal and sexual relationship with him. PSR ¶¶ 13, 15, 23, 26–28, 32. Gandy recruited Minor Victim No. 1 to give sexual massages to clients for pay, which included masturbation and oral sex. PSR ¶¶ 19–20, 29–32. During their time together, Gandy took nude pictures of Minor Victim No. 1. PSR

4

¶¶ 15, 33. Gandy and Minor Victim No. 1 also masturbated each other while watching pornography. PSR ¶ 34.

In the summer of 2012, Gandy and Minor Victim No. 1 decided to take a trip to London, United Kingdom. PSR ¶ 16. While there, they planned to attend the Olympics, go shopping, and perform sexual massages for clients. PSR ¶¶ 21–22. In preparation for the trip, Gandy helped Minor Victim No. 1 pay for a plane ticket, obtain written permission from his mother (by lying to her), and post an advertisement on Craigslist to get massage clients in London. PSR ¶¶ 16, 35–36. Before departing, Gandy already had booked massages with two clients there. PSR ¶ 21.

On July 19, 2012, Gandy and Minor Victim No. 1 arrived in London. PSR ¶¶ 9–10. At U.K. immigration, Gandy and Minor Victim No. 1 gave conflicting information regarding their relationship and reasons for travel. PSR ¶ 10. Following further questioning and investigation, U.K. immigration officials denied entry to Gandy and Minor Victim No. 1, returned them on separate flights, and contacted U.S. law enforcement. PSR ¶¶ 9–10. Upon their return to Houston, Gandy and Minor Victim No. 1 were met by U.S. law enforcement. PSR ¶¶ 11–12, 17–18.

## II.   Procedural history.

### A.   Original indictment.

In August 2012, a grand jury returned a one-count indictment against Gandy. Doc. 11. Count 1 charged him with transportation of Minor Victim No. 1 with intent to engage in criminal sexual activity on or about July 19, 2012, in violation of 18 U.S.C. § 2423(a). *Id.*

### B.   Declined plea offer.

In 2014, the Government offered Gandy a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). Doc. 244-1. Under this offer, the defendant would agree to plead guilty to Count 1 of the indictment. *Id.* at 2. He would agree that he was subject to the following statutory ranges: an imprisonment term of 120-months-to-life and a supervised release term of 60-months-to-life. *Id.* He would agree that, "if he[] should violate the conditions of any period of supervised release which may be imposed as part of his[] sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation." *Id.* at 3. He would agree that "he[] cannot have the imposition or execution of the sentence suspended, nor is he[] eligible for parole." *Id.*

He would agree to register and keep his information current under the Sex Offender Registration and Notification Act of 2006 (SORNA). *Id.*

Next, the defendant would "waive[] the right to appeal the sentence imposed or the manner in which it was determined on any grounds set forth in [18 U.S.C. § 3742]." *Id.* at 4–5. Also, the defendant would "waive[] the right to contest his[] conviction or sentence by means of any post-conviction proceeding." *Id.* at 5.

In exchange, the Government would agree to several conditions. *Id.* at 6. First, it would not oppose the defendant's anticipated request to receive a 2-level adjustment under U.S.S.G. § 3E1.1(a) for acceptance of responsibility. *Id.* Second, the Government would not to oppose the defendant's request for an additional 1-level adjustment under § 3E1.1(b), if the defendant qualifies based on the timeliness of the plea or the expeditious manner in which he provided complete information regarding his role in the offense if his offense level is 16 or greater. *Id.* Third, it would "request a sentence of 10 years on Count One . . . to be followed by a term of Life on supervised release." *Id.* This recommendation would "bind the Court, if this agreement is accepted, pursuant to Rule 11(c)(1)(C)." *Id.*

Further, the defendant would agree that "the Court has the authority to impose any sentence up to and including the statutory maximum set for the offense[] to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentence Guidelines." *Id.* at 7. "If the Court accepted the plea agreement, Defendant [would] remain bound to fulfill all of the obligations under this plea agreement." *Id.*

For his offense, the defendant would agree that the Government could prove each element of Count 1 beyond a reasonable doubt. *Id.* at 8. He would agree to a factual basis that detailed the following: his sexual relationship with Minor Victim No. 1, his taking of nude photographs of Minor Victim No. 1, his use of Minor Victim No. 1 to perform sexual massages for clients for pay, and his transportation of Minor Victim No. 1 to the United Kingdom to perform sexual massages for clients in July 2012. *Id.* at 8–11.

In September 2014, Gandy declined the Government's plea offer and chose not to plead guilty. *See* Doc. 58.

### C.      Second superseding indictment.[2]

In February 2018, a grand jury returned a second superseding seven-count indictment against Gandy:

- Count 1 charged him with transportation of Minor Victim No. 1 with intent to engage in criminal sexual activity on or about July 19, 2012, in violation of § 2423(a);

- Count 2 charged him with sexual exploitation of Minor Victim No. 1 to produce a visual depiction from on or about April 1 to July 18, 2012, in violation of 18 U.S.C. § 2251(a), (e);

- Count 3 charged him with transportation of child pornography on or about July 19, 2012, in violation of 18 U.S.C. § 2252A(a)(1), (b);

- Count 4 charged him with sex trafficking of Minor Victim No. 1 from on or about April 1 to July 19, 2012, in violation of 18 U.S.C. §§ 1591(a), (b) and 2;

- Count 5 charged him with sex trafficking of Minor Victim No. 2 from on or about November 1 to December 27, 2005, in violation of 18 U.S.C. §§ 1591(a), (b) and 2;[3]

- Count 6 charged him with sex trafficking of Minor Vitim No. 3 from on or about June 1 to August 31, 2005, in violation of 18 U.S.C. §§ 1591(a), (b) and (2);

---

[2] Almost six years passed between the original indictment, filed on August 15, 2012, and the second superseding indictment, filed on February 15, 2018. In its opinion denying Gandy's motion to dismiss Count 1 for lack of a speedy trial, the district court provided a summary of the procedural history of the case. Doc. 142.

[3] At trial, the district court granted the Government's request to correct, in the second superseding indictment, the dates for Count 5 to the following: November 1 to December 27, 2005. Doc. 189 at 9–11.

- Count 7 charged him with sex trafficking of Minor Victim No. 4 from on or about August 1 to November 31, 2007, in violation of 18 U.S.C. §§ 1591(a), (b) and (2).

Doc. 115. Gandy proceeded to trial.

## D.  Trial.

In July 2018, Gandy's trial lasted three days. The Government presented eight total witnesses, including Minor Victim Nos. 1, 2, 3, and 4; two U.K. immigration officers; and two U.S. law enforcement agents. Doc. 190 at 46–288; Doc. 192 at 1–59. Gandy presented no witnesses and declined to testify. Doc. 192 at 66–67. Following closing arguments, the jury found Gandy guilty on all seven counts. *Id.* at 148–52.

## E.  Sentencing.

After adopting the PSR, the district court calculated Gandy's Guidelines range as life imprisonment, based on a total offense level of 43 and criminal history category of I. Doc 207 at 16–18; *see* Doc. 205 (adopting the PSR without change).

The Government requested a sentence within the Guidelines range, whereas Gandy asked for one below it. *Id.* at 27–38. The district court imposed a sentence of 360 months' imprisonment on Counts 1–2, 4–7,

and 240 months' imprisonment on Count 3—all terms to run concurrently. *Id.* at 44–50.

The district court imposed judgment on December 18, 2018, which the clerk entered on December 23, 2018. Doc. 204.[4]

### F.    Direct appeal.

Gandy timely appealed. Doc. 202. On direct appeal, he challenged the sufficiency of the evidence for his convictions for Counts 1, 2, 3, and 6, to which the Government responded. *See* Doc. 230.

The Fifth Circuit affirmed, holding that sufficient evidence supported Gandy's convictions for these counts. *Id*. The judgment issued as mandate on November 26, 2019. Doc. 229.

## III.   Gandy's instant motion under 28 U.S.C. § 2255.

On February 2, 2021, Gandy timely mailed to this Court the instant motion to vacate, set aside, or correct the sentence under § 2255. Doc. 238; *see* Doc. 244 (memorandum in support).

In his motion, Gandy's sole claim is that his trial counsels were constitutionally ineffective for failing to inform him that his supervised release term could be modified or terminated early under 18 U.S.C.

---

[4] In August 2019, the district court amended Gandy's judgment but only with regard to his restitution order. Docs. 225–27.

§ 3583(e). Doc. 244 at 8–10. Had they done so, Gandy argues, he would have accepted the Government's plea offer from 2014. *Id.* at 10–11. Because Gandy's claim is meritless, his § 2255 motion should be denied.

## IV.  Applicable law.

### A.    28 U.S.C. § 2255.

A prisoner in federal custody may collaterally challenge his conviction by "mov[ing] the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255.

Motions under § 2255, however, may only seek relief for particular types of errors. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). "[R]eview of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." *Id.* "Other types of error may not be raised under section 2255 unless the defendant demonstrates that the error could not have been raised on direct appeal *and*, if condoned, would result in a complete miscarriage of justice." *Id.* (emphasis in original). Thus, a claim asserted in a § 2255 motion is procedurally defaulted if it could have been raised

on direct appeal but was not. *Id.* A motion under § 2255 "may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982).

Moreover, because Gandy is represented by counsel, his pleadings are not given the liberal construction afforded *pro se* defendants. *See Haines v. Kerner,* 404 U.S. 519, 520–21 (1972).

## B.   Ineffective assistance of counsel.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). To succeed on a claim of ineffective assistance of counsel in a § 2255 motion, a defendant must satisfy both parts of the test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir. 1995). Under *Strickland*, the defendant must show that: (1) counsel's performance was deficient—meaning "fell below an objective standard of reasonableness," and (2) this performance sufficiently prejudiced the defendant—meaning a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 687–88, 694.

Counsel's performance carries a "strong presumption" of falling within the "wide range" of reasonable professional assistance. *Premo v.*

*Moore*, 562 U.S. 115, 121 (2011). To overcome this, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 121–22. "[T]he standard for judging counsel's representation is a *most deferential* one." *Id.* at 122 (emphasis added). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms.'" *Id.*

"Prejudice results if the attorney's deficient performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable." *United States v. Dovalina*, 262 F.3d 472, 474 (5th Cir. 2001). To establish prejudice, "the defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002) (quoting *Strickland*, 466 U.S. at 694). The defendant must "affirmatively prove," not just allege, prejudice. *Strickland*, 466 U.S. at 693.

"Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *United States v. Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014) (quoting

14

*Strickland*, 466 U.S. at 668). Mere disagreement with defense counsel's strategy is insufficient to show ineffective assistance. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). If this Court can conclude, as a matter of law, that the movant "cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary hearing is not necessary and [it] may affirm." *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995).

## V.    Gandy's 28 U.S.C. § 2255 motion should be denied.

Gandy's § 2255 motion should be denied. In his only claim, he argues that his trial counsels were constitutionally ineffective for failing to inform him that his supervised release term could be modified or terminated early under § 3583(e). Doc. 244 at 8–10. Had they done so, Gandy argues, he would have accepted the Government's proposed plea offer from 2014. *Id.* at 10–11. This claim is without merit.

### A.    Performance.

Gandy cannot show that his counsel performed deficiently under *Strickland*. "[S]trict adherence to the deferential *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Premo*, 562 U.S. at 124–25. "[T]he court should

recognize that counsel is *strongly presumed* to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690 (emphasis added). Gandy cannot overcome this strong presumption. *Id.*

For starters, Gandy's own exhibits establish that his trial counsels performed adequately by communicating the Government's plea offer. His trial counsels "provided [him] with a proposed Fed. R. Crim P. 11(c)(11)(C) written plea agreement." Doc. 244-2 at 2; *see* Doc. 244-3 at 2 (declaring that trial counsels "communicated with [Gandy's father and stepmother] about a plea deal offered by the government"); Doc. 244-4 at 2 (same).

Furthermore, the Government's plea offer itself informed Gandy of his potential sentence. According to the offer, Gandy would have to agree that Count 1 carried the following statutory ranges: an imprisonment term of 120-months-to-life and a supervised release term of 60-months-to-life. Doc. 244-1 at 2. He would have to agree that "he[] cannot have the imposition or execution of the sentence suspended, nor is he[] eligible for parole." *Id.* at 3. He would have to agree to register and keep his information current under SORNA. *Id.* Additionally, he would have to

agree for the Government to "request a sentence of 10 years on Count One . . . to be followed by a term of Life on supervised release." *Id.* at 6. This recommendation would "bind the Court if this agreement is accepted pursuant to Rule 11(c)(1)(C)." *Id.*[5]

In light of this offer, Gandy's trial counsels correctly explained his potential sentence. "If the Court accepted the plea agreement, [he] would receive 10 years on Count One. The ten-year sentence would be followed by a term of Life on supervised release." Doc. 244-2 at 3 (quotation marks omitted). "[T]here was no parole and [he] would serve [his] entire term of supervised release." *Id.*; *see* Doc. 244-3 at 3 ("[Gandy] could be on supervised release up to life"). Trial counsels further stated that Gandy "would not be able to leave the US while on supervised release." *Id.*; *see* Doc. 244-4 at 3.[6]

---

[5] Rule 11(c)(1)(C) provides: "An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement . . . [which] may specify that an attorney for the government will . . . agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement)."

[6] A mandatory condition of supervised release is that the defendant must comply with the requirements of SORNA. 18 U.S.C. § 3583(d). Standard conditions of supervised release include: (3) not knowingly leaving the federal judicial district where he is authorized to reside without first getting permission from the court or the probation office, and (5) living in a place approved by the probation officer. *See In the Matter of Conditions of Probation and Supervised Release*, Gen. Order No. 2017-01 (S.D. Tex.

17

Here, trial counsels' performance fell within the "wide range" of reasonable professional assistance. *Premo*, 562 U.S. at 121. Gandy ultimately chose to reject the Government's plea offer because "lifetime supervised release was a deal breaker." Doc. 244-2 at 3. He wanted to travel and eventually live abroad, specifically in Indonesia. *Id.*; *see* Doc. 244-3 at 3, Doc. 244-4 at 3. He did not want to live in the United States as a labeled child molester. Doc. 244-4 at 3; Doc. 244-3 at 3–4.

Gandy fails to carry his burden to establish deficient performance. "Mere speculative and conclusory statements after the fact are insufficient to support such claims and raise constitutional issues" under § 2255. *Osuagwu v. United States*, No. 4:06-CR-305-1, 2011 WL 13291815, at *6 (S.D. Tex. Nov. 18, 2011). (citing *United States v. Woods*, 870 F.2d 285 n.3] (5th Cir. 1989); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)). In this case, Gandy's performance claim is both conclusory and speculative.

First, his claim is conclusory. The only support Gandy offers to show that trial counsels failed to tell him about supervised release modification

---

Jan. 6, 2017); U.S. Courts, *Judgment in a Criminal Case AO245B* (Sep. 1, 2019), *available at,* https://www.uscourts.gov/forms/criminal-judgment-forms/judgment-criminal-case.

or termination is a *single sentence* in his own self-serving declaration, submitted over six years following his declination of the Government's plea offer. Doc. 244-2 at 3 ("[Trial counsels] never informed me that a term of supervised release could be reduced and/or its conditions modified"). Gandy's other submitted exhibits, namely his stepmother's and father's declarations, do not support this assertion. *See* Docs. 244-3, 244-4.

More importantly, Gandy fails to point to any legal authority (nor is the Government aware of any) to support his argument that trial counsels' alleged failure to inform him about supervised release modification or termination constitutes deficient performance. And he bears the burden of establishing deficient performance. Since Gandy's argument is conclusory, it fails. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel" are insufficient); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of effective assistance of counsel are insufficient to raise a constitutional issue.").

Second, Gandy's claim is speculative. Several discretionary decisions by the district court and numerous years separated Gandy's plea offer from any potential modification or termination of supervised release. First, the district court would have to exercise its discretion to accept the plea agreement. Second, Gandy would have to serve all 10 years of imprisonment and at least one year of supervised release. *See* § 3583(e). Third, the district court would have to exercise its discretion and decide to modify or terminate Gandy's supervised release term, after considering the factors under 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7). *Id*.

Tellingly, Gandy fails to provide any explanation under these factors to justify his potential modification or termination of supervised release. Indeed, it is unlikely that the district court would choose to modify or terminate his supervised release to allow travel *abroad*—given that Gandy would have pled guilty to transporting Minor Victim No. 1 *abroad* to provide illegal sexual massages to paying clients. Doc. 11; *see* Doc. 244-1 at 7–10. Because Gandy's claim is speculative, it should be rejected. *See United States v. Hall*, 455 F.3d 508, 522 (5th Cir. 2006) (holding that "speculative and conclusory allegations are 'insufficient to

raise a constitutional issue' " under § 2255); *see also Woods,* 870 F.2d at 288 (holding "that the possibility of future enhancement 'is not the type of consequence about which a defendant must be advised before entering a guilty plea' "). Consequently, Gandy cannot show deficient performance.

### B.   Prejudice.

Even if Gandy somehow established that trial counsels performed deficiently, he cannot demonstrate prejudice under *Strickland*. To show prejudice with regard to a rejected plea offer, the defendant must prove that, absent counsel's deficient performance, there was a reasonable probability that he would have pled guilty pursuant to the plea agreement. *Lafler v. Cooper*, 566 U.S. 156, 164 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The defendant "bears the 'highly demanding and heavy burden in establishing actual prejudice,' not merely that 'the errors had some conceivable effect on the outcome of the proceeding.' " *Givens v. Cockrell*, 265 F.3d 306, 310 (5th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 394 (2000)). Gandy fails to meet this highly demanding and heavy burden.

As indicated, the Government's plea offer required that Gandy agree to several conditions involving supervised release. First, he would have had to agree to plead guilty to Count 1, which had statutory ranges of 120-months-to-life for imprisonment and 60-months-to-life for supervised release. Doc. 244-1 at 2. This sentence could not be suspended; nor would he be eligible for parole. *Id.* Second, he would have had to agree for the Government to "request a sentence of 10 years on Count One . . . to be followed by a term of Life on supervised release." *Id.* at 6. This recommendation would "bind the Court, if this agreement is accepted, pursuant to Rule 11(c)(1)(C)." *Id.* And his supervised release would include a mandatory condition to comply with SORNA and standard conditions restricting his ability to travel. *See supra* note 6.

Given this plea offer, Gandy's trial counsels properly explained his potential sentence, including that he would be subject to a lifetime term of supervised release. Doc. 244-2 at 3, Doc. 244-3 at 3. Trial counsels also advised Gandy that he would not be able to travel abroad while on supervised release. *See* Doc. 244-3 at 3; Doc. 244-4 at 3.

But Gandy rejected this plea offer because "lifetime supervised release was a deal breaker." Doc. 244-2 at 3. He wanted to travel and live

abroad in Indonesia. *Id.*; *see* Doc. 244-3 at 3, Doc. 244-4 at 3. He did not want to live as a labeled child molester in the United States. Doc. 244-4 at 3; *see* Doc. 244-3 at 3–4.

In this case, Gandy fails to demonstrate a reasonable probability that, even if trial counsels had explained that the district court could modify or terminate his supervised released, he would have pled guilty pursuant to the Government's offer. *See Lafler*, 566 U.S. at 164.

To begin, the record refutes that knowing about supervised release modification or termination would have changed Gandy's decision. Even if he had been so informed, Gandy still would have had to agree to the Government's plea offer, which included a binding recommendation for a lifetime term of supervised release. As part of this, he would be subject to the mandatory condition to comply with SORNA and likely standard conditions limiting his travel abroad. Doc. 244-1 at 6; *see* Doc. 244-3 at 3 (advising that Gandy could be on supervised release for life, which would likely limit his ability to travel abroad). But because these issues still would have been a "deal breaker" for Gandy, he cannot show a reasonable probability that he would have accepted the Government's plea offer. Doc. 244-2 at 3; *see* Doc. 244-3 at 3–4, Doc. 244-4 at 3

Moreover, any discussion concerning the modification or termination of his supervised release would have been highly speculative at the time of the plea offer. "One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture." *Wright v. United States,* No. 3:14-CR-350-B-1, 2019 WL 11027700, at *6 (N.D. Tex. Nov. 4, 2019), *report and recommendation adopted*, No. 3:14-CR-350-B(1), 2020 WL 4745222 (N.D. Tex. Aug. 17, 2020).

As discussed, multiple discretionary decisions by the district court and many years separated Gandy's plea offer from any potential modification or termination of supervised release. *See supra* Section V.A. This includes the district court's entirely discretionary decision to alter Gandy's supervised release term, after considering the factors under § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7). *Id.* Gandy provides no explanation under these factors to justify the district court reaching such a result. If anything, it is unlikely that the district court would have chosen to modify his supervised release to allow travel abroad—Gandy would have pled guilty to transporting Minor Victim No. 1 abroad for the purpose of giving illicit sexual massages. Doc. 11; *see* Doc. 244-1 at 8–11. Because the modification or termination of his

supervised release would have been such a speculative and remote issue, it would have had little bearing on Gandy's decision to reject the plea offer. Hence, he fails to show a reasonable probability that he would have accepted the Government's plea offer with that information in hand. *See Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992) (holding that "petitioner's putative chain of events, which supposedly stem from the unprofessional conduct of his trial counsel, are too indefinite to show prejudice"); *United States v. Nelson*, No. CR1000099BAJSCR1, 2018 WL 6795419, at *6 (M.D. La. Dec. 26, 2018) ("the Court concludes that Petitioner has not presented sufficient evidence to indicate a reasonable probability that he would have pled guilty pursuant to the plea agreement.").

In sum, Gandy is unable to establish that his trial counsels performed deficiently or that he suffered actual prejudice under *Strickland*. Failure to show either *Strickland* prong is fatal to his claim. Accordingly, his § 2255 motion should be denied.

## VI.   No evidentiary hearing is required.

An evidentiary hearing is unnecessary. A § 2255 motion may be resolved without an evidentiary hearing where the files, motion, and

record of the case conclusively show that no relief is appropriate. *United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983). If the record is adequate to fairly dispose of the allegations, the court need not inquire any further. *United States v. Smith,* 915 F.2d 959, 964 (5th Cir. 1990). Under these circumstances, the court may deny a § 2255 motion without an evidentiary hearing and grant summary judgment for the Government. *See United States v. Batamula*, 823 F.3d 237, 239 (5th Cir. 2016) (en banc). Here, this Court can conclude, based on the existing record, that Gandy's § 2255 motion should be denied. No evidentiary hearing is needed.

## VII.  No certificate of appealability should issue.

No certificate of appealability should issue in Gandy's case. A defendant may obtain a certificate of appealability (COA) "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "At the COA stage, the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues are adequate to deserve encouragement

to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quotation marks omitted).

For the reasons discussed above, reasonable jurists could not disagree with this Court's denial of Gandy's § 2255 motion. None of the issues are adequate to deserve encouragement for further consideration. This Court should deny a certificate of appealability.

## VIII. Conclusion.

For the foregoing reasons, the United States respectfully requests that this Court deny Gandy's § 2255 motion, without an evidentiary hearing or certificate of appealability.

Respectfully submitted,

JENNIFER B. LOWERY
Acting United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

/s/ Andrew C. Sand
ANDREW C. SAND
Assistant United States Attorney
California Bar No. 310645
Attorneys for Respondent
1000 Louisiana Street, Ste. 2300
Houston, TX 77002
Phone: (713) 567-9102

## CERTIFICATE OF SERVICE

I, Andrew C. Sand, certify that on May 17, 2021, a true and correct copy of the above *United States' Response to Gandy's 28 U.S.C. § 2255 Motion* has been filed via the CM/ECF system for the Southern District of Texas; and was served via notice of electronic filing, through this Court's CM/ECF system, upon Mr. Benson Weintraub, counsel for movant.

/s/ Andrew C. Sand
ANDREW C. SAND
Assistant United States Attorney

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| JASON DANIEL GANDY, | § | |
| *Defendant-Movant,* | § | |
| | § | Criminal No. 4:12-503-1 |
| v. | § | (Civil No. 4:21-662) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| *Plaintiff-Respondent.* | § | |

## **ORDER**

Pending before this Court is defendant's motion pursuant to 28 U.S.C. § 2255. The Government filed its response, arguing that defendant's motion should be denied.

After reviewing the record and relevant law, Gandy's § 2255 motion is DENIED, a certificate of appealability is DENIED, and the case is closed.

SIGNED on _____, 2021.

_____
Lee H. Rosenthal
Chief United States District Judge