## Zack, Sherri (USATXS)

| | |
|---|---|
| .n: | Zack, Sherri (USATXS) |
| **Sent:** | Monday, June 9, 2014 4:28 PM |
| **To:** | dan@cogdell-law.com; Charles Flood (Charles@floodandflood.com) |
| **Subject:** | gandy |

Gentlemen,

I will be sending you the C plea paperwork in the next few days. We may need to continue the plea to get the appraisal on the house. Who should the appraiser contact to get on and into the property?

Thanks,
Sherri

Sherri L. Zack
Assistant United States Attorney
Southern District of Texas
1000 Louisiana
23rd Floor
Houston, TX 77002
Office (713)567-9374
Fax (713)718-3301



1

**Zack, Sherri (USATXS)**

| | |
|---|---|
| From: | Zack, Sherri (USATXS) |
| Sent: | Monday, July 21, 2014 4:24 PM |
| To: | dan@cogdell-law.com; Charles Flood (Charles@floodandflood.com) |
| Subject: | gandy |

Gentlemen,

Attached please find the plea paperwork related to your client.  Please let me know if you need anything else.  We are scheduled for next Tuesday.

Thanks,

   

plea agreement -   Joint Mot for Final
Gandy- 11(c)(...   Jdgt and P...

Sherri

Sherri L. Zack
Assistant United States Attorney
Southern District of Texas
1000 Louisiana
 rd Floor
 ustoni, TX 77002
Office (713)567-9374
Fax (713)718-3301



1

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | **CRIMINAL NO. 12-503** |
| | § | |
| JASON GANDY | § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney, for the Southern District of Texas and Sherri L. Zack, Assistant United States Attorney, and the defendant, Jason Gandy, and the defendant's counsel, Dan Cogdell, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1.      Defendant agrees to plead guilty to Count(s) One of the Indictment.  Count One charges the defendant with Transportation of Minors, in violation of Title 18, United States Code, § 2423(a). Defendant, by entering this plea, agrees that he/she is waiving any right to have the facts that the law makes essential to the punishment either charged in the Indictment or proven to a jury or judge beyond a reasonable doubt.

### Punishment Range

2.      The **statutory** maximum penalty for each violation of Title 18, United States Code, § 2423(a), is a term of imprisonment of not less than 10 years up to Life and a fine of not more than $250,000.00.   Additionally, Defendant shall receive a term of supervised release after imprisonment of at least 5 years up to Life.  Title 18, United States Code, §§ 3559(a) and 3583(b).

1

Defendant acknowledges and understands that if he/she should violate the conditions of any period of supervised release which may be imposed as part of his/her sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. Title 18, United States Code, §§ 3559(a) and 3583(e)(3). Defendant understands that he/she cannot have the imposition or execution of the sentence suspended, nor is he/she eligible for parole.

3.     The defendant understands that under the Sex Offender Registration and Notification Act, the defendant must register and keep such information current in the jurisdictions where the defendant resides, is employed, and is a student. The defendant further understands that the requirement to keep the registration current includes informing such jurisdictions not later than three (3) business days after any change of the defendant's name, residence, employment or student status. The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, specifically, Title 18, United States Code, Section 2250, as well as applicable state statutes.

## Mandatory Special Assessment

4.     Pursuant to Title 18, U.S.C. § 3013(a)(2)(A), immediately after sentencing, defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Fine, Reimbursement and Restitution

5.     Defendant understands that under the Sentencing Guidelines, the Court is permitted to order the defendant to pay a fine that is sufficient to reimburse the government for the costs of

any imprisonment or term of supervised release, if any is ordered.

6.     Defendant understands that under the Sentencing Guidelines and applicable federal law, in the case of an identifiable victim, the Court may order restitution if authorized by law and requested by a victim.

7.     Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately, and defendant will not attempt to avoid or delay payment. Defendant further agrees not to contest the forfeiture of the items described in the indictment

8.     Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) prior to sentencing if he/she is requested to do so.     In the event that the Court imposes a fine or orders the payment of restitution as part of the Defendant's sentence, the Defendant shall make complete financial disclosure by truthfully executing a sworn financial statement immediately following his/her sentencing.

## Waiver of Appeal

9.     Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined on any grounds set forth in Title 18 U.S.C. § 3742. Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding. In the event the Defendant files a notice of appeal following the imposition of the sentence, the United States will assert its rights under this agreement and seek specific performance of this waiver.

10.     In exchange for the Agreement with the United States, Defendant waives all

3

defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to any prosecution that is not time barred on the date that this Agreement is signed, in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or (c) Defendant's plea is later withdrawn.

11.     In agreeing to these waivers, defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction, not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *United States v. Booker,* 125 S.Ct. 738 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

12.     The Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

13.     The United States agrees to each of the following:

(a)     At the time of sentencing, the United States agrees not to oppose defendant's anticipated request to the Court and the United States Probation Office that he/she receive a two (2) level downward adjustment pursuant to U.S.S.G. Section 3E1.1(a) should the defendant accept responsibility as contemplated by the Sentencing Guidelines.

4

(b)     If the defendant qualifies for an adjustment under U.S.S.G. Section 3E1.1(a), the United States agrees not to oppose the defendant's request for an additional one level departure based on the timeliness of the plea or the expeditious manner in which the defendant provided complete information regarding his role in the offense if the defendant's offense level is 16 or greater.

(c)     The United States agrees at the time of sentencing to request a sentence of 10 years on Count One.   The term of imprisonment is to be followed by a term of Life on supervised release. The United States agrees that the amount of any fine imposed rests with the Court. The United States agrees that this recommendation will bind the Court, if this agreement is accepted, pursuant to Rule 11(c)(1)(C).

### United States' Non-Waiver of Appeal

14.    The United States reserves the right to carry out its responsibilities under the sentencing guidelines.   Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office; and,

(d)     to file a pleading relating to these issues, in accordance with U.S.S.G. Section 6A1.2 and Title 18, U.S.C.§ 3553(a).

### Sentence Determination

15.    Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, U.S.C. § 3553(a).  Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within

the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court until the Court accepts the plea agreement. If the Court accepts the plea agreement, Defendant will remain bound to fulfill all of the obligations under this plea agreement. If the Court rejects the plea agreement, Defendant will be given an opportunity to withdraw his plea of guilty.

### Rights at Trial

16.     Defendant represents to the Court that he is satisfied that his/her attorney has rendered effective assistance. Defendant understands that by entering into this agreement, he/she surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a)     If defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States, and the court all agree.

(b)     At a trial, the United States would be required to present witnesses and other evidence against the defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court.

(c)     At a trial, defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, he/she could testify on his/her own behalf.

### Factual Basis for Guilty Plea

17.     Defendant is pleading guilty because he is guilty of the charges contained in Count One of the Indictment. If this case were to proceed to trial, the United States could prove each

element of the offenses charged in each count beyond a reasonable doubt.   The parties agree that this factual basis does not include all relevant conduct that may be considered by the Court for sentencing purposes.   The following facts, among others would be offered to establish the Defendant's guilt:

On July 19, 2012, Jason Gandy (GANDY) arrived in the United Kingdom (UK) at Heathrow International Airport aboard United Airlines Flight 4 which he boarded in Houston, Texas.   GANDY was traveling with a 15 year-old male KV (D.O.B. xx/xx/1997) KV is not related to GANDY.

Upon landing in the UK, GANDY was inspected by UK Immigration (UKI) Officers of the UK Border Agency and selected for secondary inspection. UKI authorities became suspicious when GANDY was asked why he wanted to enter the UK and why he was traveling with a minor child.   UKI authorities were also concerned as GANDY admitted that he was not related to KV and contacted KV's mother.   KV's mother informed the UKI officers that she had given KV permission to travel with GANDY, but also gave a conflicting reason as to the purpose of the trip.   Based upon interviews with GANDY, KV and KV's mother, UKI officials denied GANDY and KV entry and made arrangements for them to immediately return to the United States.

On or about, July 20, 2012, at approximately 1:35 pm (CDT), GANDY arrived at George Bush Intercontinental Airport in Houston, Texas, on United Airlines Flight 35.   Bush Intercontinental Airport is in Houston, Harris County, Texas and within the Southern District of Texas.   Upon disembarking the plane, GANDY was escorted by U.S. Customs and Border Protection (CBP) officers to the secondary inspection area.   During secondary inspection, GANDY made a binding declaration to the CBP officers that the luggage and other items he was carrying were his.

HSI SA Juanae Johnson along with Houston Police Department Detective Joseph Roscoe, met with GANDY upon his arrival and questioned him as to the purpose of his trip to the United Kingdom and his travel with KV.   GANDY was advised of his Miranda rights and informed that he was not under arrest.   Gandy waived his rights and spoke willingly and voluntarily with

7

law enforcement about his travels to the UK with KV.   The interview took place in the baggage search area in the CBP secondary inspection area.

GANDY stated that he and KV had met through a mutual "friend" on the social networking website "Facebook".   GANDY, who is 35 years-old, knew KV was only 15 years of age, however he did not disclose his age to the child.

Upon meeting KV, GANDY took him to the mall to celebrate his 15th birthday. GANDY also admitted taking KV to a concert, and informed agents that he and KV began to develop a friendship. GANDY admitted to lavishing KV with gifts in person and via the mail. GANDY stated that he liked buying KV nice things, because KV's family was unable to.

GANDY informed the agents that he is a licensed massage therapist and he buys and sells real estate for a living. GANDY told agents that he owned and operated a massage business known as, JasonRMT.com. The website indicates that GANDY performs massages for a fee which must be paid in cash.   Additionally, the massages can be "incalls" or "outcalls" which mean that either the customer comes to GANDY or he goes to the customer.   The terms "incalls" and "outcalls" are terms frequently associated with prostitution and advertisements for prostitution activities. GANDY informed the agents that KV spends the night at least once a week at his home.

KV was also interviewed and based on information provided by GANDY and the KV, agents were able to establish KV was with GANDY almost every weekend.   GANDY also told agents that when they are together, he gives massages to KV. KV corroborated GANDY's statement and informed agents that GANDY, on at least on one occasion, had masturbated him, KV, during the massage session. GANDY told the agents that after every massage, GANDY masturbates in KV's presence, and on several occasions GANDY and KV have masturbated in the presence of one another.

GANDY also told agents that on at least one occasion he has taken a nude picture of KV's backside without his permission while they were at GANDY'S home.   GANDY also stated that he downloaded the picture on his laptop.   KV confirmed that GANDY has taken other photos of his nude backside at the home but he does not know where those photos are. When asked to elaborate, KV indicated that he was joking with GANDY one day when they were together about the photos.   KV took off his pants and then allowed GANDY to take nude

8

photos of him.

Personnel trained in child psychology from the Harris County Children's Assessment Center along with officers also interviewed KV. KV confirmed that GANDY runs a massage business which he operates in his home and in the Recreational Vehicle (RV) located on the property. KV was recruited by GANDY in May of 2012 to assist with GANDY's massage business and KV has done so up until the present. At GANDY's direction, KV massages men while they are completely nude. The men are also allowed to fondle KV's genitals during the massage sessions. KV was uncomfortable conducting massages in the nude and allowing the men to touch him in the beginning. GANDY told KV that in order for them to continue to hang out and make money together he had to allow the clients to touch him. During these massages KV would also masturbate the men. KV estimated that he has been paid between $400.00 and $500.00 dollars since working for GANDY.

KV indicated that he has been instructed to massage certain clients alone on at least one occasion. KV stated that he would "stay" in the RV while at GANDY's residence, and men would enter the RV and tell KV "I am here for you." KV would massage these men alone while in the nude and masturbate them. KV knew that GANDY was paid between $80.00 and $120.00 for the massage sessions. If GANDY alone provided what was referred to as a "single" massage, the fee was $80.00. If both KV and GANDY provided what was referred to as a "four hand" massage together, the fee was $120.00. Upon completion of each massage, the clients paid GANDY, and then GANDY would pay KV between $20.00 and $40.00. KV went on to say that GANDY has a large clientele and GANDY is busy most of the time.

GANDY stated that he and KV recently began discussing taking a trip to England. GANDY purchased both plane tickets (approximately $2150.00) and gave KV money to purchase an expedited passport (approximately $200.00). GANDY received a signed and notarized affidavit form from KV's mother that authorized KV to travel with GANDY and remain in the UK in GANDYS' custody from July 18, 2012 until August, 22, 2012. GANDY had not reserved any accommodations in the UK and was intending on finding a place to stay once they landed in the UK.

During the secondary search of GANDY's personal belongings, CBP officers discovered approximately 90 condoms. When agents questioned GANDY about the condoms he told agents

that he utilized the condoms for massaging his clients prostates, and he had some "hope" of possibly using a couple of condoms with KV once in London.

KV also told interviewers that GANDY intended to start a massage business while in London that was similar to the one he ran in the Houston area.   KV stated that GANDY told him that he was unaware of the laws in the UK governing the types of massages he would be legally permitted to provide. KV also stated that on July 18th, 2012, while they were waiting to board their flight to the UK, GANDY informed KV that he had two clients waiting for them in the UK. They were set to meet him between July 22nd and July 24th, 2012.

KV stated that GANDY promised KV that once in London he would possibly be able to attend the Olympics, and that he would be taken to his favorite clothing store and be able to see his favorite bands. KV was under the impression that he would be required to perform some massages while he was in the UK but he was most excited about the shopping, the Olympics and seeing his favorite bands.

### Breach of Plea Agreement

18.    If defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and the defendant's plea and sentence will stand.  If at any time defendant retains, conceals or disposes of assets in violation of this plea agreement, or if defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.  Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

19.    Whether the defendant has breached any provision of this plea agreement shall be determined solely by the United States through the United States Attorney's Office, whose judgment in that regard is final.

### Forfeiture

10

20.     Defendant agrees to waive any and all interest in any asset which is the subject of any related administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal, with the exception of the real property located at Truxillo Street and Dowling Street, Houston, Texas.   Defendant admits and agrees that the following assets, which are the subject of the related civil forfeiture action styled <u>United States of America v. 2005 C5500 Chevrolet Recreational Vehicle, et al.,</u> and pending before the Houston Division of the United States District Court for the Southern District of Texas under Case No. 4:12-cv-3668, were used or intended to be used to commit or to facilitate the commission of transportation of a minor with intent to engage in criminal sexual activity which form the basis of this criminal action:

A.     The real property located at Truxillo Street and Dowling Street, Houston, Texas, and legally described as:

> Lot Eleven 11, in Block Five (5) of Washington Terrace, a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Volume 557, Page 68 of the Deed Records of Harris County, Texas;

B.     A 2005 C5500 Chevrolet Recreational Vehicle, VIN # 1GBE5U1E15F505062; and

C.     A 2012 Toyota Scion IQ, VIN # JTNJJXB06CJ010887.

21.     Defendant agrees that he will sign an agreed judgment in the related civil forfeiture action (Case No. 4:12-cv-3668) that will forfeit all right, title, and interest in the assets which are the subject of that action, except for the real property located at Truxillo Street and Dowling Street, Houston, Texas, to the United States.   The terms of the agreed judgment will be as follows:

A.     Defendant agrees to pay the United States a sum of money, equal to the fair market value as determined by the United States, of the real property located at Truxillo Street and Dowling Street, Houston, Texas, in lieu of forfeiture of that property. Defendant agrees to pay the United States in the form of a cashier's check made

11

payable to the United States, or its designee, at or before the time of re-arraignment.

B.   Defendant understands and agrees that he is and will remain liable for any unpaid ad valorem taxes on the real property referenced above.

C.   Defendant agrees to allow/provide the United States, or its designee, access to the real property for purposes of appraising the property.

D.   Defendant agrees to the forfeiture of the 2005 C5500 Chevrolet Recreational Vehicle, VIN # 1GBE5U1E15F505062.

E.   Defendant agrees to the forfeiture of the 2012 Toyota Scion IQ, VIN # JTNJJXB06CJ010887.

22.   Defendant waives the right to challenge the agreed judgment in the civil forfeiture action referenced above in any manner (including by direct appeal, habeas corpus, or any other means) and on any grounds, including that the forfeiture constitutes an excessive fine or punishment.   The defendant agrees to take all steps requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding.

**Complete Agreement**

23.   This written plea agreement, consisting of 15 pages, including the attached addendum of defendant and his/her attorney, constitutes the complete plea agreement between the United States, defendant and his/her counsel.   No promises or representations have been made by the United States except as set forth in writing in this plea agreement.   Defendant acknowledges that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

24.     Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on _____, 2014.

_____
Jason Gandy
Defendant

Subscribed and sworn to before me on _____, 2014.

UNITED STATES DISTRICT CLERK

By:     _____
Deputy United States District Clerk

APPROVED:

KENNETH MAGIDSON
United States Attorney

By:_____                    _____
Sherri L. Zack                                        Dan Cogdell
Assistant United States Attorney                      Attorney for Defendant

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 12-503 |
| JASON GANDY | § § | |
| Defendant. | § | |

## PLEA AGREEMENT  - ADDENDUM

I have fully explained to defendant his/her rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> and <u>Policy Statements</u> and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further,  I have carefully reviewed every part of this plea agreement with Defendant.   To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Dan Cogdell
Attorney for Defendant

_____
Date

I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me.   My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> which may apply in my case.   I have read and carefully reviewed every part of this plea agreement with my attorney.   I understand this agreement and I voluntarily agree to its terms.

_____          _____
Jason Gandy                                                 Date
Defendant

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br> Plaintiff,<br><br> v.<br><br>2005 C5500 Chevrolet Recreational<br>Vehicle; 2012 Toyota Scion IQ; One<br>Piece of Real Property at Truxillo Street<br>and Dowling Street, Houston, Texas;<br>and Massage Therapist Verification,<br>Credential Number MT023870,<br>File Number 37235,<br> Defendants. | § § § § § § § § § § § § | CIVIL NO. 4:12-cv-03668 |

## JOINT MOTION FOR AGREED FINAL JUDGMENT OF FORFEITURE

The United States of America and the claimant Jason Gandy ("Claimant"), through his

attorney, Dan Cogdell, state that they have settled all matters in dispute in this *in rem* forfeiture

action and agree to judgment on the following terms:

### BACKGROUND

1.     The United States of America filed a Verified Complaint for Forfeiture In Rem

against a 2005 C5500 Chevrolet Recreational Vehicle; a 2012 Toyota Scion IQ; one piece of real

property at Truxillo Street and Dowling Street, Houston, Texas; and a Massage Therapist

Verification ("Defendant Properties"), on December 18, 2012. (Doc. No. 1).

2.     The United States sent notice of the action to known potential claimants and

published notice of the action in accordance with Rule G(4) of the Supplemental Rules for

Admiralty or Maritime Claims and Asset Forfeiture Actions. (Doc. No. 6).

3.     Claimant and the following taxing authorities were the only persons or entities to

respond to this action:  Harris County, Texas; Houston ISD; Harris County Flood Control

District, Port of Houston Authority; Harris County Hospital District; Harris County Department

of Education; Houston Community College System; and City of Houston. (*See* Doc. Nos. 5, 8,

and 9). No other claims and/or answers have been filed in this action, and pursuant to Rule G(5) of the Supplemental Rules of Certain Admiralty Maritime Claims, Federal Rules of Civil Procedure, the time for filing a claim and answer in this action has passed. All others should, therefore, be held in default.

### AGREEMENT

4.       The parties stipulate that the following property is subject to forfeiture: 2005 C5500 Chevrolet Recreational Vehicle, VIN # 1GBE5U1E15F505062; 2012 Toyota Scion IQ, VIN # JTNJJXB06CJ010887; and one piece of real property at Truxillo Street and Dowling Street, Houston, Texas.

5.       Claimant agrees to pay to the United States $155,000.00, which is the fair market value of the real property located at Truxillo Street and Dowling Street, Houston, Texas, in lieu of forfeiture of that property. Claimant agrees to pay the United States in the form of a cashier's check made payable to the United States, or its designee, at or before the time of re-arraignment in the related criminal case (4:12-cr-503). Claimant understands and agrees that the funds used to pay the United States in lieu of the forfeiture must be from a legitimate source and approved of by the United States.

6.       Claimant understands and agrees that he is and will remain liable for any unpaid ad valorem taxes on the real property located at Truxillo Street and Dowling Street, Houston, Texas.

7.       Claimant agrees to the forfeiture of the 2005 C5500 Chevrolet Recreational Vehicle, VIN # 1GBE5U1E15F505062.

8.       Claimant agrees to the forfeiture of the 2012 Toyota Scion IQ, VIN # JTNJJXB06CJ010887.

9.       Claimant's Massage Therapist Verification/license expired May 2013, therefore, that asset is moot.

10.    Claimant hereby waives any and all claims that he has or might have against the United States of America, the United States Department of Justice, the United States Customs and Border Protection, the Department of Homeland Security, and all agents, officers, and employees thereof (hereinafter the "Released Parties"), relating to the seizure or forfeiture of Defendant Properties.

11.    Each party agrees to bear its own costs, attorney's fees, and expenses.

PRAYER

Wherefore, the United States and Claimant request that the Court sign the Agreed Final Judgment of Forfeiture.

Respectfully submitted,

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By:      s/ E. Vincent Carroll
         E. Vincent Carroll
         Assistant U.S. Attorney
         SDTX Admission No. 1804030
         1000 Louisiana, Suite 2300
         Houston, TX 77002
         Phone: (713) 567-9000; Fax: (713) 718-3404
         Email: Vincent.Carroll@usdoj.gov
         Attorneys for Plaintiff United States of America

         s/ Dan Cogdell
         Dan Cogdell
         Texas Bar No. 0450150
         The Cogdell Law Firm, PLLC
         402 Main Street, 4th Floor
         Houston, Texas  77009
         Phone: (713) 426-2244;  Fax: (713) 426-2255
         Email: dan@cogdell-law.com
         Attorney for Claimant Jason Gandy

APPROVED IN FORM AND SUBSTANCE BY:

_____          _____
Jason Gandy, Claimant            Date

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| 2005 C5500 Chevrolet Recreational | § | |
| Vehicle; 2012 Toyota Scion IQ; One | § | CIVIL NO. 4:12-cv-03668 |
| Piece of Real Property at Truxillo Street | § | |
| and Dowling Street, Houston, Texas; | § | |
| and Massage Therapist Verification, | § | |
| Credential Number MT023870, | § | |
| File Number 37235, | § | |
| Defendants. | § | |

## AGREED FINAL JUDGMENT OF FORFEITURE

The parties have announced to the Court that all matters in dispute have been resolved. The Court finds that proper notice and publication have been given to all potential claimants, the time for filing a verified statement of interest has expired, and but for Jason Gandy and various taxing authorities[1], there are no claimants before the Court. All other persons having any right, title, or interest in defendants 2005 C5500 Chevrolet Recreational Vehicle; 2012 Toyota Scion IQ; One Piece of Real Property at Truxillo Street and Dowling Street, Houston, Texas; and Massage Therapist Verification, Credential Number MT023870, File Number 37235, except for Jason Gandy and the various taxing authorities, are held in default.

The parties Joint Motion for Agreed Final Judgment of Forfeiture is GRANTED, and it is accordingly ORDERED that:

---

[1] The following taxing authorities filed a claim in this action asserting an interest in the real property located at Truxillo Street and Dowling Street, Houston, Texas: Harris County, Texas; Houston ISD; Harris County Flood Control District, Port of Houston Authority; Harris County Hospital District; Harris County Department of Education; Houston Community College System; and City of Houston.

1. The sum of $155,000.00 is forfeited to the United States of America in lieu of the forfeiture of the real property located at Truxillo Street and Dowling Street, Houston, Texas, and the United States of America shall dispose of the $155,000.00 in accordance with applicable law;

2. The 2005 C5500 Chevrolet Recreational Vehicle, VIN # 1GBE5U1E15F505062, is forfeited to the United States of America, and the United States of America shall dispose of the 2005 C5500 Chevrolet Recreational Vehicle in accordance with applicable law;

3. The 2012 Toyota Scion IQ, VIN # JTNJJXB06CJ010887, is forfeited to the United States of America, and the United States of America shall dispose of the 2012 Toyota Scion IQ in accordance with applicable law;

4. The Massage Therapist Verification, Credential Number MT023870, File Number 37235, has expired, so that asset is moot;

5. The claimant, Jason Gandy, shall hold the United States of America, including the United States Department of Justice, the United States Customs and Border Protection, the Department of Homeland Security, and all agents, officers, and employees thereof harmless for any and all damages or causes of action of any kind or nature whatsoever relating to this action;

6. All other persons or entities, other than the claimant Jason Gandy and the various taxing authorities, who could assert an interest in defendants 2005 C5500 Chevrolet Recreational Vehicle; 2012 Toyota Scion IQ; One Piece of Real Property at Truxillo Street and Dowling Street, Houston, Texas; and Massage Therapist Verification, Credential Number MT023870, File Number 37235, are held in default; and

7.   The United States of America and the claimant Jason Gandy shall bear their own costs, including attorney's fees and expenses.

THIS IS A FINAL JUDGMENT.

Signed this _____ day of _____, 2014.


_____
LEE H. ROSENTHAL
United States District Judge

**Zack, Sherri (USATXS)**

**From:** Zack, Sherri (USATXS)
**Sent:** Tuesday, August 26, 2014 4:31 PM
**To:** Charles Flood
**Subject:** RE: Gandy plea set for 9/3

Charles,

I am still trying to get in touch with Vince about the appraisal. I will get you the documents as soon as I can. As for the supervised release we can leave it up to the Court at sentencing.

Thanks,
Sherri

**From:** Charles Flood [mailto:Charles@floodandflood.com]
**Sent:** Tuesday, August 26, 2014 11:55 AM
**To:** Lisa_Eddins@txs.uscourts.gov
**Cc:** dan@cogdell-law.com; Zack, Sherri (USATXS)
**Subject:** Re: Gandy plea set for 9/3

That's fine from our side. I will be handling the plea for the defense as Dan will be in trial in Iowa. I need to talk to Sherri because I missed some of the flurry leading up to the last plea date - but I don't anticipate any ~ediments (but with this case you never know).

Charles Flood

On Aug 26, 2014, at 11:48 AM, "Lisa_Eddins@txs.uscourts.gov" <Lisa_Eddins@txs.uscourts.gov> wrote:

> I am sending this case to Judge Milloy for a plea next week. Judge Rosenthal is referring all pleas to Judge Milloy as we prepare for trial for the month of September. Please advise ASAP if you have an issue with this. It is for the purpose of taking the plea only.
>
> Plus I need plea documents sent to me so that I can prepare the file for Judge Milloy. She intends to hold the plea on the same day but at 11:00 rather than 10:00 as I had.
>
> Thanks,
> Lisa
> <ATT00001.gif>



GOVERNMENT
EXHIBIT
4
4:12-CR-503

1

**Zack, Sherri (USATXS)**

**From:** Zack, Sherri (USATXS)
**Sent:** Thursday, August 28, 2014 8:19 AM
**To:** Charles Flood (Charles@floodandflood.com)
**Subject:** gandy

Charles,
I added it under Plea Binding – Southern District of Texas Only.  I think it is paragraph 9.
Thanks,

📄 PDF

plea agreement –
Gandy– 11(c)(...

Sherri


GOVERNMENT
EXHIBIT
8
4:12-CR-503
PENGAD-Bayonne, N.J.

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 12-503 |
| | § | |
| JASON GANDY | § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney,

for the Southern District of Texas and Sherri L. Zack, Assistant United States Attorney, and the

defendant, Jason Gandy, and the defendant's counsel, Dan Cogdell, pursuant to Rule 11(c)(1)(C)

of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the

terms and conditions of which are as follows:

### The Defendant's Agreement

1.      Defendant agrees to plead guilty to Count(s) One of the Indictment.   Count One charges

the defendant with Transportation of Minors, in violation of Title 18, United States Code, §

2423(a). Defendant, by entering this plea, agrees that he/she is waiving any right to have the facts

that the law makes essential to the punishment either charged in the Indictment or proven to a jury

or judge beyond a reasonable doubt.

### Punishment Range

2.      The **statutory** maximum penalty for each violation of Title 18, United States Code,

§ 2423(a), is a term of imprisonment of not less than 10 years up to Life and a fine of not more than

$250,000.00.    Additionally, Defendant shall receive a term of supervised release after

imprisonment of at least 5 years up to Life.   Title 18, United States Code, §§ 3559(a) and 3583(b).

1

Defendant acknowledges and understands that if he/she should violate the conditions of any period of supervised release which may be imposed as part of his/her sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. Title 18, United States Code, §§ 3559(a) and 3583(e)(3). Defendant understands that he/she cannot have the imposition or execution of the sentence suspended, nor is he/she eligible for parole.

3. The defendant understands that under the Sex Offender Registration and Notification Act, the defendant must register and keep such information current in the jurisdictions where the defendant resides, is employed, and is a student. The defendant further understands that the requirement to keep the registration current includes informing such jurisdictions not later than three (3) business days after any change of the defendant's name, residence, employment or student status. The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, specifically, Title 18, United States Code, Section 2250, as well as applicable state statutes.

## Mandatory Special Assessment

4. Pursuant to Title 18, U.S.C. § 3013(a)(2)(A), immediately after sentencing, defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Fine, Reimbursement and Restitution

5. Defendant understands that under the Sentencing Guidelines, the Court is permitted to order the defendant to pay a fine that is sufficient to reimburse the government for the costs of

2

any imprisonment or term of supervised release, if any is ordered.

6.      Defendant understands that under the Sentencing Guidelines and applicable federal law, in the case of an identifiable victim, the Court may order restitution if authorized by law and requested by a victim.

7.      Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately, and defendant will not attempt to avoid or delay payment.  Defendant further agrees not to contest the forfeiture of the items described in the indictment

8.      Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) prior to sentencing if he/she is requested to do so.    In the event that the Court imposes a fine or orders the payment of restitution as part of the Defendant's sentence, the Defendant shall make complete financial disclosure by truthfully executing a sworn financial statement immediately following his/her sentencing.

### Agreement Binding – Southern District of Texas Only

9.      The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Indictment.    This Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant.   It does not bind any other United States Attorney.   The United States will bring this Plea Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices if requested.

### Waiver of Appeal

10.     Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.  The defendant agrees to waive the right to appeal the sentence

3

imposed or the manner in which it was determined on any grounds set forth in Title 18 U.S.C. § 3742. Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding. In the event the Defendant files a notice of appeal following the imposition of the sentence, the United States will assert its rights under this agreement and seek specific performance of this waiver.

11.   In exchange for the Agreement with the United States, Defendant waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to any prosecution that is not time barred on the date that this Agreement is signed, in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or (c) Defendant's plea is later withdrawn.

12.   In agreeing to these waivers, defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction, not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *United States v. Booker*, 125 S.Ct. 738 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

4

13.     The Defendant understands and agrees that each and all waivers contained in the

Agreement are made in exchange for the concessions made by the United States in this plea

agreement.

## The United States' Agreements

14.     The United States agrees to each of the following:

(a)     At the time of sentencing, the United States agrees not to oppose defendant's anticipated request to the Court and the United States Probation Office that he/she receive a two (2) level downward adjustment pursuant to U.S.S.G. Section 3E1.1(a) should the defendant accept responsibility as contemplated by the Sentencing Guidelines.

(b)     If the defendant qualifies for an adjustment under U.S.S.G. Section 3E1.1(a), the United States agrees not to oppose the defendant's request for an additional one level departure based on the timeliness of the plea or the expeditious manner in which the defendant provided complete information regarding his role in the offense if the defendant's offense level is 16 or greater.

(c)     The United States agrees at the time of sentencing to request a sentence of 10 years on Count One. The term of imprisonment is to be followed by a term of Life on supervised release. The United States agrees that the amount of any fine imposed rests with the Court. The United States agrees that this recommendation will bind the Court, if this agreement is accepted, pursuant to Rule 11(c)(1)(C).

## United States' Non-Waiver of Appeal

15.     The United States reserves the right to carry out its responsibilities under the

sentencing guidelines.   Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office; and,

(d)     to file a pleading relating to these issues, in accordance with U.S.S.G. Section

6A1.2 and Title 18, U.S.C.§ 3553(a).

## Sentence Determination

16.     Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, U.S.C. § 3553(a).  Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court until the Court accepts the plea agreement.  If the Court accepts the plea agreement, Defendant will remain bound to fulfill all of the obligations under this plea agreement.  If the Court rejects the plea agreement, Defendant will be given an opportunity to withdraw his plea of guilty.

## Rights at Trial

17.     Defendant represents to the Court that he is satisfied that his/her attorney has rendered effective assistance.  Defendant understands that by entering into this agreement, he/she surrenders certain rights as provided in this plea agreement.  Defendant understands that the rights of a defendant include the following:

(a)     If defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel.  The trial may be conducted by a judge sitting without a jury if the defendant, the United States, and the court all agree.

(b)     At a trial, the United States would be required to present witnesses and other evidence against the defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them.  In

6

turn, the defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf.   If the witnesses for defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court.

(c)     At a trial, defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, he/she could testify on his/her own behalf.

### Factual Basis for Guilty Plea

18.     Defendant is pleading guilty because he is guilty of the charges contained in Count One of the Indictment.   If this case were to proceed to trial, the United States could prove each element of the offenses charged in each count beyond a reasonable doubt.   The parties agree that this factual basis does not include all relevant conduct that may be considered by the Court for sentencing purposes.   The following facts, among others would be offered to establish the Defendant's guilt:

On July 19, 2012, Jason Gandy (GANDY) arrived in the United Kingdom (UK) at Heathrow International Airport aboard United Airlines Flight 4 which he boarded in Houston, Texas.   GANDY was traveling with a 15 year-old male KV (D.O.B. xx/xx/1997) KV is not related to GANDY.

Upon landing in the UK, GANDY was inspected by UK Immigration (UKI) Officers of the UK Border Agency and selected for secondary inspection. UKI authorities became suspicious when GANDY was asked why he wanted to enter the UK and why he was traveling with a minor child.   UKI authorities were also concerned as GANDY admitted that he was not related to KV and contacted KV's mother.   KV's mother informed the UKI officers that she had given KV permission to travel with GANDY, but also gave a conflicting reason as to the purpose of the trip.   Based upon interviews with GANDY, KV and KV's mother, UKI officials denied GANDY and KV entry and made arrangements for them to immediately return to the United States.

On or about, July 20, 2012, at approximately 1:35 pm (CDT), GANDY arrived at George

7

Bush Intercontinental Airport in Houston, Texas, on United Airlines Flight 35.   Bush Intercontinental Airport is in Houston, Harris County, Texas and within the Southern District of Texas.   Upon disembarking the plane, GANDY was escorted by U.S. Customs and Border Protection (CBP) officers to the secondary inspection area.   During secondary inspection, GANDY made a binding declaration to the CBP officers that the luggage and other items he was carrying were his.

HSI SA Juanae Johnson along with Houston Police Department Detective Joseph Roscoe, met with GANDY upon his arrival and questioned him as to the purpose of his trip to the United Kingdom and his travel with KV.   GANDY was advised of his Miranda rights and informed that he was not under arrest.   Gandy waived his rights and spoke willingly and voluntarily with law enforcement about his travels to the UK with KV.   The interview took place in the baggage search area in the CBP secondary inspection area.

GANDY stated that he and KV had met through a mutual "friend" on the social networking website "Facebook".   GANDY, who is 35 years-old, knew KV was only 15 years of age, however he did not disclose his age to the child.

Upon meeting KV, GANDY took him to the mall to celebrate his 15th birthday. GANDY also admitted taking KV to a concert, and informed agents that he and KV began to develop a friendship. GANDY admitted to lavishing KV with gifts in person and via the mail. GANDY stated that he liked buying KV nice things, because KV's family was unable to.

GANDY informed the agents that he is a licensed massage therapist and he buys and sells real estate for a living. GANDY told agents that he owned and operated a massage business known as, JasonRMT.com. The website indicates that GANDY performs massages for a fee which must be paid in cash.   Additionally, the massages can be "incalls" or "outcalls" which mean that either the customer comes to GANDY or he goes to the customer.   The terms "incalls" and "outcalls" are terms frequently associated with prostitution and advertisements for prostitution activities. GANDY informed the agents that KV spends the night at least once a week at his home.

KV was also interviewed and based on information provided by GANDY and the KV, agents were able to establish KV was with GANDY almost every weekend.   GANDY also told agents that when they are together, he gives massages to KV. KV corroborated GANDY's

statement and informed agents that GANDY, on at least on one occasion, had masturbated him, KV, during the massage session. GANDY told the agents that after every massage, GANDY masturbates in KV's presence, and on several occasions GANDY and KV have masturbated in the presence of one another.

GANDY also told agents that on at least one occasion he has taken a nude picture of KV's backside without his permission while they were at GANDY'S home.   GANDY also stated that he downloaded the picture on his laptop.   KV confirmed that GANDY has taken other photos of his nude backside at the home but he does not know where those photos are. When asked to elaborate, KV indicated that he was joking with GANDY one day when they were together about the photos.   KV took off his pants and then allowed GANDY to take nude photos of him.

Personnel trained in child psychology from the Harris County Children's Assessment Center along with officers also interviewed KV.   KV confirmed that GANDY runs a massage business which he operates in his home and in the Recreational Vehicle (RV) located on the property.   KV was recruited by GANDY in May of 2012 to assist with GANDY's massage business and KV has done so up until the present.   At GANDY's direction, KV massages men while they are completely nude.   The men are also allowed to fondle KV's genitals during the massage sessions.   KV was uncomfortable conducting massages in the nude and allowing the men to touch him in the beginning. GANDY told KV that in order for them to continue to hang out and make money together he had to allow the clients to touch him. During these massages KV would also masturbate the men.   KV estimated that he has been paid between $400.00 and $500.00 dollars since working for GANDY.

KV indicated that he has been instructed to massage certain clients alone on at least one occasion. KV stated that he would "stay" in the RV while at GANDY's residence, and men would enter the RV and tell KV "I am here for you."   KV would massage these men alone while in the nude and masturbate them. KV knew that GANDY was paid between $80.00 and $120.00 for the massage sessions.   If GANDY alone provided what was referred to as a "single" massage, the fee was $80.00.   If both KV and GANDY provided what was referred to as a "four hand" massage together, the fee was $120.00.   Upon completion of each massage, the clients paid GANDY, and then GANDY would pay KV between $20.00 and $40.00. KV went on to say

that GANDY has a large clientele and GANDY is busy most of the time.

GANDY stated that he and KV recently began discussing taking a trip to England. GANDY purchased both plane tickets (approximately $2150.00) and gave KV money to purchase an expedited passport (approximately $200.00). GANDY received a signed and notarized affidavit form from KV's mother that authorized KV to travel with GANDY and remain in the UK in GANDYS' custody from July 18, 2012 until August, 22, 2012. GANDY had not reserved any accommodations in the UK and was intending on finding a place to stay once they landed in the UK.

During the secondary search of GANDY's personal belongings, CBP officers discovered approximately 90 condoms. When agents questioned GANDY about the condoms he told agents that he utilized the condoms for massaging his clients prostates, and he had some "hope" of possibly using a couple of condoms with KV once in London.

KV also told interviewers that GANDY intended to start a massage business while in London that was similar to the one he ran in the Houston area.  KV stated that GANDY told him that he was unaware of the laws in the UK governing the types of massages he would be legally permitted to provide. KV also stated that on July 18th, 2012, while they were waiting to board their flight to the UK, GANDY informed KV that he had two clients waiting for them in the UK. They were set to meet him between July 22nd and July 24th, 2012.

KV stated that GANDY promised KV that once in London he would possibly be able to attend the Olympics, and that he would be taken to his favorite clothing store and be able to see his favorite bands. KV was under the impression that he would be required to perform some massages while he was in the UK but he was most excited about the shopping, the Olympics and seeing his favorite bands.

### Breach of Plea Agreement

19.     If defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and the defendant's plea and sentence will stand.  If at any time defendant retains, conceals or disposes of assets in violation of this plea agreement, or if defendant knowingly

withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

20. Whether the defendant has breached any provision of this plea agreement shall be determined solely by the United States through the United States Attorney's Office, whose judgment in that regard is final.

### Forfeiture

21. Defendant agrees to waive any and all interest in any asset which is the subject of any related administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal, with the exception of the real property located at Truxillo Street and Dowling Street, Houston, Texas. Defendant admits and agrees that the following assets, which are the subject of the related civil forfeiture action styled <u>United States of America v. 2005 C5500 Chevrolet Recreational Vehicle, et al.</u>, and pending before the Houston Division of the United States District Court for the Southern District of Texas under Case No. 4:12-cv-3668, were used or intended to be used to commit or to facilitate the commission of transportation of a minor with intent to engage in criminal sexual activity which form the basis of this criminal action:

A. The real property located at Truxillo Street and Dowling Street, Houston, Texas, and legally described as:

Lot Eleven 11, in Block Five (5) of Washington Terrace, a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Volume 557, Page 68 of the Deed Records of Harris County, Texas;

B. A 2005 C5500 Chevrolet Recreational Vehicle, VIN # 1GBE5U1E15F505062; and

11

C.     A 2012 Toyota Scion IQ, VIN # JTNJJXB06CJ010887.

22.     Defendant agrees that he will sign an agreed judgment in the related civil forfeiture action (Case No. 4:12-cv-3668) that will forfeit all right, title, and interest in the assets which are the subject of that action, except for the real property located at Truxillo Street and Dowling Street, Houston, Texas, to the United States.   The terms of the agreed judgment will be as follows:

A.     Defendant agrees to pay the United States a sum of money, equal to the fair market value as determined by the United States, of the real property located at Truxillo Street and Dowling Street, Houston, Texas, in lieu of forfeiture of that property. Defendant agrees to pay the United States in the form of a cashier's check made payable to the United States, or its designee, at or before the time of re-arraignment.

B.     Defendant understands and agrees that he is and will remain liable for any unpaid ad valorem taxes on the real property referenced above.

C.     Defendant agrees to allow/provide the United States, or its designee, access to the real property for purposes of appraising the property.

D.     Defendant agrees to the forfeiture of the 2005 C5500 Chevrolet Recreational Vehicle, VIN # 1GBE5U1E15F505062.

E.     Defendant agrees to the forfeiture of the 2012 Toyota Scion IQ, VIN # JTNJJXB06CJ010887.

23.     Defendant waives the right to challenge the agreed judgment in the civil forfeiture action referenced above in any manner (including by direct appeal, habeas corpus, or any other means) and on any grounds, including that the forfeiture constitutes an excessive fine or punishment.   The defendant agrees to take all steps requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture

12

proceeding.

## Complete Agreement

24.    This written plea agreement, consisting of 15 pages, including the attached addendum of defendant and his/her attorney, constitutes the complete plea agreement between the United States, defendant and his/her counsel.   No promises or representations have been made by the United States except as set forth in writing in this plea agreement.   Defendant acknowledges that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

25.    Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on _____, 2014.

_____
Jason Gandy
Defendant

Subscribed and sworn to before me on _____, 2014.

UNITED STATES DISTRICT CLERK

By:    _____
Deputy United States District Clerk

APPROVED:

KENNETH MAGIDSON
United States Attorney

By:_____          _____
   Sherri L. Zack                                   Dan Cogdell
   Assistant United States Attorney       Attorney for Defendant

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 12-503 |
| | § | |
| JASON GANDY | § | |
| Defendant. | § | |

## PLEA AGREEMENT  - ADDENDUM

I have fully explained to defendant his/her rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> and <u>Policy Statements</u> and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction.   Further,  I have carefully reviewed every part of this plea agreement with Defendant.   To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Dan Cogdell
Attorney for Defendant

_____
Date

14

I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me.   My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> which may apply in my case.   I have read and carefully reviewed every part of this plea agreement with my attorney.   I understand this agreement and I voluntarily agree to its terms.

_____                    _____
Jason Gandy                                                         Date
Defendant

**k, Sherri (USATXS)**

| | |
|---|---|
| **From:** | Charles Flood <Charles@floodandflood.com> |
| **Sent:** | Friday, August 29, 2014 1:10 PM |
| **To:** | Zack, Sherri (USATXS); Dan Cogdell |
| **Subject:** | Gandy. |
| **Attachments:** | image.jpeg; ATT00001.txt |

You can quit typing  the new agreement – he signed the old agreement.  He apparently doesn't want "sex" in the offense name.  He also said you can have the house - he apparently doesn't have $155k



1

## Complete Agreement

24.    This written plea agreement, consisting of 13 pages, including the attached addendum of defendant and his/her attorney, constitutes the complete plea agreement between the United States, defendant and his/her counsel.   No promises or representations have been made by the United States except as set forth in writing in this plea agreement.   Defendant acknowledges that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

25.    Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on _____, 2014.

_____
Jason Gandy
Defendant

Subscribed and sworn to before me on _____, 2014.

UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

KENNETH MAGIDSON
United States Attorney

By: _____          _____
Sherri L. Zack                          Dan Cogdell
Assistant United States Attorney        Attorney for Defendant

13

**:, Sherri (USATXS)**

| | |
|---|---|
| **From:** | Zack, Sherri (USATXS) |
| **Sent:** | Friday, August 29, 2014 1:16 PM |
| **To:** | Charles Flood |
| **Subject:** | RE: Gandy. |

Charles,

I will not bore you with the time and energy that I spent re-working this deal.

Two things, one I am going to have to change some of the language as the plea reflects that he is giving us money instead of the house and there will be a new forfeiture agreement for the civil proceeding to reflect that.  The second thing is the restitution.  Where you able to agree on an amount for JA???

Thanks,
Sherri

    -Original Message-----
From: Charles Flood [mailto:Charles@floodandflood.com]
Sent: Friday, August 29, 2014 1:10 PM
To: Zack, Sherri (USATXS); Dan Cogdell
Subject: Gandy.

You can quit typing  the new agreement - he signed the old agreement.  He apparently doesn't want "sex" in the offense name.  He also said you can have the house - he apparently doesn't have $155k



1

## ; Sherri (USATXS)

**From:** Zack, Sherri (USATXS)
**Sent:** Friday, August 29, 2014 1:29 PM
**To:** Charles Flood
**Subject:** RE: Gandy.

Let's go with $7500 for JA.

-----Original Message-----
From: Charles Flood [mailto:Charles@floodandflood.com]
Sent: Friday, August 29, 2014 1:28 PM
To: Zack, Sherri (USATXS)
Subject: Re: Gandy.

I told him I would negotiate - how about an even $5k?

Charles Flood

    n Aug 29, 2014, at 1:16 PM, "Zack, Sherri (USATXS)" <Sherri.Zack@usdoj.gov> wrote:
>
> Charles,
>
> I will not bore you with the time and energy that I spent re-working this deal.
>
> Two things, one I am going to have to change some of the language as the plea reflects that he is giving us money instead of the house and there will be a new forfeiture agreement for the civil proceeding to reflect that.  The second thing is the restitution.  Where you able to agree on an amount for JA???
>
> Thanks,
> Sherri
>
> -----Original Message-----
> From: Charles Flood [mailto:Charles@floodandflood.com]
> Sent: Friday, August 29, 2014 1:10 PM
> To: Zack, Sherri (USATXS); Dan Cogdell
    ubject: Gandy.
>

1



> You can quit typing the new agreement - he signed the old agreement. He apparently
> isn't want "sex" in the offense name. He also said you can have the house - he apparently
doesn't have $155k
>
>

**', Sherri (USATXS)**

| | |
|---|---|
| **From:** | Zack, Sherri (USATXS) |
| **Sent:** | Friday, August 29, 2014 3:00 PM |
| **To:** | Charles Flood (Charles@floodandflood.com) |
| **Subject:** | gandy - plea agreement |

Charles,
Here is the most recent final version.
I will send the revised civil stuff when it is sent to me.
I will be very pleased when this is resolved.
Have a wonderful weekend.

plea agreement –
Gandy- 11(c)(...

Sherri

GOVERNMENT
EXHIBIT
14
4:12-CR-503

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 12-503 |
| | § | |
| JASON GANDY | § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney,

for the Southern District of Texas and Sherri L. Zack, Assistant United States Attorney, and the

defendant, Jason Gandy, and the defendant's counsel, Dan Cogdell, pursuant to Rule 11(c)(1)(C)

of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the

terms and conditions of which are as follows:

### The Defendant's Agreement

1.     Defendant agrees to plead guilty to Count(s) One of the Indictment.  Count One charges

the defendant with Transportation of Minors, in violation of Title 18, United States Code, §

2423(a). Defendant, by entering this plea, agrees that he/she is waiving any right to have the facts

that the law makes essential to the punishment either charged in the Indictment or proven to a jury

or judge beyond a reasonable doubt.

### Punishment Range

2.     The **statutory** maximum penalty for each violation of Title 18, United States Code,

§ 2423(a), is a term of imprisonment of not less than 10 years up to Life and a fine of not more than

$250,000.00.   Additionally, Defendant shall receive a term of supervised release after

imprisonment of at least 5 years up to Life.  Title 18, United States Code, §§ 3559(a) and 3583(k).

1

Defendant acknowledges and understands that if he/she should violate the conditions of any period of supervised release which may be imposed as part of his/her sentence, then Defendant may be imprisoned for the entire term of supervised release,   without credit for time already served on the term of supervised release prior to such violation.   Title 18, United States Code, §§ 3559(a) and 3583(e)(3).  Defendant understands that he/she cannot have the imposition or execution of the sentence suspended, nor is he/she eligible for parole.

3.      The defendant understands that under the Sex Offender Registration and Notification Act, the defendant must register and keep such information current in the jurisdictions where the defendant resides, is employed, and is a student.  The defendant further understands that the requirement to keep the registration current includes informing such jurisdictions not later than three (3) business days after any change of the defendant's name, residence, employment or student status.  The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, specifically, Title 18, United States Code, Section 2250, as well as applicable state statutes.

## Mandatory Special Assessment

4.      Pursuant to Title 18, U.S.C. § 3013(a)(2)(A), immediately after sentencing, defendant will pay to the Clerk of the United States District Court  a special assessment in the amount of one hundred dollars ($100.00) per count of conviction.  The payment will be by cashier's check or money order payable to the Clerk of the United States District Court,  c/o District Clerk's Office, P.O. Box 61010,  Houston, Texas  77208, Attention: Finance.

## Fine, Reimbursement and Restitution

5.      Defendant understands that under the Sentencing Guidelines, the Court is permitted to order the defendant to pay a fine that is sufficient to reimburse the government for the costs of

any imprisonment or term of supervised release, if any is ordered.

6.    Defendant understands that under the Sentencing Guidelines and applicable federal law, in the case of an identifiable victim, the Court may order restitution if authorized by law and requested by a victim.

7.    Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately, and defendant will not attempt to avoid or delay payment. Defendant further agrees not to contest the forfeiture of the items described in the indictment

8.    Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) prior to sentencing if he/she is requested to do so.    In the event that the Court imposes a fine or orders the payment of restitution as part of the Defendant's sentence, the Defendant shall make complete financial disclosure by truthfully executing a sworn financial statement immediately following his/her sentencing.

### Agreement Binding - Southern District of Texas Only

9.    The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Indictment.    This Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant.    It does not bind any other United States Attorney.    The United States will bring this Plea Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices if requested.

### Waiver of Appeal

10.    Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.    The defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined on any grounds set forth in Title 18 U.S.C. §

3

3742. Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final.  The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.  In the event the Defendant files a notice of appeal following the imposition of the sentence, the United States will assert its rights under this agreement and seek specific performance of this waiver.

11.    In exchange for the Agreement with the United States, Defendant waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to any prosecution that is not time barred on the date that this Agreement is signed, in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or (c) Defendant's plea is later withdrawn.

12.    In agreeing to these waivers, defendant is aware that a sentence has not yet been determined by the Court.  The defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction, not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court.  The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court.  *United States v. Booker*, 125 S.Ct. 738 (2005).  Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

13.    The Defendant understands and agrees that each and all waivers contained in the

4

Agreement are made in exchange for the concessions made by the United States in this plea

agreement.

## The United States' Agreements

14.    The United States agrees to each of the following:

(a)    At the time of sentencing, the United States agrees not to oppose defendant's anticipated request to the Court and the United States Probation Office that he/she receive a two (2) level downward adjustment pursuant to U.S.S.G. Section 3E1.1(a) should the defendant accept responsibility as contemplated by the Sentencing Guidelines.

(b)    If the defendant qualifies for an adjustment under U.S.S.G. Section 3E1.1(a), the United States agrees not to oppose the defendant's request for an additional one level departure based on the timeliness of the plea or the expeditious manner in which the defendant provided complete information regarding his role in the offense if the defendant's offense level is 16 or greater.

(c)    The United States agrees at the time of sentencing to request a sentence of 10 years on Count One.   The term of imprisonment is to be followed by a term of at least 5 years on supervised release. The United States agrees to leave the term of years of supervised release beyond the mandatory 5 years up to the Court.  This does not prevent the United States from arguing for more than 5 years up to Life.  The United States agrees that the amount of any fine imposed rests with the Court. The United States agrees that this recommendation will bind the Court, if this agreement is accepted, pursuant to Rule 11(c)(1)(C).

## United States' Non-Waiver of Appeal

15.    The United States reserves the right to carry out its responsibilities under the

sentencing guidelines.  Specifically, the United States reserves the right:

(a)    to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)    to set forth or dispute sentencing factors or facts material to sentencing;

(c)    to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office; and,

(d)     to file a pleading relating to these issues, in accordance with U.S.S.G. Section
6A1.2 and Title 18, U.S.C.§ 3553(a).

## Sentence Determination

16.     Defendant is aware that the sentence will be imposed after consideration of the
United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as
the provisions of Title 18, U.S.C. § 3553(a).  Defendant nonetheless acknowledges and agrees
that the Court has authority to impose any sentence up to and including the statutory maximum set
for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within
the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing
Guidelines. Defendant understands and agrees the parties' positions regarding the application of
the Sentencing Guidelines do not bind the Court until the Court accepts the plea agreement.  If the
Court accepts the plea agreement, Defendant will remain bound to fulfill all of the obligations
under this plea agreement.  If the Court rejects the plea agreement, Defendant will be given an
opportunity to withdraw his plea of guilty.

## Rights at Trial

17.     Defendant represents to the Court that he is satisfied that his/her attorney has
rendered effective assistance.  Defendant understands that by entering into this agreement, he/she
surrenders certain rights as provided in this plea agreement.  Defendant understands that the
rights of a defendant include the following:

(a)     If defendant persisted in a plea of not guilty to the charges, defendant would have
the right to a speedy jury trial with the assistance of counsel.  The trial may be
conducted by a judge sitting without a jury if the defendant, the United States, and
the court all agree.

(b)     At a trial, the United States would be required to present witnesses and other
evidence against the defendant. Defendant would have the opportunity to confront

6

those witnesses and his/her attorney would be allowed to cross-examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court.

(c)     At a trial, defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, he/she could testify on his/her own behalf.

### Factual Basis for Guilty Plea

18.     Defendant is pleading guilty because he is guilty of the charges contained in Count One of the Indictment. If this case were to proceed to trial, the United States could prove each element of the offenses charged in each count beyond a reasonable doubt. The parties agree that this factual basis does not include all relevant conduct that may be considered by the Court for sentencing purposes. The following facts, among others would be offered to establish the Defendant's guilt:

On July 19, 2012, Jason Gandy (GANDY) arrived in the United Kingdom (UK) at Heathrow International Airport aboard United Airlines Flight 4 which he boarded in Houston, Texas. GANDY was traveling with a 15 year-old male KV (D.O.B. xx/xx/1997) KV is not related to GANDY.

Upon landing in the UK, GANDY was inspected by UK Immigration (UKI) Officers of the UK Border Agency and selected for secondary inspection. UKI authorities became suspicious when GANDY was asked why he wanted to enter the UK and why he was traveling with a minor child. UKI authorities were also concerned as GANDY admitted that he was not related to KV and contacted KV's mother. KV's mother informed the UKI officers that she had given KV permission to travel with GANDY, but also gave a conflicting reason as to the purpose of the trip. Based upon interviews with GANDY, KV and KV's mother, UKI officials denied GANDY and KV entry and made arrangements for them to immediately return to the United States.

7

On or about, July 20, 2012, at approximately 1:35 pm (CDT), GANDY arrived at George Bush Intercontinental Airport in Houston, Texas, on United Airlines Flight 35.   Bush Intercontinental Airport is in Houston, Harris County, Texas and within the Southern District of Texas.   Upon disembarking the plane, GANDY was escorted by U.S. Customs and Border Protection (CBP) officers to the secondary inspection area.   During secondary inspection, GANDY made a binding declaration to the CBP officers that the luggage and other items he was carrying were his.

HSI SA Juanae Johnson along with Houston Police Department Detective Joseph Roscoe, met with GANDY upon his arrival and questioned him as to the purpose of his trip to the United Kingdom and his travel with KV.   GANDY was advised of his Miranda rights and informed that he was not under arrest.   Gandy waived his rights and spoke willingly and voluntarily with law enforcement about his travels to the UK with KV.   The interview took place in the baggage search area in the CBP secondary inspection area.

GANDY stated that he and KV had met through a mutual "friend" on the social networking website "Facebook".   The original communications between the parties was via the internet, a means and facility of interstate commerce.   GANDY, who is 35 years-old, knew KV was only 15 years of age, however he did not disclose his age to the child.

Upon meeting KV, GANDY took him to the mall to celebrate his 15th birthday around April of 2012. GANDY also admitted taking KV to a concert, and informed agents that he and KV began to develop a friendship. GANDY admitted to lavishing KV with gifts in person and via the mail. GANDY stated that he liked buying KV nice things, because KV's family was unable to.

GANDY informed the agents that he is a licensed massage therapist and he buys and sells real estate for a living. GANDY told agents that he owned and operated a massage business known as, JasonRMT.com. The website, where he advertises on line, indicates that GANDY performs massages for a fee which must be paid in cash.   Additionally, the massages can be "incalls" or "outcalls" which mean that either the customer comes to GANDY or he goes to the customer.   The terms "incalls" and "outcalls" are terms frequently associated with prostitution and advertisements for prostitution activities. GANDY informed the agents that KV spends the night at least once a week at his home.

8

KV was also interviewed and based on information provided by GANDY and the KV, agents were able to establish KV was with GANDY almost every weekend.   GANDY also told agents that when they are together, he gives massages to KV. KV corroborated GANDY's statement and informed agents that GANDY, on at least on one occasion, had masturbated him, KV, during the massage session. GANDY told the agents that after every massage, GANDY masturbates in KV's presence, and on several occasions GANDY and KV have masturbated in the presence of one another.

GANDY also told agents that on at least one occasion he has taken a nude picture of KV's backside without his permission while they were at GANDY'S home.   GANDY also stated that he downloaded the picture on his laptop.   KV confirmed that GANDY has taken other photos of his nude backside at the home but he does not know where those photos are. When asked to elaborate, KV indicated that he was joking with GANDY one day when they were together about the photos.   KV took off his pants and then allowed GANDY to take nude photos of him.

Personnel trained in child psychology from the Harris County Children's Assessment Center along with officers also interviewed KV.   KV confirmed that GANDY runs a massage business which he operates in his home, 2320 Truxillo, Houston, TX 77004, and in the Recreational Vehicle (RV) located on the property.   KV was recruited by GANDY in May of 2012 to assist with GANDY's commercial sex operation, aka "massage" business and KV has done so up until the present.   At GANDY's direction, KV massages men while they are completely nude.   The men are also allowed to fondle KV's genitals during the "massage" sessions.   KV was uncomfortable conducting massages in the nude and allowing the men to touch him in the beginning. GANDY told KV that in order for them to continue to hang out and make money together he had to allow the clients to touch him. During these "massages" KV would also masturbate the men.   KV estimated that he has been paid between $400.00 and $500.00 dollars since working for GANDY.

KV indicated that he has been instructed to "massage" certain clients alone on at least one occasion. KV stated that he would "stay" in the RV while at GANDY's residence, and men would enter the RV and tell KV "I am here for you."   KV would "massage" these men alone while in the nude and masturbate them. KV knew that GANDY was paid between $80.00 and

$120.00 for the "massage" sessions.   If GANDY alone provided what was referred to as a "single" massage, the fee was $80.00.   If both KV and GANDY participated in a commercial sex act, which was referred to as a "four hand" massage, together the fee was $120.00.   Upon completion of each commercial sex act, the clients paid GANDY, and then GANDY would pay KV between $20.00 and $40.00. KV went on to say that GANDY has a large clientele and GANDY is busy most of the time.

GANDY stated that he and KV recently began discussing taking a trip to England. GANDY purchased both plane tickets (approximately $2150.00) and gave KV money to purchase an expedited passport (approximately $200.00). GANDY received a signed and notarized affidavit form from KV's mother that authorized KV to travel with GANDY and remain in the UK in GANDYS' custody from July 18, 2012 until August, 22, 2012. GANDY had not reserved any accommodations in the UK and was intending on finding a place to stay once they landed in the UK.

During the secondary search of GANDY's personal belongings, CBP officers discovered approximately 90 condoms. When agents questioned GANDY about the condoms he told agents that he utilized the condoms for massaging his clients prostates, and he had some "hope" of possibly using a couple of condoms with KV once in London.

KV also told interviewers that GANDY intended to start a massage business while in London that was similar to the one he ran in the Houston area.   KV stated that GANDY told him that he was unaware of the laws in the UK governing the types of massages he would be legally permitted to provide. KV also stated that on July 18th, 2012, while they were waiting to board their flight to the UK, GANDY informed KV that he had two clients waiting for them in the UK. They were set to meet him between July 22nd and July 24th, 2012.

KV stated that GANDY promised KV that once in London he would possibly be able to attend the Olympics, and that he would be taken to his favorite clothing store and be able to see his favorite bands. KV was under the impression that he would be required to perform some massages while he was in the UK but he was most excited about the shopping, the Olympics and seeing his favorite bands.

## Breach of Plea Agreement

19.    If defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and the defendant's plea and sentence will stand.  If at any time defendant retains, conceals or disposes of assets in violation of this plea agreement, or if defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.  Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

20.    Whether the defendant has breached any provision of this plea agreement shall be determined solely by the United States through the United States Attorney's Office, whose judgment in that regard is final.

## Forfeiture

21.    Defendant agrees to waive any and all interest in any asset which is the subject of any related administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal.  Defendant admits and agrees that the following assets, which are the subject of the related civil forfeiture action styled United States of America v. 2005 C5500 Chevrolet Recreational Vehicle, et al., and pending before the Houston Division of the United States District Court for the Southern District of Texas under Case No. 4:12-cv-3668, were used or intended to be used to commit or to facilitate the commission of transportation of a minor with intent to engage in criminal sexual activity which form the basis of this criminal action:

A.    The real property located at Truxillo Street and Dowling Street, Houston, Texas,

11

and legally described as:

> Lot Eleven 11, in Block Five (5) of Washington Terrace, a subdivision in
> Harris County, Texas, according to the map or plat thereof recorded in
> Volume 557, Page 68 of the Deed Records of Harris County, Texas;

B.   A 2005 C5500 Chevrolet Recreational Vehicle, VIN # 1GBE5U1E15F505062; and

C.   A 2012 Toyota Scion IQ, VIN # JTNJJXB06CJ010887.

22.   Defendant agrees that he will sign an agreed judgment in the related civil forfeiture
action (Case No. 4:12-cv-3668) that will forfeit all right, title, and interest in the assets which are
the subject of that action, to the United States.   The terms of the agreed judgment will be as
follows:

A.   Defendant agrees to the forfeiture of the real property located at Truxillo Street and
Dowling Street, Houston, Texas.

B.   Defendant agrees to the forfeiture of the 2005 C5500 Chevrolet Recreational
Vehicle, VIN # 1GBE5U1E15F505062.

C.   Defendant agrees to the forfeiture of the 2012 Toyota Scion IQ, VIN #
JTNJJXB06CJ010887.

23.   Defendant waives the right to challenge the agreed judgment in the civil forfeiture
action referenced above in any manner (including by direct appeal, habeas corpus, or any other
means) and on any grounds, including that the forfeiture constitutes an excessive fine or
punishment.   The defendant agrees to take all steps requested by the United States to pass clear
title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture
proceeding.

## Complete Agreement

24.   This written plea agreement, consisting of 15 pages, including the attached

12

addendum of defendant and his/her attorney, constitutes the complete plea agreement between the United States, defendant and his/her counsel.   No promises or representations have been made by the United States except as set forth in writing in this plea agreement.   Defendant acknowledges that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

25.   Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on _____, 2014.

_____
Jason Gandy
Defendant

Subscribed and sworn to before me on _____, 2014.

UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

KENNETH MAGIDSON
United States Attorney

By: _____
Sherri L. Zack
Assistant United States Attorney

_____
Dan Cogdell
Attorney for Defendant

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 12-503 |
| JASON GANDY | § § | |
| Defendant. | § | |

## PLEA AGREEMENT  - ADDENDUM

I have fully explained to defendant his/her rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction.  Further,  I have carefully reviewed every part of this plea agreement with Defendant.   To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Dan Cogdell
Attorney for Defendant

_____
Date

14

I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me.   My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> which may apply in my case.   I have read and carefully reviewed every part of this plea agreement with my attorney.   I understand this agreement and I voluntarily agree to its terms.

_____

Jason Gandy
Defendant

Date _____

15

**ҟ, Sherri (USATXS)**

| | |
|---|---|
| **From:** | Zack, Sherri (USATXS) |
| **Sent:** | Friday, August 29, 2014 3:38 PM |
| **To:** | Charles Flood (Charles@floodandflood.com) |
| **Subject:** | here is the civil stuff that he wil have to sign |

Joint Mot for Final
Jdgt and P...



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>2005 C5500 Chevrolet Recreational<br>Vehicle; 2012 Toyota Scion IQ; One<br>Piece of Real Property at Truxillo Street<br>and Dowling Street, Houston, Texas;<br>and Massage Therapist Verification,<br>Credential Number MT023870,<br>File Number 37235,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§   CIVIL NO. 4:12-cv-03668 |

## JOINT MOTION FOR AGREED FINAL JUDGMENT OF FORFEITURE

The United States of America, the claimant Jason Gandy ("Claimant"), through his attorney, Dan Cogdell, and claimant various taxing authorities[1] ("Taxing Authorities"), through their attorney, Lori Gruver, state that they have settled all matters in dispute in this *in rem* forfeiture action and agree to judgment on the following terms:

### BACKGROUND

1.     The United States of America filed a Verified Complaint for Forfeiture In Rem against a 2005 C5500 Chevrolet Recreational Vehicle; a 2012 Toyota Scion IQ; one piece of real property at Truxillo Street and Dowling Street, Houston, Texas; and a Massage Therapist Verification ("Defendant Properties"), on December 18, 2012. (Doc. No. 1).

2.     The United States sent notice of the action to known potential claimants and published notice of the action in accordance with Rule G(4) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. (Doc. No. 6).

---

[1] The following taxing authorities filed a claim in this action asserting an interest in the real property located at Truxillo Street and Dowling Street, Houston, Texas:  Harris County, Texas; Houston ISD; Harris County Flood Control District, Port of Houston Authority; Harris County Hospital District; Harris County Department of Education; Houston Community College System; and City of Houston.

3.      Claimant and the Taxing Authorities were the only persons or entities to respond to this action. (*See* Doc. Nos. 5, 8, and 9). No other claims and/or answers have been filed in this action, and pursuant to Rule G(5) of the Supplemental Rules of Certain Admiralty Maritime Claims, Federal Rules of Civil Procedure, the time for filing a claim and answer in this action has passed. All others should, therefore, be held in default.

4.      On Wednesday, September 3, 2014, Claimant pleaded guilty to one count of transportation of minors with intent to engage in prostitution, in violation of 18 U.S.C. § 2423(a). *See United States v. Jason Gandy*, 4:12-CR-503, United States District Court for the Southern District of Texas, Houston Division.

## AGREEMENT

5.      The parties stipulate that the following property is subject to forfeiture:  2005 C5500 Chevrolet Recreational Vehicle, VIN # 1GBE5U1E15F505062;  2012 Toyota Scion IQ, VIN # JTNJJXB06CJ010887; and one piece of real property at Truxillo Street and Dowling Street, Houston, Texas, and legally described as:

> Lot Eleven 11, in Block Five (5) of Washington Terrace, a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Volume 557, Page 68 of the Deed Records of Harris County, Texas.

6.      The United States and Claimant recognize the claim of the Taxing Authorities asserted against the real property located at Truxillo Street and Dowling Street, Houston, Texas, for delinquent taxes due and owing to the Taxing Authorities through the date of the final judgment of forfeiture together with interest as allowed by law.

7.      Claimant and the Taxing Authorities agree to the forfeiture of the real property at Truxillo Street and Dowling Street, Houston, Texas.

8.      Claimant agrees to the forfeiture of the 2005 C5500 Chevrolet Recreational Vehicle, VIN # 1GBE5U1E15F505062.

9.   Claimant agrees to the forfeiture of the 2012 Toyota Scion IQ, VIN # JTNJJXB06CJ010887.

10.   Claimant's Massage Therapist Verification/license expired May 2013, therefore, that asset is moot.

11.   Claimant hereby waives any and all claims that he has or might have against the United States of America, the United States Department of Justice, the United States Customs and Border Protection, the Department of Homeland Security, and all agents, officers, and employees thereof (hereinafter the "Released Parties"), relating to the seizure or forfeiture of Defendant Properties.

12.   Each party agrees to bear its own costs, attorney's fees, and expenses.

<u>PRAYER</u>

Wherefore, the United States, the Claimant, and the Taxing Authorities request that the Court sign the Agreed Final Judgment of Forfeiture.

Respectfully submitted,

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By:     s/ E. Vincent Carroll
        E. Vincent Carroll
        Assistant U.S. Attorney
        SDTX Admission No. 1804030
        1000 Louisiana, Suite 2300
        Houston, TX 77002
        Phone: (713) 567-9000; Fax: (713) 718-3404
        Email: Vincent.Carroll@usdoj.gov
        Attorneys for Plaintiff United States of America

        s/ Lori Gruver
        Lori Gruver
        State Bar No. 24007283
        Southern Admission No. 22963
        Linebarger, Goggan, Blair & Sampson, LLP
        P.O. Box 17428
        Austin, Texas 78760

Phone:  (512) 447-6675;  Fax (512) 693-0728
Email:  LoriG@lgbs.com
Attorney for Taxing Authorities

 s/ Dan Cogdell
Dan Cogdell
Texas Bar No. 0450150
The Cogdell Law Firm, PLLC
402 Main Street, 4th Floor
Houston, Texas  77009
Phone: (713) 426-2244;  Fax: (713) 426-2255
Email:  dan@cogdell-law.com
Attorney for Claimant Jason Gandy

APPROVED IN FORM AND SUBSTANCE BY:

_____          _____

Jason Gandy, Claimant               Date

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| 2005 C5500 Chevrolet Recreational | § | CIVIL NO. 4:12-cv-03668 |
| Vehicle; 2012 Toyota Scion IQ; One | § | |
| Piece of Real Property at Truxillo Street | § | |
| and Dowling Street, Houston, Texas; | § | |
| and Massage Therapist Verification, | § | |
| Credential Number MT023870, | § | |
| File Number 37235, | § | |
| Defendants. | § | |

## AGREED FINAL JUDGMENT OF FORFEITURE

The parties have announced to the Court that all matters in dispute have been resolved.
The Court finds that proper notice and publication have been given to all potential claimants, the
time for filing a verified statement of interest has expired, and but for Jason Gandy and various
taxing authorities[2], there are no claimants before the Court.  All other persons having any right,
title, or interest in defendants 2005 C5500 Chevrolet Recreational Vehicle; 2012 Toyota Scion
IQ; One Piece of Real Property at Truxillo Street and Dowling Street, Houston, Texas, legally
described as:  Lot Eleven 11, in Block Five (5) of Washington Terrace, a subdivision in Harris
County, Texas, according to the map or plat thereof recorded in Volume 557, Page 68 of the
Deed Records of Harris County, Texas;  and Massage Therapist Verification, Credential Number
MT023870, File Number 37235, ("Defendant Properties") except for Jason Gandy ("Claimant")
and the various taxing authorities ("Taxing Authorities"), are held in default.  The Court also

---

[2] The following taxing authorities filed a claim in this action asserting an interest in the real property
located at Truxillo Street and Dowling Street, Houston, Texas:  Harris County, Texas; Houston ISD;
Harris County Flood Control District, Port of Houston Authority; Harris County Hospital District; Harris
County Department of Education; Houston Community College System; and City of Houston.

finds that the Complaint for Forfeiture *In Rem* against Defendant Properties sets forth sufficient evidence to establish the forfeiture of Defendant Properties by a preponderance of the evidence.

The parties Joint Motion for Agreed Final Judgment of Forfeiture is GRANTED, and it is accordingly ORDERED that:

1.      The real property located at Truxillo Street and Dowling Street, Houston, Texas, and legally described as:

> Lot Eleven 11, in Block Five (5) of Washington Terrace, a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Volume 557, Page 68 of the Deed Records of Harris County, Texas;

is forfeited to the United States of America, and all right, title, and interest in the real property located at Truxillo Street and Dowling Street, Houston, Texas, are vested in the United States of America.  The United States of America shall dispose of the real property in accordance with applicable law;

2.      Claimant and the Taxing Authorities shall execute all documents necessary to enable the United States to convey clear title to the real property located at Truxillo Street and Dowling Street, Houston, Texas, at closing;

3.      The United States shall pay to the Taxing Authorities all ad valorem taxes due and owing to the Taxing Authorities through the date of the final judgment of forfeiture together with interest as allowed by law;

4.      The 2005 C5500 Chevrolet Recreational Vehicle, VIN # 1GBE5U1E15F505062, is forfeited to the United States of America, and the United States of America shall dispose of the 2005 C5500 Chevrolet Recreational Vehicle in accordance with applicable law;

5.     The 2012 Toyota Scion IQ, VIN # JTNJJXB06CJ010887, is forfeited to the United States of America, and the United States of America shall dispose of the 2012 Toyota Scion IQ in accordance with applicable law;

6.     The Massage Therapist Verification, Credential Number MT023870, File Number 37235, has expired, so that asset is moot;

7.     The Claimant shall hold the United States of America, including the United States Department of Justice, the United States Customs and Border Protection, the Department of Homeland Security, and all agents, officers, and employees thereof harmless for any and all damages or causes of action of any kind or nature whatsoever relating to this action;

8.     All other persons or entities, other than the Claimant and the Taxing Authorities, who could assert an interest in defendants 2005 C5500 Chevrolet Recreational Vehicle; 2012 Toyota Scion IQ; One Piece of Real Property at Truxillo Street and Dowling Street, Houston, Texas; and Massage Therapist Verification, Credential Number MT023870, File Number 37235, are held in default; and

9.     The United States of America, the Claimant, and the Taxing Authorities shall bear their own costs, including attorney's fees and expenses.

THIS IS A FINAL JUDGMENT.

Signed this _____ day of _____, 2014.


_____
LEE H. ROSENTHAL
United States District Judge

**‹, Sherri (USATXS)**

**From:** Zack, Sherri (USATXS)
**Sent:** Thursday, September 11, 2014 9:13 AM
**To:** Charles Flood
**Subject:** RE: Gandy

Thank you for letting me know before my agent got in the car.  Keep me posted.

-----Original Message-----
From: Charles Flood [mailto:Charles@floodandflood.com]
Sent: Thursday, September 11, 2014 9:08 AM
To: Zack, Sherri (USATXS); Dan Cogdell
Cc: Cynthia_Jantowski@txs.uscourts.gov
Subject: Gandy

This is to confirm that Gandy is off the docket for 10:00 am.
Sherri, Dan and I are going to have him mentally evaluated.

   anks for everyone's patience...

Charles Flood



1

**c, Sherri (USATXS)**

| | |
|---|---|
| **From:** | Zack, Sherri (USATXS) |
| **Sent:** | Thursday, September 11, 2014 9:19 AM |
| **To:** | Charles Flood |
| **Subject:** | RE: Gandy |

My pleasure.

-----Original Message-----
From: Charles Flood [mailto:Charles@floodandflood.com]
Sent: Thursday, September 11, 2014 9:17 AM
To: Zack, Sherri (USATXS)
Subject: Re: Gandy

I mean it when I say thanks for your patience.

Charles Flood

    n Sep 11, 2014, at 9:13 AM, "Zack, Sherri (USATXS)" <Sherri.Zack@usdoj.gov> wrote:
>
> Thank you for letting me know before my agent got in the car.  Keep me posted.
>
> -----Original Message-----
> From: Charles Flood [mailto:Charles@floodandflood.com]
> Sent: Thursday, September 11, 2014 9:08 AM
> To: Zack, Sherri (USATXS); Dan Cogdell
> Cc: Cynthia_Jantowski@txs.uscourts.gov
> Subject: Gandy
>
> This is to confirm that Gandy is off the docket for 10:00 am.
> Sherri, Dan and I are going to have him mentally evaluated.
>
> Thanks for everyone's patience...
>
> Charles Flood



GOVERNMENT EXHIBIT
23
4:12-CR-503

1

**‹, Sherri (USATXS)**

| | |
|---|---|
| **From:** | Zack, Sherri (USATXS) |
| **Sent:** | Thursday, September 11, 2014 9:39 AM |
| **To:** | Dan Cogdell |
| **Subject:** | RE: Gandy |

No worries.

**From:** Dan Cogdell [mailto:dan@cogdell-law.com]
**Sent:** Thursday, September 11, 2014 9:36 AM
**To:** Cynthia_Jantowski@txs.uscourts.gov
**Cc:** Charles Flood; Zack, Sherri (USATXS); Lisa_Eddins@txs.uscourts.gov
**Subject:** Re: Gandy

Thank you and Charles and I apologize for any inconvenience this situation has caused.

Dan Cogdell
Cogdell Law Firm
402 Main, 4th Floor
Houston, Tx 77007
713 426 2244 (o)
    426 2255 (fax)
www.cogdell-law.com
dan@cogdell-law.com


On Sep 11, 2014, at 9:25 AM, "Cynthia_Jantowski@txs.uscourts.gov" <Cynthia_Jantowski@txs.uscourts.gov>
wrote:

> Today's rearraignment is cancelled.   I have included Lisa Eddins on this email.   You can get with her
> regarding trial dates.
>
> Thank you.
>
> Cindy
>
>
> From:     Charles Flood <Charles@floodandflood.com>
> To:       Sherri Zack <sherri.zack@usdoj.gov>, Dan Cogdell <dan@cogdell-law.com>
> Cc:       "Cynthia_Jantowski@txs.uscourts.gov" <Cynthia_Jantowski@txs.uscourts.gov>
> Date:     09/11/2014 09:07 AM
> Subject:  Gandy


This is to confirm that Gandy is off the docket for 10:00 am.
Sherri, Dan and I are going to have him mentally evaluated.

Thanks for everyone's patience...



1

Charles Flood

**Charles Flood**

| | |
|---|---|
| From: | Charles Flood |
| Sent: | Saturday, September 13, 2014 10:11 AM |
| To: | Julie Gandy |
| Cc: | Dan Cogdell |
| Subject: | Re: Jason |

I'm available Monday and Tuesday afternoons.  I'm cc'ing Dan to see when he's available.

Charles Flood

On Sep 13, 2014, at 8:59 AM, "Julie Gandy" <jgandy79@gmail.com> wrote:

> Please let me know if Monday or Tuesday is best for you. I have a secretary to cover on Monday but not
> Tuesday unless I plan ahead. Whichever day it is, we'd need to be done by 4:30. If it isn't till
> Wednesday,  it would have to be in the morning, as I have to take my father somewhere in the
> afternoon. Let us know so we can make plans.
> Thank you
> Julie

> On Sep 12, 2014 11:08 AM, "Julie Gandy" <jgandy79@gmail.com> wrote:

>> Yes. We can make that happen. We'll be visiting with Jason on Sunday. It sounds like this something
>> that he needs to know about asap. Can you visit him before then & let us know the outcome so we can
>> discuss with him? How soon would this decision need to be made?
>> Thanks
>> Julie

>> On Sep 12, 2014 10:43 AM, "Charles Flood" <Charles@floodandflood.com> wrote:
>> I'd like to meet and discuss A potential strategy that would benefit Jason. There may be a way to keep
>> new charges from being filed and give him more time to consider his decision.  There is talk of Judge
>> Rosenthal transferring the case to a different district court, it is a court that is not necessarily more
>> punitive (I think Dan would disagree with that, but both of these judges would be bad in this case) but
>> I believe is far less likely to give his motion to suppress the proper consideration.
>> but we will have to act quickly, can you all come in early next week?
>> Charles Flood

>> On Sep 12, 2014, at 10:37 AM, "Julie Gandy" <jgandy79@gmail.com> wrote:

>>> Charles,
>>> Please let us know as soon as a new trial schedule is set and/or more charges are
>>> filed. We don't want to be caught off guard.
>>> Thanks,
>>> Julie

>>> On Thu, Sep 11, 2014 at 9:16 AM, Charles Flood <Charles@floodandflood.com>
>>> wrote:
>>>> Julie, I just want to let you know that the 10:00 plea is off. Judge Rosenthal's case
>>>> manager will be sending us a new trial schedule.  I think we should sit down and talk

1


GOVERNMENT EXHIBIT
25
4:12-CR-503
FRIGID-Bayonne, N. J.

in person about the next steps.  Despite Jason's beliefs to the contrary, Dan and I are trying to help him properly navigate this difficult situation - and so I want to know that everyone is on board with what happens next.

Thanks,

Charles Flood

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**United States Courts
Southern District of Texas
FILED**

**AUG 15 2012**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | § |
| | § |
| | § |
| | § |
| vs. | § **CRIMINAL NO.** |
| | § |
| | § |
| **JASON DANIEL GANDY** | § |
| | § **1 2 CR 5 0 3** |
| | § |

**David J. Bradley, Clerk of Court**

## CRIMINAL INDICTMENT

THE GRAND JURY CHARGES THAT:

### COUNT ONE
### Transportation of Minors

On or about July 19, 2012, in the Southern District of Texas and elsewhere,

### JASON DANIEL GANDY

defendant herein knowingly transported K.V., who had not attained the age of 18 years, in

interstate commerce and foreign commerce, from the State of Texas to the United Kingdom, with

the intent that K.V. engage in prostitution and other sexual activity for which any person could be

charged with a criminal offense.

**In violation of Title 18, United States Code, Sections 2423(a).**



GOVERNMENT
EXHIBIT
26
4:12-CR-503

A True Bill:

Original Signature on File
_____
Grand Jury Foreperson

KENNETH MAGIDSON
United States Attorney

By: _____
Sherri L. Zack
Assistant United States Attorney
713-567-9374

18-20823.43

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
FILED

SEP 1 7 2014

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § § § | |
| **vs.** | § § § | **CRIMINAL NO. 12-503S** |
| **JASON DANIEL GANDY** | § § | |

**SUPERSEDING CRIMINAL INDICTMENT**

THE GRAND JURY CHARGES THAT:

**INTRODUCTION**



At all times material to this Superseding Indictment:

1.     The term "minor" is defined, pursuant to Title 18, United States Code, Section

2256(1), as "any person under the age of eighteen years."

2.     The term "child pornography", for purposes of this Superseding Indictment, is

defined, pursuant to Title 18, United States Code, Section 2256(8)(A), as:

"any visual depiction, including any photograph, film, video, picture, or
computer or computer-generated image or picture, whether made or produced
by electronic, mechanical, or other means, of sexually explicit conduct, where

      (A)     the production of such visual depiction involves the use of a
      minor engaged in sexually explicit conduct;

3.      The term "sexually explicit conduct" is defined, pursuant to Title 18, United

States Code, Section 2256(2), as any:

> "actual or simulated -
>
> (i)     sexual intercourse, including genital [to] genital, oral [to]
> genital, anal [to] genital, or oral [to] anal, whether between persons of
> the same or opposite sex; [or]
> (ii)    bestiality; [or]
> (iii)   masturbation; [or]
> (iv)    sadistic or masochistic abuse; or
> (v)     [the] lascivious exhibition of the genitals or pubic area of any
> person."

4.      The term "computer" is defined, pursuant to Title 18,  United States Code,
Sections 2256(6) and

1030(e)(1), as any:

> "electronic, magnetic, optical, electrochemical, or other high speed data
> processing device performing logical, arithmetic,  or storage functions, and
> includes any data storage facility or
> communications facility directly related to or operating in conjunction with
> such device, but such term does not include an automated typewriter or
> typesetter, a portable hand held calculator or other similar device."

5.      The term "producing" is defined, pursuant to Title 18, United States Code,
Section 2256(3), as:
> "producing, directing, manufacturing, issuing, publishing or advertising," and
> includes downloading images from another source, buy using materials,
> including a computer or parts thereof.

6.      The term "visual depiction" is defined, pursuant to Title 18, United States
Code, Section

2256(5), as including, but is not limited to, any:

"undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image."

## COUNT ONE
## Transportation of Minors

On or about July 19, 2012, in the Southern District of Texas and elsewhere,

## JASON DANIEL GANDY,

defendant herein, knowingly transported K.V., who had not attained the age of 18

years, in interstate commerce and foreign commerce, from the State of Texas to the

United Kingdom, with the intent that K.V. engage in prostitution and other sexual

activity for which any person could be charged with a criminal offense.

**In violation of Title 18, United States Code, Sections 2423(a).**

## COUNT TWO
## Sexual Exploitation of Children

On or between April 1, 2012 and July 18, 2012, within the Southern

District of Texas,

## JASON DANIEL GANDY,

defendant herein, did attempt to and did employ, use, persuade, induce, entice and

coerce a minor, namely K.V., to engage in any sexually explicit conduct for the

purpose of producing a visual depiction of such conduct, and such visual depiction

was transmitted using any means and facility of interstate or foreign commerce, and

the visual depiction was produced using materials that had been mailed, shipped and transported in or affecting interstate and foreign commerce.

**In violation of Title 18, United States Code, Section 2251(a) & (e).**

## COUNT THREE
### Transportation of Child Pornography

On or about July 19, 2012, in the Southern District of Texas and elsewhere,

**JASON DANIEL GANDY,**

defendant herein, knowingly transported any child pornography, as defined in Title 18, United States Code, Section 2256(8), using any means or facility of interstate or foreign commerce.

**In violation of Title 18, United States Code, Sections 2252A(a)(1) and (b).**

## NOTICE OF FORFEITURE
### 18 U.S.C. § 2428

Pursuant to Title 18, United States Code, Section 2428, the United States gives notice to the defendant that in the event of conviction for the offense charged in Count One of the Superseding Indictment, the following property is subject to forfeiture:

(1)     all property, real and personal, that was used or intended to be used to commit or to facilitate the commission of the offense charged in Count One; and

(2)     all property, real and personal, constituting or derived from any

proceeds obtained directly or indirectly, as a result of the offense charged in Count One.

## NOTICE OF FORFEITURE
### 18 U.S.C. § 2253(a)

Pursuant to Title 18, United States Code, Section 2253(a)(2) and (a)(3), the United States gives notice to the defendant that in the event of conviction for the offenses charged in Counts Two and Three of the Superseding Indictment, the following property is subject to forfeiture:

(1)     all property, real and personal, constituting or traceable to gross profits or other proceeds obtained from the offenses charged in Counts Two and Three; and

(2)     all property, real and personal, used or intended to be used to commit or to promote the commission of the offenses charged in Counts Two and Three, or any property traceable to such property.

### Property Subject to Forfeiture:

Defendant is notified that the property subject to forfeiture includes, but is not limited to, the following property:

(1)     the real property, improvements and appurtenances located at Truxillo Street and Dowling Street, Houston, Texas, (Gandy's Residence) and is legally described as:

> Lot Eleven (11), in Block Five (5) of Washington Terrace, a subdivision in Harris County, Texas, according to the map or plat

thereof recorded in Volume 557, Page 68 of the Deed Records of Harris County, Texas;

(2)    2005 C5500 Chevrolet Recreational Vehicle, vehicle identification number: 1GBE5U1E15F505062;

(3)    one Acer Aspire laptop;

(4)    one Motorola DroidX cell phone; and

(5)    one Maxtor hard drive.

A True Bill:

ORIGINAL SIGNATURE ON FILE

Grand Jury Foreperson

KENNETH MAGIDSON
United States Attorney

By:

Sherri L. Zack
Assistant United States Attorney
713-567-9374

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

United States Courts
Southern District of Texas
**FILED**

FEB 1 5 2018

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| | § | |
| vs. | § | **CRIMINAL NO. 12-503SS** |
| | § | |
| | § | |
| **JASON DANIEL GANDY** | § | |
| | § | |

## CRIMINAL INDICTMENT

THE GRAND JURY CHARGES THAT:

### INTRODUCTION

At all times material to this Indictment:

1.    The term "minor" is defined, pursuant to Title 18, United States Code, Section 2256(1),

as "any person under the age of eighteen years."

2.    The term "child pornography", for purposes of this Indictment, is defined, pursuant to

Title 18, United States Code, Section 2256(8)(A), as:

"any visual depiction, including any photograph, film, video, picture, or computer or
computer-generated image or picture, whether made or produced by electronic,
mechanical, or other means, of sexually explicit conduct, where -
            (A)    the production of such visual depiction involves the use of a minor
            engaged in sexually explicit conduct;

3.    The term "sexually explicit conduct" is defined, pursuant to Title 18, United States Code,

Section 2256(2), as any:

"actual or simulated -


GOVERNMENT
EXHIBIT
28
4:12-CR-503

(i)      sexual intercourse, including genital [to] genital, oral [to] genital, anal [to] genital, or oral [to] anal, whether between persons of the same or opposite sex; [or]

(ii)      bestiality; [or]

(iii)      masturbation; [or]

(iv)      sadistic or masochistic abuse; or

(v)      [the] lascivious exhibition of the genitals or pubic area of any person."

4.      The term "computer" is defined, pursuant to Title 18, United States Code, Sections 2256(6) and

1030(e)(1), as any:

"electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator or other similar device."

5.      The term "producing" is defined, pursuant to Title 18, United States Code, Section 2256(3), as:

"producing, directing, manufacturing, issuing, publishing or advertising," and includes downloading images from another source, buy using materials, including a computer or parts thereof.

6.      The term "visual depiction" is defined, pursuant to Title 18, United States Code, Section

2256(5), as including, but is not limited to, any:

"undeveloped film and videotape, and data stored on computer disk or by electronic

means which is capable of conversion into a visual image."

## COUNT ONE
### Transportation of Minors

On or about July 19, 2012, in the Southern District of Texas and elsewhere,

### JASON DANIEL GANDY,

defendant herein, knowingly transported Minor Victim # 1, who had not attained the age of 18

2

years, in interstate commerce and foreign commerce, from the State of Texas to the United

Kingdom, with the intent that Minor Victim #1 engage in prostitution and other sexual activity

for which any person could be charged with a criminal offense.

**In violation of Title 18, United States Code, Sections 2423(a).**

### COUNT TWO
### Sexual Exploitation of Children

On or between April 1, 2012 and July 18, 2012, within the Southern District of

Texas,

### JASON DANIEL GANDY,

defendant herein, did attempt to and did employ, use, persuade, induce, entice and coerce a

minor, namely Minor Victim # 1, to engage in any sexually explicit conduct for the purpose of

producing a visual depiction of such conduct, and such visual depiction was transmitted using

any means and facility of interstate or foreign commerce, and the visual depiction was produced

using materials that had been mailed, shipped and transported in or affecting interstate and

foreign commerce.

**In violation of Title 18, United States Code, Section 2251(a) & (e).**

### COUNT THREE
### Transportation of Child Pornography

On or about July 19, 2012, in the Southern District of Texas and elsewhere,

### JASON DANIEL GANDY,

defendant herein, knowingly transported any child pornography, as defined in Title 18, United

States Code, Section 2256(8), using any means and facility of interstate and foreign commerce.

3

**In violation of Title 18, United States Code, Sections 2252A(a)(1) and (b).**

### COUNT FOUR
### Sex Trafficking of Minors

From on or about April 1, 2012, through July 19, 2012, in the Southern District of

Texas and elsewhere,

### JASON GANDY,

defendants herein, in and affecting interstate commerce, knowingly recruited, enticed, harbored,

transported, provided, obtained, advertised, maintained, patronized, and solicited by any means a

person, namely a minor male known as Minor Victim #1, who had attained the age of 14, but

was under 18, knowing and in reckless disregard of the fact that Minor Victim #1 had not

attained that age of 18 years and would be caused to engage in a commercial sex act, and

benefitted financially and by receiving anything of value from participation in a venture which

has engaged in recruiting, enticing, harboring, transporting, providing, obtaining, advertising,

maintaining, patronizing, and soliciting by any means Minor Victim #1 knowing and in reckless

disregard of the fact that Minor Victim #1 had not attained the age of 18 years and would be

caused to engage in a commercial sex act.

**In violation of Title 18, United States Code, Section 1591(a), (b) and 2.**

### COUNT FIVE
### Sex Trafficking of Minors

From on or about November 1, 2006, through December 27, 2006, in the

Southern District of Texas and elsewhere,

4

## JASON GANDY,

defendants herein, in and affecting interstate commerce, knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and solicited by any means a person, namely a minor male known as Minor Victim #2, who had attained the age of 14, but was under 18, knowing and in reckless disregard of the fact that Minor Victim #2 had not attained that age of 18 years and would be caused to engage in a commercial sex act, and benefitted financially and by receiving anything of value from participation in a venture which has engaged in recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing and soliciting by any means Minor Victim #2 knowing and in reckless disregard of the fact that Minor Victim #2 had not attained the age of 18 years and would be caused to engage in a commercial sex act.

**In violation of Title 18, United States Code, Section 1591(a), (b) and 2.**

### COUNT SIX
### Sex Trafficking of Minors

From on or about June 1, 2005, through August 31, 2005, in the Southern District of Texas and elsewhere,

## JASON GANDY,

defendants herein, in and affecting interstate commerce, attempted to knowingly recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize and solicit by any means a person, namely a minor male known as Minor Victim #3, who had attained the age of 14, but was under 18, knowing and in reckless disregard of the fact that Minor Victim #3 had not attained that age of 18 years and would be caused to engage in a commercial sex act, and

5

attempted to benefitt financially and by receiving anything of value from participation in a

venture which attempted to engage in recruiting, enticing, harboring, transporting, providing,

obtaining, advertising, maintaining, patronizing, and soliciting by any means Minor Victim #3

knowing and in reckless disregard of the fact that Minor Victim #3 had not attained the age of 18

years and would be caused to engage in a commercial sex act.

**In violation of Title 18, United States Code, Section 1591(a), (b) and 2.**

**COUNT SEVEN**
**Sex Trafficking of Minors**

From on or about August 1, 2007, through November 31, 2007, in the Southern

District of Texas and elsewhere,

**JASON GANDY,**

defendants herein, in and affecting interstate commerce, attempted to knowingly recruit, entice,

harbor, transport, provide, obtain, advertise, maintain, patronize and solicit by any means a

person, namely a minor male known as Minor Victim #4, who had attained the age of 14, but

was under 18, knowing and in reckless disregard of the fact that Minor Victim #4 had not

attained that age of 18 years and would be caused to engage in a commercial sex act, and

attempted to benefit financially and by receiving anything of value from participation in a

venture which attempted to engage in recruiting, enticing, harboring, transporting, providing,

obtaining, advertising, maintaining, patronizing, and soliciting by any means Minor Victim #4

knowing and in reckless disregard of the fact that Minor Victim #4 had not attained the age of 18

years and would be caused to engage in a commercial sex act.

**In violation of Title 18, United States Code, Section 1591(a), (b) and 2.**

6

## NOTICE OF FORFEITURE
### 18 U.S.C. § 2253(a)

Pursuant to Title 18, United States Code, Section 2253(a)(2) and (a)(3), the United States gives the defendant notice that in the event of conviction for the offenses charged in Counts One through Seven of the Indictment, the United States will seek to forfeit all property, real and personal, constituting or traceable to gross profits or other proceeds obtained from the offenses charged in Counts One through Seven; and all property, real and personal, used or intended to be used to commit or to promote the commission of the offenses charged in Counts One through Seven, or any property traceable to such property.

## NOTICE OF FORFEITURE
### 18 U.S.C. § 1594(d)

Pursuant to Title 18, United States Code, Section 1594(d)(1) and (2), the United States gives the defendant notice that in the event of conviction for the offenses charged in Counts Four through Seven of the Indictment, the United States will seek to forfeit all property, real and personal, that was involved in, used, or intended to be used to commit or to facilitate the commission of such offenses, and any property traceable to such property, and all property, real or personal, constituting or derived from, any proceeds that the Defendant obtained, directly or indirectly, as a result of such offenses, or any property traceable to such property.

### Property Subject to Forfeiture:

Defendant is notified that the property subject to forfeiture includes, but is not limited to, the following property:

(1)     the real property, improvements and appurtenances located at Truxillo Street and Dowling Street, Houston, Texas, (Gandy's Residence) and is legally described as: Lot Eleven (11), in Block Five (5) of Washington Terrace, a subdivision in

7

Harris County, Texas, according to the map or plat thereof recorded in Volume 557, Page 68 of the Deed Records of Harris County, Texas;

(2)  2005 C5500 Chevrolet Recreational Vehicle, vehicle identification number: 1GBE5U1E15F505062;

(3)  one Acer Aspire laptop;

(4)  one Motorola DroidX cell phone; and

(5)  one Maxtor hard drive.

A True Bill:

Original Signature on File

Grand Jury Foreperson

RYAN K. PATRICK
United States Attorney

By:

Sherri L. Zack
Assistant United States Attorney
713-567-9374

8

AO 243 (Rev. 09/17)

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District | Southern District of Texas | |
|---|---|---|---|
| Name *(under which you were convicted)*:<br>Jason Daniel Gandy | | | Docket or Case No.:<br>4:12cr503 |
| Place of Confinement:<br>FCI Marianna | | Prisoner No.:<br>73006-279 | |
| UNITED STATES OF AMERICA | | Movant *(include name under which convicted)* | |
| | V. | Jason Daniel Gandy | |

### MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:

   U.S. District Court - SDTX

   (b) Criminal docket or case number (if you know): 4:12cr503

2. (a) Date of the judgment of conviction (if you know): 12/23/2018

   (b) Date of sentencing: 12/18/2018

3. Length of sentence: 360 Months

4. Nature of crime (all counts):

   Count One - transportation of minors; Count Two - sexual exploitation of children; Count Three - transportation of child pornography; Count Four - Seven - sex trafficking of minors.

5. (a) What was your plea? (Check one)
   (1) Not guilty ✓    (2) Guilty ☐    (3) Nolo contendere (no contest) ☐

6. (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

   GOVERNMENT EXHIBIT
   29
   4:12-CR-503

6. If you went to trial, what kind of trial did you have? (Check one)    Jury ✓    Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☐    No ✓

AO 243 (Rev. 09/17)

8.   Did you appeal from the judgment of conviction?     Yes ☑     No ☐

9.   If you did appeal, answer the following:

(a) Name of court:  U.S. Court of Appeals for the Fifth Circuit

(b) Docket or case number (if you know):  18 -20823

(c) Result:  Affirmed

(d) Date of result (if you know):  11/4/2019

(e) Citation to the case (if you know):  795 Fed. Appx. 225

(f) Grounds raised:

Sufficiency of the evidence on Counts 1-3 and 6.

(g) Did you file a petition for certiorari in the United States Supreme Court?     Yes ☐     No ☑

If "Yes," answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

(5) Grounds raised:

10.  Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
Yes ☐     No ☑

11.  If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

AO 243 (Rev. 09/17)

(4)  Nature of the proceeding: _____

(5)  Grounds raised:

---

(6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

   Yes ☐     No ☐

(7)  Result: _____

(8)  Date of result (if you know): _____

(b)  If you filed any second motion, petition, or application, give the same information:

(1)  Name of court: _____

(2)  Docket of case number (if you know): _____

(3)  Date of filing (if you know): _____

(4)  Nature of the proceeding: _____

(5)  Grounds raised:

---

(6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

   Yes ☐     No ☐

(7)  Result: _____

(8)  Date of result (if you know): _____

(c)  Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1)  First petition:     Yes ☐     No ☐

(2)  Second petition:   Yes ☐     No ☐

(d)  If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

AO 243 (Rev. 09/17)

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the fac. supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** Gandy Passed On A Rule 11(c)(1)(C) Plea Agreement That Required A Sentence Of 10 Years Due To Ineffective Assistance of Counsel

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The United States offered Gandy a plea agreement in the Fall of 2014. See attachment A. The plea agreement would have allowed Gandy to plead guilty to a fixed term of ten years pursuant to FRCP 11(c)(1)(C). Additionally, the plea agreement required that Gandy be sentenced to a life term of supervised release. Gandy believed the proposed plea agreement was favorable, but declined to accept the plea agreement because Gandy's lawyers at the time, Dan Cogdell and Charles Flood, never informed Gandy that--after serving one year of supervised release--Gandy was eligible to apply for early termination of supervised release. See, 18 USC 3583(e)(1). Gandy was led to believe by Cogdell and Flood that a life term of supervised release meant that he would have to serve supervised release for the rest of his life. This was deficient performance.

The requirement that Gandy serve a lifetime period of supervised release was a deal breaker for Gandy, and critical to Gandy's decisionmaking on whether to accept or reject the plea. Supervised release was "the" most important factor for Gandy because Gandy wanted to (and still wants) to travel freely to other countries after his release from prison--and potentially move overseas, permanently. Additionally, Gandy did not want to be subject to the litany of conditions of supervision, both standard and special, that would operate--in Gandy's eyes--as significant restraints on his liberty. See continuation page ....

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

Claims of ineffective assistance are more appropriately reserved for collateral attack.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☑

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☐

## See Ground One (Continued)

Cogdell and Flood were ineffective for failing to explain to Gandy that he was eligible to apply for early termination of supervised release after completing one year of supervision.

In addition, even if early termination of supervision was not granted, neither Cogdell nor Flood explained to Gandy that the Court could allow Gandy to travel overseas--or even move overseas--while on supervised release because the standard release condition about travel outside the jurisdiction of supervision, 18 U.S.C. § 3563(b)(14), is not mandatory.

Moreover, all of the conditions of supervision are subject to modification. 18 U.S.C. § 3583(e)(2). Neither Cogdell nor Flood told Gandy about this.

The Supreme Court and the Fifth Circuit have both recognized that the prejudice inquiry for a guilty plea ineffectiveness claim of this nature "focuses on the defendant's decisionmaking." *United States v. Valdez*, 973 F.3d 396, 403 (5th Cir. 2020) (*citing Lee v. United States*, 137 S. Ct. 1958, 1966-67 (2017)). Proper focus on Gandy's decisionmaking demonstrates that there is a reasonable probability Gandy would have accepted the plea offer—instead of proceeding to trial—had Gandy's counsel not been deficient.

Finally, there is no reason to believe the Court would not have accepted the binding plea agreement.

See, Memorandum of Law and Facts in Support of 28 U.S.C. § 2255 Motion and Supporting Declarations (to be filed forthwith).

AO 243 (Rev. 09/17)

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TWO:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☐

AO 243 (Rev. 09/17)

(2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☐

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

AO 243 (Rev. 09/17)

**GROUND THREE:** _____

    (a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

    (b)  **Direct Appeal of Ground Three:**

        (1)  If you appealed from the judgment of conviction, did you raise this issue?

               Yes☐     No☐

        (2)  If you did not raise this issue in your direct appeal, explain why:

    (c)  **Post-Conviction Proceedings:**

        (1)  Did you raise this issue in any post-conviction motion, petition, or application?

               Yes☐     No☐

        (2)  If you answer to Question (c)(1) is "Yes," state:

        Type of motion or petition: _____

        Name and location of the court where the motion or petition was filed:

        Docket or case number (if you know): _____

        Date of the court's decision: _____

        Result (attach a copy of the court's opinion or order, if available):

        (3)  Did you receive a hearing on your motion, petition, or application?

               Yes☐     No☐

        (4)  Did you appeal from the denial of your motion, petition, or application?

               Yes☐     No☐

        (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

               Yes☐     No☐

AO 243 (Rev. 09/17)

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

## GROUND FOUR:

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐    No ☐

    (2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐    No ☐

    (2) If you answer to Question (c)(1) is "Yes," state:

Case 4:12-cr-00503 Document 258 Filed on 02/02/21 in TXSD Page 10 of 27

AO 243 (Rev. 09/17)

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):



(3) Did you receive a hearing on your motion, petition, or application?

    Yes ☐    No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ☐    No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

    Yes ☐    No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):



(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:




13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

AO 243 (Rev. 09/17)

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the
    you are challenging?    Yes ☐    No ☑
    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the
    issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the
    judgment you are challenging:
    (a) At the preliminary hearing:
    See Docket

    (b) At the arraignment and plea:
    See Docket

    (c) At the trial:
    See Docket

    (d) At sentencing:
    See Docket

    (e) On appeal:
    See Docket

    (f) In any post-conviction proceeding:
    See Docket

    (g) On appeal from any ruling against you in a post-conviction proceeding:

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court
    and at the same time?    Yes ☑    No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are
    challenging?    Yes ☐    No ☑
    (a) If so, give name and location of court that imposed the other sentence you will serve in the future:

    (b) Give the date the other sentence was imposed: _____
    (c) Give the length of the other sentence: _____
    (d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or
    sentence to be served in the future?    Yes ☐    No ☐

AO 243 (Rev. 09/17)

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

This motion is timely as it is filed within one year and 90 days from the Fifth Circuit's judgment affirming the judgment of the district court.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

   (1)   the date on which the judgment of conviction became final;

   (2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

   (3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

AO 243 (Rev. 09/17)

Therefore, movant asks that the Court grant the following relief:

Vacate Gandy's convictions and order the United States to re-offer the 10-year binding plea agreement.

or any other relief to which movant may be entitled.

 

 

_____
/s/Benson Weintraub
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____ .

                                             (month, date, year)

Executed (signed) on _____ (date)

 

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

# ATTACHMENT A
# (PROPOSED PLEA AGREEMENT)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 12-503 |
| | § | |
| JASON GANDY | § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney,

for the Southern District of Texas and Sherri L. Zack, Assistant United States Attorney, and the

defendant, Jason Gandy, and the defendant's counsel, Dan Cogdell, pursuant to Rule 11(c)(1)(C)

of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the

terms and conditions of which are as follows:

### The Defendant's Agreement

1.      Defendant agrees to plead guilty to Count(s) One of the Indictment.   Count One charges

the defendant with Transportation of Minors, in violation of Title 18, United States Code, §

2423(a). Defendant, by entering this plea, agrees that he/she is waiving any right to have the facts

that the law makes essential to the punishment either charged in the Indictment or proven to a jury

or judge beyond a reasonable doubt.

### Punishment Range

2.      The **statutory** maximum penalty for each violation of Title 18, United States Code,

§ 2423(a), is a term of imprisonment of not less than 10 years up to Life and a fine of not more than

$250,000.00.    Additionally, Defendant shall receive a term of supervised release after

imprisonment of at least 5 years up to Life.   Title 18, United States Code, §§ 3559(a) and 3583(b).

1

Defendant acknowledges and understands that if he/she should violate the conditions of any period of supervised release which may be imposed as part of his/her sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. Title 18, United States Code, §§ 3559(a) and 3583(e)(3). Defendant understands that he/she cannot have the imposition or execution of the sentence suspended, nor is he/she eligible for parole.

3. The defendant understands that under the Sex Offender Registration and Notification Act, the defendant must register and keep such information current in the jurisdictions where the defendant resides, is employed, and is a student. The defendant further understands that the requirement to keep the registration current includes informing such jurisdictions not later than three (3) business days after any change of the defendant's name, residence, employment or student status. The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, specifically, Title 18, United States Code, Section 2250, as well as applicable state statutes.

**Mandatory Special Assessment**

4. Pursuant to Title 18, U.S.C. § 3013(a)(2)(A), immediately after sentencing, defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

**Fine, Reimbursement and Restitution**

5. Defendant understands that under the Sentencing Guidelines, the Court is permitted to order the defendant to pay a fine that is sufficient to reimburse the government for the costs of

2

any imprisonment or term of supervised release, if any is ordered.

6.     Defendant understands that under the Sentencing Guidelines and applicable federal law, in the case of an identifiable victim, the Court may order restitution if authorized by law and requested by a victim.

7.     Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately, and defendant will not attempt to avoid or delay payment. Defendant further agrees not to contest the forfeiture of the items described in the indictment

8.     Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) prior to sentencing if he/she is requested to do so.     In the event that the Court imposes a fine or orders the payment of restitution as part of the Defendant's sentence, the Defendant shall make complete financial disclosure by truthfully executing a sworn financial statement immediately following his/her sentencing.

### Agreement Binding - Southern District of Texas Only

9.     The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Indictment.     This Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant.   It does not bind any other United States Attorney.   The United States will bring this Plea Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices if requested.

### Waiver of Appeal

10.     Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant agrees to waive the right to appeal the sentence

3

imposed or the manner in which it was determined on any grounds set forth in Title 18 U.S.C. § 3742. Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding. In the event the Defendant files a notice of appeal following the imposition of the sentence, the United States will assert its rights under this agreement and seek specific performance of this waiver.

11. In exchange for the Agreement with the United States, Defendant waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to any prosecution that is not time barred on the date that this Agreement is signed, in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or (c) Defendant's plea is later withdrawn.

12. In agreeing to these waivers, defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction, not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *United States v. Booker*, 125 S.Ct. 738 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

4

13. The Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

14. The United States agrees to each of the following:

(a) At the time of sentencing, the United States agrees not to oppose defendant's anticipated request to the Court and the United States Probation Office that he/she receive a two (2) level downward adjustment pursuant to U.S.S.G. Section 3E1.1(a) should the defendant accept responsibility as contemplated by the Sentencing Guidelines.

(b) If the defendant qualifies for an adjustment under U.S.S.G. Section 3E1.1(a), the United States agrees not to oppose the defendant's request for an additional one level departure based on the timeliness of the plea or the expeditious manner in which the defendant provided complete information regarding his role in the offense if the defendant's offense level is 16 or greater.

(c) The United States agrees at the time of sentencing to request a sentence of 10 years on Count One. The term of imprisonment is to be followed by a term of Life on supervised release. The United States agrees that the amount of any fine imposed rests with the Court. The United States agrees that this recommendation will bind the Court, if this agreement is accepted, pursuant to Rule 11(c)(1)(C).

## United States' Non-Waiver of Appeal

15. The United States reserves the right to carry out its responsibilities under the sentencing guidelines. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office; and,

(d) to file a pleading relating to these issues, in accordance with U.S.S.G. Section

6A1.2 and Title 18, U.S.C.§ 3553(a).

## Sentence Determination

16.     Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, U.S.C. § 3553(a).   Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court until the Court accepts the plea agreement.   If the Court accepts the plea agreement, Defendant will remain bound to fulfill all of the obligations under this plea agreement.   If the Court rejects the plea agreement, Defendant will be given an opportunity to withdraw his plea of guilty.

## Rights at Trial

17.     Defendant represents to the Court that he is satisfied that his/her attorney has rendered effective assistance.   Defendant understands that by entering into this agreement, he/she surrenders certain rights as provided in this plea agreement.   Defendant understands that the rights of a defendant include the following:

(a)     If defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel.   The trial may be conducted by a judge sitting without a jury if the defendant, the United States, and the court all agree.

(b)     At a trial, the United States would be required to present witnesses and other evidence against the defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them.   In

6

turn, the defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf.     If the witnesses for defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court.

(c)     At a trial, defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, he/she could testify on his/her own behalf.

## Factual Basis for Guilty Plea

18.     Defendant is pleading guilty because he is guilty of the charges contained in Count One of the Indictment.  If this case were to proceed to trial, the United States could prove each element of the offenses charged in each count beyond a reasonable doubt.   The parties agree that this factual basis does not include all relevant conduct that may be considered by the Court for sentencing purposes.   The following facts, among others would be offered to establish the Defendant's guilt:

On July 19, 2012, Jason Gandy (GANDY) arrived in the United Kingdom (UK) at Heathrow International Airport aboard United Airlines Flight 4 which he boarded in Houston, Texas.   GANDY was traveling with a 15 year-old male KV (D.O.B. xx/xx/1997) KV is not related to GANDY.

Upon landing in the UK, GANDY was inspected by UK Immigration (UKI) Officers of the UK Border Agency and selected for secondary inspection. UKI authorities became suspicious when GANDY was asked why he wanted to enter the UK and why he was traveling with a minor child.   UKI authorities were also concerned as GANDY admitted that he was not related to KV and contacted KV's mother.   KV's mother informed the UKI officers that she had given KV permission to travel with GANDY, but also gave a conflicting reason as to the purpose of the trip.   Based upon interviews with GANDY, KV and KV's mother, UKI officials denied GANDY and KV entry and made arrangements for them to immediately return to the United States.

On or about, July 20, 2012, at approximately 1:35 pm (CDT), GANDY arrived at George

7

Bush Intercontinental Airport in Houston, Texas, on United Airlines Flight 35.   Bush Intercontinental Airport is in Houston, Harris County, Texas and within the Southern District of Texas.   Upon disembarking the plane, GANDY was escorted by U.S. Customs and Border Protection (CBP) officers to the secondary inspection area.   During secondary inspection, GANDY made a binding declaration to the CBP officers that the luggage and other items he was carrying were his.

HSI SA Juanae Johnson along with Houston Police Department Detective Joseph Roscoe, met with GANDY upon his arrival and questioned him as to the purpose of his trip to the United Kingdom and his travel with KV.   GANDY was advised of his Miranda rights and informed that he was not under arrest.   Gandy waived his rights and spoke willingly and voluntarily with law enforcement about his travels to the UK with KV.   The interview took place in the baggage search area in the CBP secondary inspection area.

GANDY stated that he and KV had met through a mutual "friend" on the social networking website "Facebook".   GANDY, who is 35 years-old, knew KV was only 15 years of age, however he did not disclose his age to the child.

Upon meeting KV, GANDY took him to the mall to celebrate his 15th birthday. GANDY also admitted taking KV to a concert, and informed agents that he and KV began to develop a friendship. GANDY admitted to lavishing KV with gifts in person and via the mail. GANDY stated that he liked buying KV nice things, because KV's family was unable to.

GANDY informed the agents that he is a licensed massage therapist and he buys and sells real estate for a living. GANDY told agents that he owned and operated a massage business known as, JasonRMT.com. The website indicates that GANDY performs massages for a fee which must be paid in cash.   Additionally, the massages can be "incalls" or "outcalls" which mean that either the customer comes to GANDY or he goes to the customer.   The terms "incalls" and "outcalls" are terms frequently associated with prostitution and advertisements for prostitution activities. GANDY informed the agents that KV spends the night at least once a week at his home.

KV was also interviewed and based on information provided by GANDY and the KV, agents were able to establish KV was with GANDY almost every weekend.   GANDY also told agents that when they are together, he gives massages to KV. KV corroborated GANDY's

8

statement and informed agents that GANDY, on at least on one occasion, had masturbated him, KV, during the massage session. GANDY told the agents that after every massage, GANDY masturbates in KV's presence, and on several occasions GANDY and KV have masturbated in the presence of one another.

GANDY also told agents that on at least one occasion he has taken a nude picture of KV's backside without his permission while they were at GANDY'S home. GANDY also stated that he downloaded the picture on his laptop. KV confirmed that GANDY has taken other photos of his nude backside at the home but he does not know where those photos are. When asked to elaborate, KV indicated that he was joking with GANDY one day when they were together about the photos. KV took off his pants and then allowed GANDY to take nude photos of him.

Personnel trained in child psychology from the Harris County Children's Assessment Center along with officers also interviewed KV. KV confirmed that GANDY runs a massage business which he operates in his home and in the Recreational Vehicle (RV) located on the property. KV was recruited by GANDY in May of 2012 to assist with GANDY's massage business and KV has done so up until the present. At GANDY's direction, KV massages men while they are completely nude. The men are also allowed to fondle KV's genitals during the massage sessions. KV was uncomfortable conducting massages in the nude and allowing the men to touch him in the beginning. GANDY told KV that in order for them to continue to hang out and make money together he had to allow the clients to touch him. During these massages KV would also masturbate the men. KV estimated that he has been paid between $400.00 and $500.00 dollars since working for GANDY.

KV indicated that he has been instructed to massage certain clients alone on at least one occasion. KV stated that he would "stay" in the RV while at GANDY's residence, and men would enter the RV and tell KV "I am here for you." KV would massage these men alone while in the nude and masturbate them. KV knew that GANDY was paid between $80.00 and $120.00 for the massage sessions. If GANDY alone provided what was referred to as a "single" massage, the fee was $80.00. If both KV and GANDY provided what was referred to as a "four hand" massage together, the fee was $120.00. Upon completion of each massage, the clients paid GANDY, and then GANDY would pay KV between $20.00 and $40.00. KV went on to say

9

that GANDY has a large clientele and GANDY is busy most of the time.

GANDY stated that he and KV recently began discussing taking a trip to England. GANDY purchased both plane tickets (approximately $2150.00) and gave KV money to purchase an expedited passport (approximately $200.00). GANDY received a signed and notarized affidavit form from KV's mother that authorized KV to travel with GANDY and remain in the UK in GANDYS' custody from July 18, 2012 until August, 22, 2012. GANDY had not reserved any accommodations in the UK and was intending on finding a place to stay once they landed in the UK.

During the secondary search of GANDY's personal belongings, CBP officers discovered approximately 90 condoms. When agents questioned GANDY about the condoms he told agents that he utilized the condoms for massaging his clients prostates, and he had some "hope" of possibly using a couple of condoms with KV once in London.

KV also told interviewers that GANDY intended to start a massage business while in London that was similar to the one he ran in the Houston area. KV stated that GANDY told him that he was unaware of the laws in the UK governing the types of massages he would be legally permitted to provide. KV also stated that on July 18th, 2012, while they were waiting to board their flight to the UK, GANDY informed KV that he had two clients waiting for them in the UK. They were set to meet him between July 22nd and July 24th, 2012.

KV stated that GANDY promised KV that once in London he would possibly be able to attend the Olympics, and that he would be taken to his favorite clothing store and be able to see his favorite bands. KV was under the impression that he would be required to perform some massages while he was in the UK but he was most excited about the shopping, the Olympics and seeing his favorite bands.

### Breach of Plea Agreement

19.     If defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and the defendant's plea and sentence will stand. If at any time defendant retains, conceals or disposes of assets in violation of this plea agreement, or if defendant knowingly

withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

20. Whether the defendant has breached any provision of this plea agreement shall be determined solely by the United States through the United States Attorney's Office, whose judgment in that regard is final.

### Forfeiture

21. Defendant agrees to waive any and all interest in any asset which is the subject of any related administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal, with the exception of the real property located at Truxillo Street and Dowling Street, Houston, Texas. Defendant admits and agrees that the following assets, which are the subject of the related civil forfeiture action styled United States of America v. 2005 C5500 Chevrolet Recreational Vehicle, et al., and pending before the Houston Division of the United States District Court for the Southern District of Texas under Case No. 4:12-cv-3668, were used or intended to be used to commit or to facilitate the commission of transportation of a minor with intent to engage in criminal sexual activity which form the basis of this criminal action:

A. The real property located at Truxillo Street and Dowling Street, Houston, Texas, and legally described as:

> Lot Eleven 11, in Block Five (5) of Washington Terrace, a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Volume 557, Page 68 of the Deed Records of Harris County, Texas;

B. A 2005 C5500 Chevrolet Recreational Vehicle, VIN # 1GBE5U1E15F505062; and

11

C.    A 2012 Toyota Scion IQ, VIN # JTNJJXB06CJ010887.

22.    Defendant agrees that he will sign an agreed judgment in the related civil forfeiture action (Case No. 4:12-cv-3668) that will forfeit all right, title, and interest in the assets which are the subject of that action, except for the real property located at Truxillo Street and Dowling Street, Houston, Texas, to the United States.   The terms of the agreed judgment will be as follows:

A.    Defendant agrees to pay the United States a sum of money, equal to the fair market value as determined by the United States, of the real property located at Truxillo Street and Dowling Street, Houston, Texas, in lieu of forfeiture of that property. Defendant agrees to pay the United States in the form of a cashier's check made payable to the United States, or its designee, at or before the time of re-arraignment.

B.    Defendant understands and agrees that he is and will remain liable for any unpaid ad valorem taxes on the real property referenced above.

C.    Defendant agrees to allow/provide the United States, or its designee, access to the real property for purposes of appraising the property.

D.    Defendant agrees to the forfeiture of the 2005 C5500 Chevrolet Recreational Vehicle, VIN # 1GBE5U1E15F505062.

E.    Defendant agrees to the forfeiture of the 2012 Toyota Scion IQ, VIN # JTNJJXB06CJ010887.

23.    Defendant waives the right to challenge the agreed judgment in the civil forfeiture action referenced above in any manner (including by direct appeal, habeas corpus, or any other means) and on any grounds, including that the forfeiture constitutes an excessive fine or punishment.   The defendant agrees to take all steps requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture

12

proceeding.

## Complete Agreement

24.     This written plea agreement, consisting of 15 pages, including the attached addendum of defendant and his/her attorney, constitutes the complete plea agreement between the United States, defendant and his/her counsel.  No promises or representations have been made by the United States except as set forth in writing in this plea agreement.  Defendant acknowledges that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

25.     Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on _____ , 2014.

_____
Jason Gandy
Defendant

Subscribed and sworn to before me on _____ , 2014.

UNITED STATES DISTRICT CLERK

By:     _____
Deputy United States District Clerk

APPROVED:

KENNETH MAGIDSON
United States Attorney

By:_____
Sherri L. Zack
Assistant United States Attorney

_____
Dan Cogdell
Attorney for Defendant

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JASON GANDY,                          )
                                      )
v.                                    )         Case No. 4:12-cr-00503
                                      )
UNITED STATES OF AMERICA.             )

### MEMORANDUM OF LAW AND FACTS
### IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR
### CORRECT SENTENCE UNDER 28 U.S.C.§ 2255

Jason Gandy ("Gandy"), through the undersigned counsel,

respectfully submits this memorandum of law in support of his

amended 28 U.S.C. § 2255 motion.

### INTRODUCTION

Cogdell and Charles Flood were ineffective for failing to explain to

Gandy that he was eligible to apply for early termination of supervised

release after completing one year of supervision. Cogdell and Flood also

never informed Gandy that his conditions of supervised release could be

modified. Had Gandy known that he could apply for early termination

or modification of his supervised release, he would have accepted the

Government's Fed.R.Crim.P. 11(c)(1)(C) plea offer of ten years and

plead guilty.

GOVERNMENT
EXHIBIT
30
4:12-CR-503

## STATEMENT OF FACTS

On August 15, 2012, Gandy was charged in a one count criminal indictment. (ECF 11). Count One charged that Gandy knowingly transported a minor in interstate commerce to engage in prostitution in violation of 18 U.S.C. § 2423(a). (ECF 11 at 1). On September 28, 2012, Gandy retained Attorney Cogdell. (ECF 25). On April 5, 2013, Gandy retained Attorney Flood. (ECF 39).

By December 5, 2013, Attorneys Cogdell and Flood were actively discussing a potential resolution of the case with the government. (ECF 47 at 1). Shortly thereafter, Cogdell and Flood presented Gandy with a proposed Fed. R. Crim. P. 11(c)(1)(C) written plea agreement. *Exhibit* 1 (Proposed Plea Agreement, page 1).

The plea agreement stated that, if Gandy should violate the conditions of any period of supervised release, he "may be imprisoned for the entire term of supervised release." *Exhibit* 1 (Plea Agreement ¶ 2). Moreover, Gandy "understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole." *Id*.

Attorneys Cogdell and Flood informed Gandy that, if the Court accepted the plea agreement, he would receive "10 years on Count One."

*Exhibit* 1 (Plea Agreement ¶ 14(c)). The ten-year sentence would be "followed by a term of Life on supervised release." *Id.* Cogdell and Flood informed Gandy that there was no parole and he would serve his entire term of supervised release. *Exhibit* 2 (Declaration of Jason Gandy).[1]

Gandy informed Attorneys Cogdell and Flood that lifetime supervised release was a deal breaker. *Exhibit* 2. Gandy informed Cogdell and Flood that he eventually wanted to travel to other countries and potentially move overseas permanently. *Id.* Cogdell and Flood never informed Gandy that a term of supervised release could be reduced and/or its conditions modified. *Id.*

Attorneys Cogdell and Flood communicated with Gandy's stepmother and father, Julie and Joe Gandy. *Exhibit* 2. Mrs. Gandy states in her declaration that:

3.  Prior to trial, Attorneys Cogdell and Flood communicated with Gandy's father and I about a plea deal offered by the government.

4.  When Jason was offered the plea deal, his dad and I strongly encouraged him to take it.

---

[1]  An executed copy of Gandy's declaration will be filed with the Court forthwith.

5. We knew that Jason was seriously considering it but had several issues with the plea offer as it was written.

6. I know that Jason discussed these issues with Flood and Cogdell.

7. I also asked Flood and Cogdell about the supervised release several times.

8. The following are Jason's concerns about the proposed plea that I remember discussing with Flood and Cogdell:

   a. Jason could be on supervised release up to life. We asked if they could get that time reduced and Cogdell told us that the judge would make that determination on the day of sentencing.

   b. Jason wanted to be able to leave the country to travel and eventually live in another country, i.e. Indonesia, which he fell in love with on his travels. From the limited information provided by Flood and Cogdell about the plea deal, Jason, his father and I understood that he would not be able to leave the US while on supervised release.

      c. Jason did not want to be labeled a "Child Molester." He said he'd have to live in fear for his life and wouldn't be safe anywhere in the U.S. That was another reason that he wanted to leave the U.S. and live overseas, where he would not have to live under that label.

*Exhibit* 3 (Declaration of Julie Gandy).

Mr. Gandy states in his declaration that:

3.    Prior to trial, Attorneys Cogdell and Flood communicated with my wife, Julie, and I about a plea deal.

4.    My memories of the plea deal are as follows:

      a. Jason was seriously thinking of taking the plea deal and took a long time to decide.

      b. He had some major problems with it that ended up causing him to turn it down.

      c. Chief among those concerns was Jason knew he would be labeled a child molester which would make him a target for crazies here in the U.S., so he wanted to leave the U.S and live in another country.

> d. Jason loved Bali so he said that he wanted to
> go there and live in peace.
>
> e. Attorneys Cogdell and Flood advised my wife and I
> that Jason could not leave the country while on
> supervised release.

*Exhibit* 4 (Declaration of Joe Gandy).

Gandy ultimately rejected the plea offer and, on September 17, 2014, he was charged in a three-count superseding indictment. (ECF 60). Again, Count One charged that Gandy knowingly transported a minor in interstate commerce to engage in prostitution in violation of § 2423(a). (ECF 60 at 3). Count Two charged that Gandy enticed a minor to engage in sexually explicit conduct in violation of 18 U.S.C. § 2251(a) & (e). (ECF 60 at 3-4). Count Three charged that Gandy transported pornography in interstate commerce in violation of 18 U.S.C. § 2252A(a)(1) and (b). (ECF 60 at 4). The plea negotiations broke down.

On March 30, 2015, Gandy retained Attorney Nicole BeBorde. (ECF 67). On April 1, 2015, the district court granted Attorney Flood's motion to withdraw. (ECF 69). On April 3, 2017, Gandy retained

Attorney Dustan Neyland. (ECF 95). On April 28, 2017, Attorneys
Cogdell and DeBorde withdrew. (ECF 98).

On February 15, 2018, Gandy was charged in a second
superseding seven count indictment. (ECF 115). Counts One through
Three remained the same. (ECF 115 at 2-4). Counts Four, Five, Six, and
Seven charged that Gandy enticed Minors # 1, # 2, # 3, and # 4 to
engage in commercial sex acts in violation of 18 U.S.C. § 1591(a), (b),
and 2. (ECF 115 at 4-6).

On June 7, 2018, Gandy retained Attorney Sean Buckley. (ECF
130). From July 18, 19, and 23, 2018, Gandy proceeded to trial. (ECF
154, 156, & 160). On July 23, 2018, Gandy was found guilty on all
counts. (ECF 167). On December 18, 2018, Gandy was sentenced to a
total term of 360 months imprisonment and lifetime supervised release.
(ECF 200). On December 19, 2018, Gandy filed a timely notice of
appeal. (ECF 202).

On November 4, 2019, the Fifth Circuit affirmed Gandy's
conviction and sentence. (ECF 229). On February 2, 2021, Grandy filed
a timely 28 U.S.C. § 2255 motion that Attorneys Cogdell and Flood were
ineffective. (ECF 238). Had Gandy known that the district court could

terminate a term of supervised release after the expiration of one year

or modify the conditions of supervised release so that he could travel

outside the United States, he would have accepted the Fed. R. Crim. P.

11(c)(1)(C) written plea agreement and pleaded guilty. *Exhibit* 2.

## GROUND ONE

**I.     Attorneys Dan Cogdell and Attorney Samuel Flood were
ineffective for failing to explain to Gandy that he was
eligible to apply for early termination of supervised
release after completing one year of supervision.**

The negotiation of a plea bargain is a critical phase of litigation for

the purposes of the Sixth Amendment right to effective assistance of

counsel. *Padilla v. Kentucky*, 559 U.S. 356 (2010). When considering

whether to plead guilty or proceed to trial, a defendant should be aware

of the relevant circumstances and the likely consequences of his

decision so that he can make an intelligent choice. *United States v.
Reed*, 719 F.3d 369, 373 (5th Cir. 2013).

To establish an ineffective assistance claim, a defendant must

show that counsel's performance fell below an objective standard of

reasonableness and that there is a reasonable probability that but for

counsel's poor performance the result of the proceeding would have been

different. *United States v. Rivas-Lopez*, 678 F.3d 353, 356-57 (5th Cir.

2012). Concerning prejudice, when a defendant alleges that counsel's deficient performance caused him to reject a plea offer, he

> must show that but for the ineffective advice of counsel
> here is a reasonable probability that the plea offer would
> have been presented to the court (i.e., that the defendant
> would have accepted the plea and the prosecution would
> not had withdrawn it in light of intervening
> circumstances), that the court would have accepted its
> terms, and the conviction or sentence, or both, under the
> offer's terms would have been less severe than under the
> judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

## A.    Deficient Performance

Gandy's allegations are not speculative or conclusory. In his Declaration, he makes a specific factual claim based on personal knowledge -- that Attorneys Cogdell and Flood informed him that if accepted the government's plea deal, he would serve his entire term of supervised release. Cogdell and Flood never informed him that the district court could terminate his term of supervised release after the expiration of one year or modify the conditions of supervised release so that he could travel outside the United States. Gandy's parents have filed declarations supporting his version of events.

The information that Attorney Cogdell and Flood provided to Gandy was in fact incorrect. Cogdell and Flood informed Gandy that there was no parole and he would serve his entire term of supervised release. Moreover, Gandy would not be allowed to travel outside the United States. A district court may

> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation., if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

> (2) extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation.

18 U.S.C. § 3583(3)(1)-(2).

## B. **Prejudice**

To establish prejudice, a movant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

Prejudice in this case focuses on Gandy's decision to accept the plea agreement or go to trial. *Lee v. United States*, 137 S.Ct. 1958, 196-67 (2017). Gandy has submitted a declaration that: had he known that the district court could terminate a term of supervised release after the expiration of one year or modify the conditions of supervised release so that he could travel outside the United States, he would have accepted the Fed. R. Crim. P. 11(c)(1)(C) written plea agreement and plead guilty. *Exhibit* 2.

## EVIDENTIARY HEARING

Gandy requests an evidentiary hearing. A district court may forgo an evidentiary hearing in deciding a § 2255 motion "only if the motion, "the files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholmew*, 974 F.2d 39, 41 (5th Cir. 1992). When facts are at issue in a § 2255 proceeding, a hearing is required if (1) the record, as supplemented by the trial court's personal knowledge or recollection, does not conclusively negate the facts alleged in support of the claim for § 2255 relief, and (2) the movant would be entitled to postconviction relief as a legal matter if his factual

allegations are true. *Friedman v. United States*, 588 F.2d 1010, 1014-15 (5th Cir. 1979).

## CONCLUSION

Based on the foregoing, the Court should grant Gandy § 2255 relief.

Respectfully submitted,

/s/Benson Weintraub
Benson Weintraub
Brandon Sample PLC
P.O. Box 250
Rutland, Vermont 05702
Phone: (802) 444-4357
Fax: (802) 779-9590
Email: federalhabeas@gmail.com
https://brandonsample.com

*Counsel for Jason Gandy*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served

this 2nd of April 2021.

/s/Benson Weintraub

# EXHIBIT 1



GOVERNMENT
EXHIBIT
30-1
4:12-CR-503

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 12-503 |
| | § | |
| JASON GANDY | § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney,

for the Southern District of Texas and Sherri L. Zack, Assistant United States Attorney, and the

defendant, Jason Gandy, and the defendant's counsel, Dan Cogdell, pursuant to Rule 11(c)(1)(C)

of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the

terms and conditions of which are as follows:

### The Defendant's Agreement

1.      Defendant agrees to plead guilty to Count(s) One of the Indictment.   Count One charges

the defendant with Transportation of Minors, in violation of Title 18, United States Code, §

2423(a). Defendant, by entering this plea, agrees that he/she is waiving any right to have the facts

that the law makes essential to the punishment either charged in the Indictment or proven to a jury

or judge beyond a reasonable doubt.

### Punishment Range

2.      The **statutory** maximum penalty for each violation of Title 18, United States Code,

§ 2423(a), is a term of imprisonment of not less than 10 years up to Life and a fine of not more than

$250,000.00.   Additionally, Defendant shall receive a term of supervised release after

imprisonment of at least 5 years up to Life.   Title 18, United States Code, §§ 3559(a) and 3583(b).

1

Defendant acknowledges and understands that if he/she should violate the conditions of any period of supervised release which may be imposed as part of his/her sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation.   Title 18, United States Code, §§ 3559(a) and 3583(e)(3).  Defendant understands that he/she cannot have the imposition or execution of the sentence suspended, nor is he/she eligible for parole.

3.    The defendant understands that under the Sex Offender Registration and Notification Act, the defendant must register and keep such information current in the jurisdictions where the defendant resides, is employed, and is a student.  The defendant further understands that the requirement to keep the registration current includes informing such jurisdictions not later than three (3) business days after any change of the defendant's name, residence, employment or student status.  The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, specifically, Title 18, United States Code, Section 2250, as well as applicable state statutes.

**Mandatory Special Assessment**

4.    Pursuant to Title 18, U.S.C. § 3013(a)(2)(A), immediately after sentencing, defendant will pay to the Clerk of the United States District Court  a special assessment in the amount of one hundred dollars ($100.00) per count of conviction.  The payment will be by cashier's check or money order  payable to the Clerk of the United States District Court,  c/o District Clerk's Office, P.O. Box 61010,  Houston, Texas  77208, Attention: Finance.

**Fine, Reimbursement and Restitution**

5.    Defendant understands that under the Sentencing Guidelines, the Court is permitted to order the defendant to pay a fine that is sufficient to reimburse the government for the costs of

2

any imprisonment or term of supervised release, if any is ordered.

6. Defendant understands that under the Sentencing Guidelines and applicable federal law, in the case of an identifiable victim, the Court may order restitution if authorized by law and requested by a victim.

7. Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately, and defendant will not attempt to avoid or delay payment. Defendant further agrees not to contest the forfeiture of the items described in the indictment

8. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) prior to sentencing if he/she is requested to do so. In the event that the Court imposes a fine or orders the payment of restitution as part of the Defendant's sentence, the Defendant shall make complete financial disclosure by truthfully executing a sworn financial statement immediately following his/her sentencing.

## Agreement Binding - Southern District of Texas Only

9. The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Indictment. This Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney. The United States will bring this Plea Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices if requested.

## Waiver of Appeal

10. Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant agrees to waive the right to appeal the sentence

3

imposed or the manner in which it was determined on any grounds set forth in Title 18 U.S.C. § 3742. Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding. In the event the Defendant files a notice of appeal following the imposition of the sentence, the United States will assert its rights under this agreement and seek specific performance of this waiver.

11.     In exchange for the Agreement with the United States, Defendant waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to any prosecution that is not time barred on the date that this Agreement is signed, in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or (c) Defendant's plea is later withdrawn.

12.     In agreeing to these waivers, defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction, not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *United States v. Booker*, 125 S.Ct. 738 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

4

13.     The Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

14.     The United States agrees to each of the following:

(a)     At the time of sentencing, the United States agrees not to oppose defendant's anticipated request to the Court and the United States Probation Office that he/she receive a two (2) level downward adjustment pursuant to U.S.S.G. Section 3E1.1(a) should the defendant accept responsibility as contemplated by the Sentencing Guidelines.

(b)     If the defendant qualifies for an adjustment under U.S.S.G. Section 3E1.1(a), the United States agrees not to oppose the defendant's request for an additional one level departure based on the timeliness of the plea or the expeditious manner in which the defendant provided complete information regarding his role in the offense if the defendant's offense level is 16 or greater.

(c)     The United States agrees at the time of sentencing to request a sentence of 10 years on Count One. The term of imprisonment is to be followed by a term of Life on supervised release. The United States agrees that the amount of any fine imposed rests with the Court. The United States agrees that this recommendation will bind the Court, if this agreement is accepted, pursuant to Rule 11(c)(1)(C).

## United States' Non-Waiver of Appeal

15.     The United States reserves the right to carry out its responsibilities under the sentencing guidelines.   Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office; and,

(d)     to file a pleading relating to these issues, in accordance with U.S.S.G. Section

5

6A1.2 and Title 18, U.S.C.§ 3553(a).

## Sentence Determination

16.     Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, U.S.C. § 3553(a).  Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court until the Court accepts the plea agreement.   If the Court accepts the plea agreement, Defendant will remain bound to fulfill all of the obligations under this plea agreement.   If the Court rejects the plea agreement, Defendant will be given an opportunity to withdraw his plea of guilty.

## Rights at Trial

17.     Defendant represents to the Court that he is satisfied that his/her attorney has rendered effective assistance.   Defendant understands that by entering into this agreement, he/she surrenders certain rights as provided in this plea agreement.   Defendant understands that the rights of a defendant include the following:

(a)     If defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel.   The trial may be conducted by a judge sitting without a jury if the defendant, the United States, and the court all agree.

(b)     At a trial, the United States would be required to present witnesses and other evidence against the defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them.   In

turn, the defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court.

(c)     At a trial, defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, he/she could testify on his/her own behalf.

## Factual Basis for Guilty Plea

18.     Defendant is pleading guilty because he is guilty of the charges contained in Count One of the Indictment. If this case were to proceed to trial, the United States could prove each element of the offenses charged in each count beyond a reasonable doubt. The parties agree that this factual basis does not include all relevant conduct that may be considered by the Court for sentencing purposes. The following facts, among others would be offered to establish the Defendant's guilt:

On July 19, 2012, Jason Gandy (GANDY) arrived in the United Kingdom (UK) at Heathrow International Airport aboard United Airlines Flight 4 which he boarded in Houston, Texas. GANDY was traveling with a 15 year-old male KV (D.O.B. xx/xx/1997) KV is not related to GANDY.

Upon landing in the UK, GANDY was inspected by UK Immigration (UKI) Officers of the UK Border Agency and selected for secondary inspection. UKI authorities became suspicious when GANDY was asked why he wanted to enter the UK and why he was traveling with a minor child. UKI authorities were also concerned as GANDY admitted that he was not related to KV and contacted KV's mother. KV's mother informed the UKI officers that she had given KV permission to travel with GANDY, but also gave a conflicting reason as to the purpose of the trip. Based upon interviews with GANDY, KV and KV's mother, UKI officials denied GANDY and KV entry and made arrangements for them to immediately return to the United States.

On or about, July 20, 2012, at approximately 1:35 pm (CDT), GANDY arrived at George

Bush Intercontinental Airport in Houston, Texas, on United Airlines Flight 35.   Bush
Intercontinental Airport is in Houston, Harris County, Texas and within the Southern District of
Texas.   Upon disembarking the plane, GANDY was escorted by U.S. Customs and Border
Protection (CBP) officers to the secondary inspection area.   During secondary inspection,
GANDY made a binding declaration to the CBP officers that the luggage and other items he was
carrying were his.

HSI SA Juanae Johnson along with Houston Police Department Detective Joseph Roscoe,
met with GANDY upon his arrival and questioned him as to the purpose of his trip to the United
Kingdom and his travel with KV.   GANDY was advised of his Miranda rights and informed
that he was not under arrest.   Gandy waived his rights and spoke willingly and voluntarily with
law enforcement about his travels to the UK with KV.   The interview took place in the baggage
search area in the CBP secondary inspection area.

GANDY stated that he and KV had met through a mutual "friend" on the social
networking website "Facebook".   GANDY, who is 35 years-old, knew KV was only 15 years of
age, however he did not disclose his age to the child.

Upon meeting KV, GANDY took him to the mall to celebrate his 15th birthday. GANDY
also admitted taking KV to a concert, and informed agents that he and KV began to develop a
friendship. GANDY admitted to lavishing KV with gifts in person and via the mail. GANDY
stated that he liked buying KV nice things, because KV's family was unable to.

GANDY informed the agents that he is a licensed massage therapist and he buys and sells
real estate for a living. GANDY told agents that he owned and operated a massage business
known as, JasonRMT.com. The website indicates that GANDY performs massages for a fee
which must be paid in cash.   Additionally, the massages can be "incalls" or "outcalls" which
mean that either the customer comes to GANDY or he goes to the customer.   The terms
"incalls" and "outcalls" are terms frequently associated with prostitution and advertisements for
prostitution activities. GANDY informed the agents that KV spends the night at least once a
week at his home.

KV was also interviewed and based on information provided by GANDY and the KV,
agents were able to establish KV was with GANDY almost every weekend.   GANDY also told
agents that when they are together, he gives massages to KV. KV corroborated GANDY's

8

statement and informed agents that GANDY, on at least on one occasion, had masturbated him, KV, during the massage session. GANDY told the agents that after every massage, GANDY masturbates in KV's presence, and on several occasions GANDY and KV have masturbated in the presence of one another. .

GANDY also told agents that on at least one occasion he has taken a nude picture of KV's backside without his permission while they were at GANDY'S home.  GANDY also stated that he downloaded the picture on his laptop.  KV confirmed that GANDY has taken other photos of his nude backside at the home but he does not know where those photos are. When asked to elaborate, KV indicated that he was joking with GANDY one day when they were together about the photos.  KV took off his pants and then allowed GANDY to take nude photos of him.

Personnel trained in child psychology from the Harris County Children's Assessment Center along with officers also interviewed KV.  KV confirmed that GANDY runs a massage business which he operates in his home and in the Recreational Vehicle (RV) located on the property.  KV was recruited by GANDY in May of 2012 to assist with GANDY's massage business and KV has done so up until the present.  At GANDY's direction, KV massages men while they are completely nude.  The men are also allowed to fondle KV's genitals during the massage sessions.  KV was uncomfortable conducting massages in the nude and allowing the men to touch him in the beginning. GANDY told KV that in order for them to continue to hang out and make money together he had to allow the clients to touch him. During these massages KV would also masturbate the men.  KV estimated that he has been paid between $400.00 and $500.00 dollars since working for GANDY.

KV indicated that he has been instructed to massage certain clients alone on at least one occasion. KV stated that he would "stay" in the RV while at GANDY's residence, and men would enter the RV and tell KV "I am here for you."  KV would massage these men alone while in the nude and masturbate them. KV knew that GANDY was paid between $80.00 and $120.00 for the massage sessions.  If GANDY alone provided what was referred to as a "single" massage, the fee was $80.00.  If both KV and GANDY provided what was referred to as a "four hand" massage together, the fee was $120.00.  Upon completion of each massage, the clients paid GANDY, and then GANDY would pay KV between $20.00 and $40.00. KV went on to say

9

that GANDY has a large clientele and GANDY is busy most of the time.

GANDY stated that he and KV recently began discussing taking a trip to England. GANDY purchased both plane tickets (approximately $2150.00) and gave KV money to purchase an expedited passport (approximately $200.00). GANDY received a signed and notarized affidavit form from KV's mother that authorized KV to travel with GANDY and remain in the UK in GANDYS' custody from July 18, 2012 until August, 22, 2012. GANDY had not reserved any accommodations in the UK and was intending on finding a place to stay once they landed in the UK.

During the secondary search of GANDY's personal belongings, CBP officers discovered approximately 90 condoms. When agents questioned GANDY about the condoms he told agents that he utilized the condoms for massaging his clients prostates, and he had some "hope" of possibly using a couple of condoms with KV once in London.

KV also told interviewers that GANDY intended to start a massage business while in London that was similar to the one he ran in the Houston area. KV stated that GANDY told him that he was unaware of the laws in the UK governing the types of massages he would be legally permitted to provide. KV also stated that on July 18th, 2012, while they were waiting to board their flight to the UK, GANDY informed KV that he had two clients waiting for them in the UK. They were set to meet him between July 22nd and July 24th, 2012.

KV stated that GANDY promised KV that once in London he would possibly be able to attend the Olympics, and that he would be taken to his favorite clothing store and be able to see his favorite bands. KV was under the impression that he would be required to perform some massages while he was in the UK but he was most excited about the shopping, the Olympics and seeing his favorite bands.

### Breach of Plea Agreement

19.    If defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and the defendant's plea and sentence will stand. If at any time defendant retains, conceals or disposes of assets in violation of this plea agreement, or if defendant knowingly

10

withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

20. Whether the defendant has breached any provision of this plea agreement shall be determined solely by the United States through the United States Attorney's Office, whose judgment in that regard is final.

### Forfeiture

21. Defendant agrees to waive any and all interest in any asset which is the subject of any related administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal, with the exception of the real property located at Truxillo Street and Dowling Street, Houston, Texas. Defendant admits and agrees that the following assets, which are the subject of the related civil forfeiture action styled United States of America v. 2005 C5500 Chevrolet Recreational Vehicle, et al., and pending before the Houston Division of the United States District Court for the Southern District of Texas under Case No. 4:12-cv-3668, were used or intended to be used to commit or to facilitate the commission of transportation of a minor with intent to engage in criminal sexual activity which form the basis of this criminal action:

A. The real property located at Truxillo Street and Dowling Street, Houston, Texas, and legally described as:

> Lot Eleven 11, in Block Five (5) of Washington Terrace, a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Volume 557, Page 68 of the Deed Records of Harris County, Texas;

B. A 2005 C5500 Chevrolet Recreational Vehicle, VIN # 1GBE5U1E15F505062; and

      C.     A 2012 Toyota Scion IQ, VIN # JTNJJXB06CJ010887.

22.    Defendant agrees that he will sign an agreed judgment in the related civil forfeiture action (Case No. 4:12-cv-3668) that will forfeit all right, title, and interest in the assets which are the subject of that action, except for the real property located at Truxillo Street and Dowling Street, Houston, Texas, to the United States.   The terms of the agreed judgment will be as follows:

      A.     Defendant agrees to pay the United States a sum of money, equal to the fair market value as determined by the United States, of the real property located at Truxillo Street and Dowling Street, Houston, Texas, in lieu of forfeiture of that property. Defendant agrees to pay the United States in the form of a cashier's check made payable to the United States, or its designee, at or before the time of re-arraignment.

      B.     Defendant understands and agrees that he is and will remain liable for any unpaid ad valorem taxes on the real property referenced above.

      C.     Defendant agrees to allow/provide the United States, or its designee, access to the real property for purposes of appraising the property.

      D.     Defendant agrees to the forfeiture of the 2005 C5500 Chevrolet Recreational Vehicle, VIN # 1GBE5U1E15F505062.

      E.     Defendant agrees to the forfeiture of the 2012 Toyota Scion IQ, VIN # JTNJJXB06CJ010887.

23.    Defendant waives the right to challenge the agreed judgment in the civil forfeiture action referenced above in any manner (including by direct appeal, habeas corpus, or any other means) and on any grounds, including that the forfeiture constitutes an excessive fine or punishment.   The defendant agrees to take all steps requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture

12

proceeding.

## Complete Agreement

24.     This written plea agreement, consisting of 15 pages, including the attached addendum of defendant and his/her attorney, constitutes the complete plea agreement between the United States, defendant and his/her counsel.   No promises or representations have been made by the United States except as set forth in writing in this plea agreement.   Defendant acknowledges that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

25.     Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on _____ , 2014.


_____
Jason Gandy
Defendant

Subscribed and sworn to before me on _____ , 2014.


UNITED STATES DISTRICT CLERK

By:     _____
Deputy United States District Clerk

APPROVED:

KENNETH MAGIDSON
United States Attorney

By:_____          _____
Sherri L. Zack                      Dan Cogdell
Assistant United States Attorney    Attorney for Defendant

13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | **CRIMINAL NO. 12-503** |
| | § | |
| **JASON GANDY** | § | |
| **Defendant.** | § | |

## PLEA AGREEMENT - ADDENDUM

I have fully explained to defendant his/her rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____          _____
Dan Cogdell                                          Date
Attorney for Defendant

14

Case 4:12-cr-00503 Document 221-1 Filed on 04/02/21 in TXSD Page 16 of 18

I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me.    My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case.    I have read and carefully reviewed every part of this plea agreement with my attorney.    I understand this agreement and I voluntarily agree to its terms.


_____        _____

Jason Gandy                                                          Date
Defendant

15

# EXHIBIT 2



GOVERNMENT
EXHIBIT
30-2
4:12-CR-503
PENGAD-Bayonne, N. J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JASON GANDY,                                    )

                                                )        Case No. 4:12-cr-00503

UNITED STATES OF AMERICA.                       )

## DECLARATION OF JASON GANDY

I, Jason Gandy, declare under penalty of perjury that the
following is true and correct.

1.    On August 15, 2012, I was charged in a one count criminal
indictment with knowingly transporting a minor in interstate commerce
to engage in prostitution in violation of 18 U.S.C. § 2423(a).

2.    On September 28, 2012, I retained Attorney Cogdell. On April 5,
2013, I retained Attorney Flood.

3.    By December 5, 2013, Attorneys Cogdell and Flood were actively
discussing a potential resolution of the case with the government on my
behalf.

4.    Shortly thereafter, Cogdell and Flood provided me with a proposed
Fed. R. Crim. P. 11(c)(1)(C) written plea agreement.

5.    The plea agreement stated that, if I should violate the conditions of any period of supervised release, I "may be imprisoned for the entire term of supervised release." Moreover, I cannot have the imposition or execution of the sentence suspended, nor am I eligible for parole.

6.    Attorneys Cogdell and Flood informed me that, if the Court accepted the plea agreement, I would receive "10 years on Count One." The ten-year sentence would be "followed by a term of Life on supervised release."

7.    Cogdell and Flood informed me that there was no parole and I would serve my entire term of supervised release.

8.    I informed Attorneys Cogdell and Flood that lifetime supervised release was a deal breaker.

9.    I informed Cogdell and Flood that I eventually wanted to travel to other countries and potentially move overseas permanently. Cogdell and Flood never informed me that a term of supervised release could be reduced and/or its conditions modified.

10.    Attorneys Cogdell and Flood communicated with me stepmother and father, Julie and Joe Gandy. My parents provided their own

declarations about the conversations that we, as a family, had with Cogdell and Flood.

11. I ultimately rejected the plea offer and, on September 17, 2014, I was charged in a three-count superseding indictment. Count One remained the same. Count Two charged that I enticed a minor to engage in sexually explicit conduct. Count Three charged that I transported pornography in interstate commerce.

12. The plea negotiations broke down. On March 30, 2015, I retained Attorney Nicole BeBorde. On April 1, 2015, Attorney Flood withdrew. On April 3, 2017, I retained Attorney Dustan Neyland. On April 28, 2017, Attorneys Cogdell and DeBorde withdrew.

13. On February 15, 2018, I was charged in a second superseding seven count indictment. Counts One through Three remained the same. Counts Four, Five, Six, and Seven charged that I enticed Minors # 1, # 2, # 3, and # 4 to engage in commercial sex acts.

14. On June 7, 2018, I retained Attorney Sean Buckley. I went to trial on July 18, 19, and 23, 2018. On July 23, 2018, I was found guilty on all counts. On December 18, 2018, I was sentenced to a total term of 360 months imprisonment and lifetime supervised release.

15.     On November 4, 2019, the Fifth Circuit affirmed my conviction and sentence. On February 2, 2021, I filed a timely 28 U.S.C. § 2255 motion that Attorneys Cogdell and Flood were ineffective.

16.     Had I known that the district court could terminate a term of supervised release after the expiration of one year or could modify the conditions of supervised release so that I could travel outside the United States, I would have accepted the Fed. R. Crim. P. 11(c)(1)(C) written plea agreement and pleaded guilty.


        Signed this _____ day of April 2021.


                                        _____
                                        Jason Gandy

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JASON GANDY,                          )

                                      )       Case No. 4:12-cr-00503

UNITED STATES OF AMERICA.             )

## DECLARATION OF JASON GANDY

I, Jason Gandy, declare under penalty of perjury that the

following is true and correct.

1.     On August 15, 2012, I was charged in a one count criminal

indictment with knowingly transporting a minor in interstate commerce

to engage in prostitution in violation of 18 U.S.C. § 2423(a).

2.     On September 28, 2012, I retained Attorney Cogdell. On April 5,

2013, I retained Attorney Flood.

3.     By December 5, 2013, Attorneys Cogdell and Flood were actively

discussing a potential resolution of the case with the government on my

behalf.

4.     Shortly thereafter, Cogdell and Flood provided me with a proposed

Fed. R. Crim. P. 11(c)(1)(C) written plea agreement.

Case 4:12-cv-00509 Document 246 Filed on 01/05/21 in TXSD Page 152 of 169

5.     The plea agreement stated that, if I should violate the conditions of any period of supervised release, I "may be imprisoned for the entire term of supervised release." Moreover, I cannot have the imposition or execution of the sentence suspended, nor am I eligible for parole.

6.     Attorneys Cogdell and Flood informed me that, if the Court accepted the plea agreement, I would receive "10 years on Count One." The ten-year sentence would be "followed by a term of Life on supervised release."

7.     Cogdell and Flood informed me that there was no parole and I would serve my entire term of supervised release.

8.     I informed Attorneys Cogdell and Flood that lifetime supervised release was a deal breaker.

9.     I informed Cogdell and Flood that I eventually wanted to travel to other countries and potentially move overseas permanently. Cogdell and Flood never informed me that a term of supervised release could be reduced and/or its conditions modified.

10.     Attorneys Cogdell and Flood communicated with my stepmother and father, Julie and Joe Gandy. My parents provided their own

declarations about the conversations that we, as a family, had with Cogdell and Flood.

11. I ultimately rejected the plea offer and, on September 17, 2014, I was charged in a three-count superseding indictment. Count One remained the same. Count Two charged that I enticed a minor to engage in sexually explicit conduct. Count Three charged that I transported pornography in interstate commerce.

12. The plea negotiations broke down. On March 30, 2015, I retained Attorney Nicole BeBorde. On April 1, 2015, Attorney Flood withdrew. On April 3, 2017, I retained Attorney Dustan Neyland. On April 28, 2017, Attorneys Cogdell and DeBorde withdrew.

13. On February 15, 2018, I was charged in a second superseding seven count indictment. Counts One through Three remained the same. Counts Four, Five, Six, and Seven charged that I enticed Minors # 1, # 2, # 3, and # 4 to engage in commercial sex acts.

14. On June 7, 2018, I retained Attorney Sean Buckley. I went to trial on July 18, 19, and 23, 2018. On July 23, 2018, I was found guilty on all counts. On December 18, 2018, I was sentenced to a total term of 360 months imprisonment and lifetime supervised release.

15.    On November 4, 2019, the Fifth Circuit affirmed my conviction and sentence. On February 2, 2021, I filed a timely 28 U.S.C. § 2255 motion that Attorneys Cogdell and Flood were ineffective.

16.    Had I known that the district court could terminate a term of supervised release after the expiration of one year or could modify the conditions of supervised release so that I could travel outside the United States, I would have accepted the Fed. R. Crim. P. 11(c)(1)(C) written plea agreement and pleaded guilty.


Signed this ⎽⎽23⎽⎽ day of April 2021.

Jason Gandy

# EXHIBIT 3



GOVERNMENT
EXHIBIT
30-3
4:12-CR-503

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JASON GANDY,                          )
                                      )          Case No. 4:12-cr-00503
UNITED STATES OF AMERICA.             )

## DECLARATION OF JULIE GANDY

I, Julie Gandy, declare under the penalty of perjury that the following is true to the best of my knowledge.

1. My stepson, Jason Gandy, was charged in *United States v. Gandy*, Case 12-cr-00503 (S.D. Tex).

2. My stepson retained Attorneys Dan Cogdell and Charles Flood.

3. Prior to trial, Attorneys Codgell and Flood communicated with Gandy's father and I about a plea deal offered by the government.

4. When Jason was offered the plea deal, his dad and I strongly encouraged him to take it.

5. We knew that Jason was seriously considering it but had several issues with the plea offer as it was written.



**Declaration of Julie Gandy**                                        Page 1

6. I know that Jason discussed these issues with Flood and Cogdell.

7. I also asked Flood and Cogdell about the supervised release several times.

8. The following are Jason's concerns about the proposed plea that I remember discussing with Flood and Cogdell:

    a. Jason could be on supervised release up to life. We asked if they could get that time reduced and Cogdell told us that the judge would make that determination on the day of sentencing.

    b. Jason wanted to be able to leave the country to travel and eventually live in another country, i.e. Indonesia, which he fell in love with on his travels. From the limited information provided by Flood and Cogdell about the plea deal, Jason, his father and I understood that he would not be able to leave the US while on supervised release.

    c. Jason did not want to be labeled a "Child Molester." He said he'd have to live in fear for his life and wouldn't be safe anywhere in the U.S. That was another reason that he



Declaration of Julie Gandy                                              Page 2

wanted to leave the U.S. and live overseas, where he would

not have to live under that label.

Signed this 2nd day of April 2021.

Julie Gandy

_____

Julie Gandy

# EXHIBIT 4



GOVERNMENT
EXHIBIT
30-4
4:12-CR-503

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JASON GANDY,                                    )

                                                )        Case No. 4:12-cr-00503

UNITED STATES OF AMERICA.        )

## DECLARATION OF JOE GANDY

I, Joe Gandy, declare under the penalty of perjury that the

following is true to the best of my knowledge.

1.   My son, Jason Gandy, was charged in *United States v.*

     *Gandy*, Case 12-cr-00503 (S.D. Tex).

2.   My son retained Attorneys Dan Cogdell and Charles Flood.

3.   Prior to trial, Attorneys Cogdell and Flood communicated

     with my wife, Julie, and I about a plea deal.

4.   My memories of the plea deal are as follows:

   a. Jason was seriously thinking of taking the plea deal and

      took a long time to decide.

   b. He had some major problems with it that ended up causing

      him to turn it down.

*JG*

c. Chief among those concerns was Jason knew he would be labeled a child molester which would make him a target for crazies here in the U.S. so he wanted to leave the US and live in another country.

d. Jason loved Bali so he said that he wanted to go there and live in peace.

e. Attorneys Cogdell and Flood advised my wife and I that Jason could not leave the country while on supervised release.

Signed this 2nd day of April 2021.

*Joe Gandy*
_____
Joe Gandy