IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-12-503 |
| | § | CIVIL ACTION NO. H-21-662 |
| | § | |
| | § | |
| JASON DANIEL GANDY | § | |

**MEMORANDUM AND ORDER DENYING 28 U.S.C. § 2255 MOTION**

Jason Daniel Gandy, a federal prisoner, filed a motion to vacate his convictions and sentences under 28 U.S.C. § 2255, together with a memorandum in support, seeking relief based on a single claim of ineffective assistance of trial counsel. (Docket Entry Nos. 238, 244). The government filed a response, Gandy replied, and the government surreplied. (Docket Entry Nos. 247, 249, 251). Because the parties' filings raised a disputed question of fact, the court scheduled an evidentiary hearing. (Docket Entry No. 250). After considering the motion and responses, the evidence presented at the hearing, and the arguments of counsel, the court denies Gandy's motion. The reasons for this ruling are explained below.[1]

**I.      Background**

On August 15, 2012, the government charged Gandy with one count of knowingly transporting a minor in interstate commerce to engage in prostitution, in violation of 18 U.S.C. § 2423(a). (Docket Entry No. 11). In early 2014, Gandy's attorneys, Dan Cogdell and Charles Flood, began plea discussions with the government. In August 2014, the government presented Gandy with a plea offer under Federal Rule of Criminal Procedure 11(c)(1)(C). (Docket Entry No. 244-1). Under

---

[1]The court also announced its findings of fact and detailed ruling in open court at the end of the hearing.

this offer, Gandy would plead guilty to the single count in exchange for a recommended sentence of 10 years in prison followed by a lifetime of supervised release. (*Id.* at 6). After lengthy negotiations resulted in several amendments to the plea offer, Gandy rejected it and chose to proceed to trial.

The government then filed a second superseding indictment, adding counts for sexual exploitation of children, transportation of child pornography, and sex trafficking of minors. (Docket Entry No. 115). A jury convicted Gandy on all counts, and the court sentenced him to 360 months in prison followed by lifetime supervised release. (Docket Entry No. 204, at 3-4). Gandy's convictions and sentences were affirmed on direct appeal. *See United States v. Gandy*, 795 F. App'x 225 (5th Cir. 2019).

In his § 2255 motion, Gandy alleged that trial counsel provided ineffective assistance in relation to the government's plea offer by failing to tell him that he would be eligible to apply for modification or early termination of supervised release. (Docket Entry No. 238, at 4). Instead, Gandy alleged, trial counsel told him that a life term of supervised release meant that he would be required to remain on supervised release for life. (*Id.*). Gandy alleged that if trial counsel had explained that he would be eligible to apply for modification or early termination of supervision, he would have accepted the government's plea offer and would have received a lesser sentence. (Docket Entry Nos. 244, at 1; 244-2, at 5). The government vigorously disagreed.

Gandy's trial counsel submitted affidavits stating that they did tell Gandy that supervised release could be modified. They also stated that it was apparent to them that Gandy continued to deny guilt, despite the evidence against him. He would never have accepted a plea offer that a court would accept.

**II. The Applicable Law**

The test established in *Strickland v. Washington*, 466 U.S. 668 (1984), controls claims of ineffective assistance of counsel in the plea bargain context. *Missouri v. Frye,* 566 U.S. 134, 140 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). *Strickland* requires the defendant to show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

To establish deficient performance under *Strickland*, a defendant must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. Counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth Amendment' that *Strickland*'s first prong is satisfied") (citation omitted). "'[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

Besides showing deficient performance, the defendant must also show that he was prejudiced by that deficient performance. *See Strickland*, 466 U.S. at 687. To show prejudice when the defendant has rejected a plea offer because of counsel's allegedly deficient performance, the defendant "must demonstrate a reasonable probability [he] would have accepted the . . . plea offer had [he] been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147. The defendant must also show "that the plea would have been entered without the prosecution canceling it or the trial

3

court refusing to accept it." *Id.* In short, the defendant must "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* But "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

### III. The Evidence at the Hearing

Gandy testified on his own behalf at the hearing. He testified that Assistant United States Attorney Sherri Zack had informally discussed a plea offer with a sentence of 0 to 10 years in prison in exchange for Gandy's agreement to truthfully answer a list of questions. Gandy testified that he was willing to accept this offer, but it was never reduced to writing or presented to him in a form that he could accept.

The government presented its first written plea offer in August 2014. It included a sentence of 10 years in prison followed by lifetime supervised release. Gandy immediately questioned both the length of the sentence and the term of supervised release. He also wanted the government to delete the requirement that he admit guilt to the charged offense.

After negotiations, defense attorneys Cogdell and Flood told Gandy that the government would not change the prison term or the requirement that he admit his guilt, but they were able to negotiate an amended offer that deleted lifetime supervised release and instead left the length of the supervised release up to the court. Gandy testified that he never actually saw a written plea offer with this revised provision for supervised release, and—without basis—he did not believe that Cogdell and Flood were being truthful with him on this issue. He also testified—without credibility—that neither Cogdell or Flood ever told him that the length or conditions of supervised release could be modified by the court. He testified that the term of supervised release was "the most important" part of the plea offer to him; although after reviewing his own handwritten notes on the plea offer and

4

documents from his attorneys, he admitted that none of them made any reference to the term of supervised release as being a "deal breaker." On cross-examination, Gandy repeatedly refused to admit that he was guilty of any of the crimes of which he was convicted. He could not have entered, and a court could not have accepted, his guilty plea given his denial of guilt.

Attorneys Cogdell and Flood both testified that Gandy objected to the term of supervised release when the first plea offer was presented to him. Cogdell and Flood were able to negotiate an amended offer from the government that deleted that provision and left the term of supervised release up to the court at sentencing. Cogdell and Flood also credibly testified that they explained to Gandy during the plea negotiations that the length and conditions of supervised release could be modified by the court. The government introduced letters and emails that amply supported this testimony. Once the requirement for lifetime supervised release was deleted from the plea offer, Gandy did not again mention supervised release as an issue to either Cogdell or Flood.

Both Cogdell and Flood testified that Gandy had numerous other issues with the government's plea offer. He wanted the length of the prison term reduced; he wanted the amount he would have to pay to repurchase his forfeited house and car reduced; he wanted the victims to be identified in the plea offer so that they could not come back at a later date seeking restitution; and he did not want to admit his guilt. Both attorneys called Gandy a "moving target" during negotiations; as soon as they would reach agreement with the government on one issue, he would raise another. Both Cogdell and Flood believed that it was in Gandy's best interests to accept the plea offer—particularly given his clear exposure to additional charges if he proceeded to trial—but neither believed that Gandy would admit his guilt or that he would be able to complete a plea colloquy with the court.

IV.     **Findings and Conclusions**

Based on the evidence presented at the hearing and the court's determination of the credibility of the witnesses, the court finds and concludes as follows:

Attorneys Dan Cogdell and Charles Flood represented Gandy during the relevant times in 2014. In 2014, the government made a plea offer to Gandy that included, among other terms, a sentence of 10 years in prison followed by lifetime supervised release. This offer would resolve the only charge pending against Gandy at that time.

Cogdell and Flood presented the plea offer to Gandy and met with him to discuss its terms. As a result of those meetings, Cogdell and Flood approached the government about making certain changes to the plea offer.

Gandy wanted a plea offer with a recommended sentence of 0 to 10 years in prison, which had been informally discussed earlier, rather than a 10-year prison sentence. The government would not agree to this change.

Gandy wanted to amend the plea offer to omit the admission of guilt. The government would not, and indeed could not, agree to this change.

Gandy wanted to amend the plea offer to eliminate the term of lifetime supervised release. As a result of negotiations between Cogdell and Flood and the government, the government amended the plea offer to leave the length of supervised release up to the court, and the requirement for lifetime supervised release was deleted from the plea offer.

While Gandy was considering the plea offer, Attorney Flood told Gandy's stepmother in an email that he had discussed with Gandy the fact that supervised release is the "most flexible" part of the sentence and is "VERY frequently early terminated and changed." He told her that Gandy "did not have a problem with that." Despite these changes, Gandy rejected the government's plea offer.

Gandy's testimony that he was never told that the provision for lifetime supervised release was amended to leave the term up to the court is contradicted by trial counsel testimony and correspondence from the time of the plea discussions. Gandy's testimony is not credible.

Gandy's testimony that he was never told that supervised release could be modified or terminated early is contradicted by trial counsel testimony and correspondence from the time of the plea discussions. Gandy's testimony is not credible.

Because trial counsel provided accurate and timely information to Gandy about the length of the supervised release term and the potential for modification, trial counsels' performance did not fall below an objective standard of reasonableness. Trial counsel provided representation that amply met the requirements for constitutionally adequate representation. Gandy has failed to satisfy the first prong of *Strickland*.

On the issue of prejudice, correspondence and notes made during counsel meetings with Gandy, and Gandy's own notations on the plea offer, demonstrate that Gandy's primary concern was the length of the prison term and issues relating to the repurchase of forfeited assets, not the length of supervised release. Gandy's own handwritten notes on the plea offer also show that he wanted to maintain his innocence rather than admit his guilt. The credible evidence demonstrates that Gandy rejected the plea offer because of the length of the prison sentence and his desire to maintain his innocence, not because of the length of the supervised release term or any alleged misadvice of counsel.

Finally, Gandy's refusal to admit to his guilt at the evidentiary hearing demonstrates that he did not admit his guilt, as required to enter a guilty plea. The credible evidence does not show a reasonable probability that Gandy would have accepted the government's plea offer, or that the court

could have accepted the plea. Gandy has failed to show that he was prejudiced by any alleged misadvice of trial counsel. Gandy has failed to satisfy the second prong of *Strickland*.

**V.     Order**

Because Gandy failed to satisfy his burden of proof on either of *Strickland*'s two prongs, he is not entitled to relief under 28 U.S.C. § 2255. His § 2255 motion, (Docket Entry No. 238), is denied. Because reasonable jurists could not disagree with the denial of the § 2255 motion, no certificate of appealability will issue. *See United States v. Bernard*, 762 F.3d 467, 483 (5th Cir. 2014).

SIGNED on December 14, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge